David S. Gingras, CSB #218793
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

Attorney for Defendants
Aaron Minc; Minc Law;
Anthony Will; & Digital Revolution, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. STEWART LUCAS MURREY, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> AARON MINC, an individual, MINC LAW, a business entity, DOMINGO J. RIVERA, an individual, RIVERA LAW GROUP, PLC a/k/a DOMINGO RIVERA, ATTORNEY AT LAW, PLC, a limited liability company, ELIZABETH JORDAN, an individual; INTERNET REPUTATION CONTROL a/k/a IRC, a business entity, ANTHONY WILL, an individual, DIGITAL REVOLUTION LLC a/k/a REPUTATION RESOLUTIONS, a business entity, BRANDYOURSELF.COM, INC., a limited liability company, TOM VITOLO, an individual; CHRISTIAN TRYON, an individual; and JOHN DOE NUMBERS 1–10. <br><br> Defendants. | Case No: 2:20-cv-6217-PA-SK <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** <br><br><br> Date:      December 21, 2020 <br> Time:      1:30 P.M. <br> Courtroom: 9A <br> Judge:     Hon. Percy Anderson |

Pursuant to Fed. R. Civ. P. 12(b)(2) Defendants AARON MINC ("Mr. Minc"), MINC LAW ("Minc Law"), ANTHONY WILL ("Mr. Will") and DIGITAL REVOLUTION, LLC a/k/a REPUTATION RESOLUTIONS ("Reputation Resolutions"; collectively the "Minc and Will Defendants") move for an order dismissing this action for lack of personal jurisdiction, or, in the alternative, transferring this matter to the appropriate venue(s) pursuant to 28 U.S.C. § 1404(a).

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on <u>December 21, 2020 at 1:30 P.M.</u> or as soon thereafter as counsel may be heard in Courtroom 9A of the above-entitled court located at First Street Courthouse, 350 W. 1st Street, Courtroom 9A, 9th Floor, Los Angeles, California, 90012, the above-identified Defendants will move the Court for an order dismissing this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or, in the alternative, for an order dismissing this matter for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and/or transferring this matter to the appropriate venue(s) pursuant to 28 U.S.C. § 1404(a).

The motion will be based on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and records on file herein, and upon such other and further oral and documentary evidence as may be presented prior to or at the time of the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on various dates beginning on November 10, 2020.

GINGRAS LAW OFFICE, PLLC
4802 EAST RAY ROAD, #23-271
PHOENIX, AZ 85044

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | Introduction……………………………………………………………….. | 1 |
| II. | Argument……………………………………………………………………….. | 3 |
| | A.   The Parties' Agreements Contain Valid Forum Selection Clauses…………………………………………………………….... | 3 |
| | B.   Enforcement Of The Forum Selection Clause Will Not Deprive Dr. Murrey of His Day In Court…………………………………………….. | 6 |
| | C.   Enforcement Of The Forum Selection Clause Will Not Contravene Public Policy………………………………..................................... | 7 |
| | D.   Defendants Are Not Subject To Personal Jurisdiction In California………………………………………………………….......  | 8 |
| |     1. Summary of Aaron Minc Contacts……………………………… | 9 |
| |     2. Summary of Anthony Will Contacts……………………………. | 10 |
| |     3. Defendants' Contacts w/ California Are Insufficient To Establish Personal Jurisdiction………………………………… | 10 |
| III. | Conclusion……………………………………………………………….. | 12 |

# TABLE OF AUTHORITIES

| CASES | |
|---|---|
| *Aimsley Enters., Inc. v. Merryman*, 2020 WL 1677330 (N.D. Cal. Apr. 6, 2020)………………………………………… | 4 |
| *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49 (2013)………………………………………………………………… | 3 |
| *Batchelder v. Kawamoto*, 147 F.3d 915 (9th Cir. 1998)……………………………………………………….. | 4, 5 |
| *Bella + Canvas, LLC v. Ben Wachter Assoc., Inc.*, 2020 WL 4793997 (C.D. Cal. Apr. 30, 2020)………………………………………… | 8 |
| *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008)…………………………………………………………… | 12 |
| *Burger King Corp v. Rudzewicz*, 471 U.S. 462 (1985)……………………………………………………………………... | 5, 11 |
| *CrossFit, Inc. v. Fitness Trade sp. z o.o.*, 2020 WL 6449155 (S.D. Cal. Nov. 2, 2020)……………………………………….. | 9 |
| *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075 (E.D.Cal. 2019)……………………………………………... | 6, 8 |
| *DePuy Synthes Sales Inc. v. Stryker Corp.*, 2019 WL 1601384 (C.D.Cal. 2019)………………………………………………... | 4 |
| *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160 (9th Cir. 2020)…………………………………………………………… | 7 |
| *Mosier v. HSBC Bank USA, N.A.*, 2010 WL 5422550 (C.D. Cal. Dec. 28, 2010)………………………………………… | 5 |
| *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133 (9th Cir. 2004)…………………………………………………………… | 6 |
| *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)………………………………………………………………………... | 4, 7, 8 |
| *Rodney Sacks Family Ltd. P'ship v. Ritchie Capital Mgmt., LLC*, 2009 WL 10673985 (C.D. Cal. June 4, 2009)…………………………………………… | 7 |
| *Spread Your Wings LLC v. AMZ Group LLC*, 2020 WL 5749085 (N.D.Cal. 2020)……………………………………………….. | passim |
| *Walden v. Fiore*, 571 U.S. 277 (2014)……………………………………………………………………... | 8, 11 |
| *WhatsApp Inc. v. NSO Group Techs. Ltd.*, 2020 WL 4016812 (N.D.Cal. 2020)……………………………………………….. | 9 |
| *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018)…………………………………………………………… | 6 |
| **STATUTES** | |
| Cal. Bus. & Prof. Code § 17200…………………………………………………… | 2 |
| Cal. Civ. Code § 3344……………………………………………………………… | 2 |

GINGRAS LAW OFFICE, PLLC
4802 EAST RAY ROAD, #23-271
PHOENIX, AZ 85044

## I. INTRODUCTION

The prolix Complaint notwithstanding, the facts of this case are relatively simple. Plaintiff Dr. Stewart Lucas Murrey ("Dr. Murrey") is the author of "two historical monographs both of which had been praised by leading thinkers in Europe and America such as Noam Chomsky … ." Compl. ¶ 22. Dr. Murrey also claims to be involved in real estate sales, although that has nothing to do with his claims here. Compl. ¶ 23.

Despite, or maybe because of, his success as an author or as a Realtor, at some point beginning in 2016, Dr. Murrey found himself the target of numerous critical statements posted on a provocatively-named website called www.CheaterReport.com. The lengthy and numerous statements are set forth in Paragraph 24 of the Complaint. These remarks range from relatively milquetoast (i.e., "[Dr. Murrey] is creepy and weird … such a dickhead") to more banal (i.e., "He thinks his writing is just too superior for the average person to understand or appreciate.") Other comments are certainly harsher; some accuse Dr. Murrey of spreading sexually transmitted diseases, being an "Online Predator and Women Manipulator", and other unfriendly things.

Upon discovering these online attacks, and apparently unable or unwilling to resolve the problem on his own, Dr. Murrey sought assistance from several people including Defendants Aaron Minc and Anthony Will. Mr. Minc is an attorney based in Ohio who specializes in helping victims of online defamation. Mr. Will is the CEO and co-founder of ReputationResolutions.com, a Colorado-based company that assists companies and individuals repair, improve, and manage their online reputation.

In short, Dr. Murrey alleges he sought services from, and paid money[1] to, both Mr. Minc and Mr. Will for the purpose of removing the derogatory statements posted on www.CheaterReport.com. Then, in a conclusory manner and without the support of any well-pleaded facts, Dr. Murrey claims that *after* he hired Mr. Minc and Mr. Will, he somehow discovered they were both "conspiring" and "working with"

---

[1] According to Paragraph 59 of the Complaint, Dr. Murrey alleges he paid "more than $3,500" to Mr. Will's company, Reputation Resolutions. Dr. Murrey also alleges he paid $7,000 to Mr. Minc's firm, Minc Law LLC. *See* Compl. ¶ 61.

www.CheaterReport.com in some unlawful manner. For example, Paragraph 28 of the Complaint alleges:

> Unknown to Plaintiff at the time, WWW.CHEATERREPORT.COM <u>conspires with several individuals</u> and business entities who pretend to dislike said such website(s) and offer to remove online libel and rehabilitate one's online reputation for substantial fees. From approximately February 2017 until April of 2018 Anthony Will, the business entity Digital Revolution LLC a.k.a. Reputation Resolutions … along with several other unknown individuals and business entities, solicited and received payments from Plaintiff of more than $10,000.00 <u>while they themselves *worked illegally* with other individuals and business entities operating and maintaining said website</u> WWW.CHEATERREPORT.COM. (emphasis added)

Dr. Murrey's Complaint never specifically explains how Defendants "worked illegally" with www.CheaterReport.com, aside from a generic claim that both Minc and Will "received money from Plaintiff, a part of which they used to pay those operating and maintaining the website WWW.CHEATERREPORT.COM." Compl. ¶ 43. In short, Dr. Murrey claims he paid money to both Mr. Minc and Mr. Will for their services, and that some portion of that money was then paid to www.CheaterReport.com to obtain the removal of the derogatory statements about Dr. Murrey.

Based on these facts, Dr. Murrey pleads a variety of claims including federal RICO/racketeering claims, California common-law fraud claims, civil conspiracy, unfair business practices under Cal. Bus. & Prof. Code § 17200, and violations of California's statutory and common-law publicity rights under Civil Code § 3344.

As explained herein, this action must be dismissed as to Mr. Minc and Mr. Will (and their respective entities) because the flowery accusations of the Complaint notwithstanding, the written contracts entered into between Defendants and Dr. Murrey contain valid and enforceable forum selection clauses which require any and all disputes arising from the agreements to be litigated elsewhere—Ohio (for Mr. Minc) and North Carolina (for Mr. Will). These clauses, and the facts of this case, also show that personal jurisdiction is lacking in this matter, thus requiring dismissal of the Complaint pursuant to

Fed. R. Civ. P. 12(b)(2). Alternatively, this matter must be dismissed pursuant to Rule 12(b)(3) and/or transferred to the appropriate venue(s) pursuant to 28 U.S.C. § 1404(a). Each point is explained more fully herein.

## II. ARGUMENT

### A. The Parties' Agreements Contain Valid Forum Selection Clauses

The legal standard is clear: "a valid forum selection clause should be given "'controlling weight in all but the most exceptional cases.'" *Spread Your Wings LLC v. AMZ Group LLC*, 2020 WL 5749085 (N.D.Cal. 2020) (emphasis added) (quoting *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013)); *see also Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) ("[o]nly under extraordinary circumstances unrelated to the convenience of the parties" should a motion to enforce a forum-selection clause be denied) (quoting *Atlantic Marine*, 571 U.S. at 62).

Here, at the time Dr. Murrey retained the services of Mr. Minc and Mr. Will, the parties entered into written agreements regarding the scope and nature of work to be performed. Both of these agreements contained valid and enforceable forum selection clauses. Complete copies of those agreements are attached to the declarations submitted herewith, *see* Minc Decl. Ex. A, Will Decl. Ex. A, but using the Minc agreement as an example, the forum selection clause could not be any clearer:

> This agreement will be governed by and construed under Ohio law. Any dispute arising out of or under this agreement shall be subject only to the Bedford Municipal Court unless the jurisdictional limits for said Municipal Court shall be exceeded at which time the Cuyahoga County Court of Common Pleas shall have sole jurisdiction. You irrevocably consent to the personal and subject matter jurisdiction of said courts.

The agreement between Dr. Murrey and Mr. Will's firm (Digital Revolution) contains a similar provision: "Each of the parties hereto consent to the exclusive jurisdiction and venue of the courts of Charlotte, NC." (emphasis added). As explained below, these clauses are valid, enforceable and the facts of this case do not come close to the "exceptional" circumstances required to disregard them.

Indeed, forum selection clauses are "*prima facie* valid unless enforcement is unreasonable … ." *DePuy Synthes Sales Inc. v. Stryker Corp.*, 2019 WL 1601384, at *2 (C.D.Cal. 2019). As the party seeking to avoid enforcement of such a clause, Dr. Murrey bears the heavy burden of showing the clause is unenforceable under the following standard:

> A forum selection clause is unenforceable if the party resisting enforcement makes a strong showing that (1) "the clause [i]s invalid for such reasons as fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) proceeding in the selected forum will be "so gravely difficult and inconvenient" that the complaining party "will for all practical purposes be deprived of his day in court."

*Spread Your Wings* LLC, 2020 WL 5749085, *3 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

For the Court's information, during the meet-and-confer process, Dr. Murrey explained he believes the clauses in question are unenforceable based on the "fraud" alleged in the Complaint (i.e., the allegation that Mr. Minc and Mr. Will defrauded Dr. Murrey by secretly "conspiring" with CheaterReport.com and/or that both of them paid money to CheaterReport.com without Dr. Murrey's knowledge or consent). This general allegation of "fraud" is wholly insufficient to defeat the forum selection clauses here:

> The fraud exception to the general rule of enforceability 'does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud ... the forum selection clause is unenforceable but rather ... that the forum-selection clause in a contract is not enforceable <u>if the inclusion of that clause in the contract was the product of fraud or coercion</u>.

*Spread Your* Wings, 2020 WL 5749085, *4 (emphasis added) (quoting *Aimsley Enters., Inc. v. Merryman*, 2020 WL 1677330, at *5 (N.D.Cal. 2020)) (citing *Batchelder v. Kawamoto,* 147 F.3d 915, 919 (9th Cir. 1998) (the "Supreme Court has noted that <u>simply alleging that one was duped into signing the contract is not enough</u>.... For a party to

escape a forum selection clause on the grounds of fraud, it must show that the inclusion of that clause in the contract was the product of fraud or coercion.") (emphasis added).

Beyond generally alleging he was "duped" in other ways, nowhere in the Complaint does Dr. Murrey allege any facts showing the *inclusion of the forum selection clauses* occurred due to fraud or coercion on the parts of Mr. Minc or Mr. Will, nor did Dr. Murrey offer any such facts during the meet and confer process. The record is thus completely devoid of any factual support for Dr. Murrey's position.

That failure is hardly surprising because during his arm's-length contract negotiations with both Mr. Minc and Mr. Will, <u>Dr. Murrey was represented by counsel</u> (Alexander J. Petale, Esq.).[2] That fact, coupled with Dr. Murrey's failure to offer any facts clearly showing that fraud or duress was used to induce him to agree to the forum selection clauses, means the clauses must be enforced as written. *See Mosier v. HSBC Bank USA, N.A.*, 2010 WL 5422550, at *4 (C.D. Cal. Dec. 28, 2010) (explaining, "Forum selection clauses are considered presumptively valid; a 'heavy burden' befalls a party seeking to establish that a forum selection clause is unenforceable. <u>This is especially so where</u>, as here, the forum selection clause is the product of an informed agreement between sophisticated <u>parties represented by counsel</u>.") (emphasis added); *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1088 (E.D.Cal. 2019) (rejecting "general and conclusory" allegations of fraud because, *inter alia*, the plaintiff was represented by counsel during its contract negotiations), *aff'd*, 818 Fed. App'x. 694 (9th Cir. 2020) (citing *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 486–87, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (recognizing there was no "overweening bargaining power" where the party claiming fraud was represented by counsel throughout the transactions at issue)); *see also Spread Your Wings*, 2020 WL 5749085, *5 (rejecting argument that lack of counsel shows "overreaching").

---

[2] Mr. Petale has not (yet) appeared in this matter on behalf of Dr. Murrey. However, Mr. Petale did sign multiple proofs of service filed in this matter (see, e.g., Doc. 12–15) in which he stated, falsely, that he completed service of process on Mr. Minc, Mr. Will, and their respective entities.

Here, the Complaint further indicates that Dr. Murrey holds a Ph.D from Yale University, which he obtained in 2011. *See* Compl. ¶ 22. Assuming that fact is true, this case does not involve an unsophisticated victim lured into signing an agreement that was beyond his comprehension or understanding. On the contrary, Dr. Murrey holds an advanced degree from an Ivy League school and he was represented by counsel during his entire discussions with both Mr. Minc and Mr. Will's firms. Just as other courts have held in the case cited *supra*, these facts do not support a finding of either fraud or overreaching by Defendants.

### B. Enforcement Of The Forum Selection Clause Will Not Deprive Dr. Murrey Of His Day In Court

When a forum selection clause is valid and not otherwise unenforceable due to fraud, the Court may still deny enforcement of the clause if it would effectively leave the plaintiff with no recourse at all; "under *Atlantic Marine*, courts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedies whatsoever." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1091–92 (9th Cir. 2018). Again, as the party *resisting* enforcement, Dr. Murrey bears the burden of proof on this point. *See Color Switch*, 377 F. Supp. 3d at 1082 (enforcement may be denied "if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced … .") (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).

Here, there is no basis for Dr. Murrey to suggest that litigating his claims in Ohio or North Carolina will result in a complete denial of justice. As noted above, Dr. Murrey's primary claims are federal RICO/racketeering causes of action and common law fraud. Such claims could be litigated just as easily in Ohio or North Carolina as in California; indeed, given that every witness in this case (other than Dr. Murrey himself) is located outside California, there is literally no burden and no prejudice to Dr. Murrey from enforcing the forum selection clauses as-written. Accordingly, the dismissal of this

matter and/or its transfer to another state will not cause Dr. Murrey to lose his day in court.

### C. Enforcement Of The Forum Selection Clause Will Not Contravene Public Policy

The next step in the inquiry focuses on matters of public policy; "When a forum-selection clause violates 'a strong public policy of the forum in which suit is brought,' then it 'should be held unenforceable.'" *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1166 (9th Cir. 2020) (quoting *M/S Bremen*, 407 U.S. at 15). For example, when two different forums involve different legal rules which would substantively affect the scope of relief available, courts have refused to enforce a forum selection clause on public policy grounds. *See*, *e.g.*, *Rodney Sacks Family Ltd. P'ship v. Ritchie Capital Mgmt.*, LLC, 2009 WL 10673985, at *2 (C.D. Cal. June 4, 2009) (citing several examples where forum selection clauses were rejected on public policy grounds, but finding such instances narrow and refusing to apply them under the facts of that case) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) (declining to enforce forum selection clause which contravened California's strong public policy against enforcing such clauses in franchise agreements)).

To carry his burden of showing that public policy favors his side, "the plaintiff must point to a statute or judicial decision that clearly states such a strong public policy." *Sun*, 901 F.3d at 1090. A conclusory assertion that a contract term violates "a strong California policy" or that a term is "unfair and unenforceable" is *per se* insufficient. *Spread Your Wings*, 2020 WL 5749085, *7–8 (rejecting generalized policy arguments, and noting, "plaintiffs have not demonstrated that a strong California policy outweighs the strong federal policy of enforcing forum selection clauses.")

Once again, Dr. Murrey has not presented any facts (either in his Complaint or during the meet and confer process) that would support a finding that the public policy of California would justify invalidating the forum selection clause contained in the parties' agreements. He has cited no California statutes which would arguably be inconsistent

7

with the enforcement of the forum selection clauses in this case, nor has he cited any judicial decision which would warrant that result.

For these reasons, the contractual forum selection clauses contained in the written agreements between Dr. Murrey and Mr. Minc and Mr. Will (via their respective entities) are presumptively enforceable and should be enforced according to their terms.

### D. Defendants Are Not Subject To Personal Jurisdiction In California

Assuming *arguendo* the Court finds the forum selection clauses to be unenforceable for any reason, this matter should nevertheless be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because neither Mr. Minc nor Mr. Will (or their entities) are subject to personal jurisdiction in California. In his Complaint, Dr. Murrey alleges Defendants are subject to personal jurisdiction here solely because they "actively participated in the conspiracy to defraud Plaintiff with intent to injure Plaintiff within this District and throughout California." Compl. ¶ 18. Beyond harm felt by Dr. Murrey, no other connection to California is alleged.

The Court is familiar with the traditional standards for general and specific jurisdiction, so those rules will not be repeated here. However, it is important to note the U.S. Supreme Court's recent (2014) decision in *Walden v. Fiore* significantly changed preexisting law on the correct standards to use for personal jurisdiction in an intentional tort case:

> [Plaintiff] argues that a defendant's contacts are "expressly aimed" at a forum state when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." But <u>the Supreme Court squarely overruled that characterization of the effects test in *Walden v. Fiore*, 571 U.S. 277 (2014)</u>. In *Walden*, the Court held that the minimum contacts test "<u>looks to the defendant's contacts with the forum State itself,</u> <u>not the defendant's contacts with persons who reside there</u>." The Court continued by clarifying that "the plaintiff cannot be the only link between the defendant and the forum."

*Bella + Canvas, LLC v. Ben Wachter Assoc., Inc.*, 2020 WL 4793997, at *3 (C.D.Cal. 2020) (emphasis added) (quoting *Walden*) (internal citations omitted).

8

As explained in their respective declarations submitted herewith, neither Mr. Minc nor Mr. Will have any contacts with the State of California that would suffice to subject to them to either general or specific personal jurisdiction in this case. In short, even assuming Dr. Murrey was harmed by the conduct alleged in the Complaint, under the rule set forth in *Walden*, harm felt by a forum resident is insufficient as a matter of law to create personal jurisdiction over Defendants in California; "<u>mere injury to a forum resident is not a sufficient connection to the forum</u> ... The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *WhatsApp Inc. v. NSO Group Techs. Ltd.*, 2020 WL 4016812, at *14 (N.D.Cal. 2020) (emphasis added) (quoting *Walden*, 571 U.S. at 290); *see also CrossFit, Inc. v. Fitness Trade sp. z o.o.*, 2020 WL 6449155, at *5 (S.D.Cal. 2020) ("While a theory of individualized targeting—that the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state"—is relevant to the inquiry, it will not on its own support the exercise of specific personal jurisdiction.")

### i. Summary Of Aaron Minc Contacts With California

Mr. Minc is a life-long resident of the State of Ohio, and he currently resides in Ohio with his wife and two young children. Mr. Minc received his Bachelor of Science degree from Miami University in Oxford, Ohio and his Juris Doctorate (cum laude) from Case Western Reserve School of Law in Ohio. Mr. Minc has been licensed practice law in Ohio since 2010. Mr. Minc is not licensed to practice law in California, nor has he ever been admitted to practice in California.

As a lawyer, Mr. Minc's primary focus is helping victims of online defamation. Over the past 10 years, Mr. Minc has successfully litigated more than 100 Internet defamation lawsuits in 19 states and 3 countries. None of those cases were litigated in California, and none have any connection to the facts of this case.

Beyond litigation, Mr. Minc also assists clients with the removal of harmful Internet posts using other means, such as occurred here. Mr. Minc estimates that over the

GINGRAS LAW OFFICE, PLLC
4802 EAST RAY ROAD, #23-271
PHOENIX, AZ 85044

last 10 years, he has assisted hundreds of clients around the United States. While some small percentage of these clients may have resided in California (including Dr. Murrey), the geographic location of each client is largely irrelevant to Mr. Minc's work which involves helping remove content on websites.

Furthermore, as occurred here, when a client hires Mr. Minc's firm for assistance, the firm always requires the client to enter into a written agreement which specifically requires any disputes to be resolved in the state courts in Ohio. Based on this, while Mr. Minc frequently assists clients located around the country, he only transacts business in Ohio.

### ii.  Summary Of Anthony Will Contacts With California

As noted above, Mr. Will is the co-founder and CEO of ReputationResolutions.com, an online reputation management firm founded in 2013 that specializes in helping companies and individuals repair, protect and manage their online reputation. Like Mr. Minc, Reputation Resolutions works with customers nationwide, but it generally does not track the geographic location of each client as this is not relevant to the services they offer (which focus on improving a customer's *online* reputation).

Mr. Will currently resides in Denver, Colorado. He attended Wofford College in Spartanburg, South Carolina, and holds a graduate certificate from NYU.

Aside from the facts alleged in this case, Mr. Will's only contacts with California are limited to two family vacations in San Diego. Other than those vacations, Mr. Will owns no property in California, he conducts no business in California, and he has never lived or worked in California.

### iii.  Defendants' Contacts With California Are Insufficient

As noted above, Dr. Murrey alleges that after he was criticized on CheaterReport.com, he sought assistance from Mr. Minc (in Ohio) and Mr. Will (in Colorado). Dr. Murrey does *not* allege that he contacted Defendants in response to any advertising or targeted solicitations sent to him in California, nor does he allege Defendants ever traveled to California to meet with him. Similarly, Dr. Murrey does not

allege that any of the work performed by Defendants took place in California, or that the work required them to engage in any other contact with California.

These facts are insufficient as a matter of law to establish personal jurisdiction over Defendants in California. Indeed, the facts of this case are not meaningfully different from those in *Walden*. That case involved claims against a Georgia police officer who seized $97,000 in cash from the plaintiffs while they were passing through the Atlanta Hartsfield–Jackson Airport on their way home to Las Vegas, Nevada. The plaintiffs claimed the police officer wrongfully seized the funds without probable cause, and that he subsequently drafted a false affidavit that was used to temporarily sequester the money. *See Walden*, 571 U.S. at 280–81.

The plaintiffs sued the officer in federal court in Nevada, asserting a wide variety of claims. In sum, the plaintiffs argued the officer was subject to personal jurisdiction in Nevada because he knowingly caused harm to a Nevada resident, even though his conduct occurred outside Nevada.

The Ninth Circuit found the police officer was properly subject to personal jurisdiction in Nevada, but the U.S. Supreme Court reversed. In doing so, the Court explained, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 286. Furthermore, the Court noted that previous cases had rejected the argument that a defendant's contract with the plaintiff, standing alone, was enough to create personal jurisdiction; "If the question is whether an individual's contract with [a forum resident] alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

In a nutshell, the rule of *Walden* is simple and clear—merely causing alleged harm to a resident of a forum is *per se* insufficient to create personal jurisdiction over the defendant in the plaintiff's home state. Indeed, beyond the mere fact that Mr. Murrey happens to live in California, nothing else about this case shows any intentional or substantial connection between Mr. Minc, Mr. Will, and this state. Indeed, even under the

11

looser standards which existed prior to *Walden*, this type of singular internet-based transaction is insufficient to create personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (holding Wisconsin seller of car who allegedly made fraudulent statements about the vehicle to buyer in California was not subject to personal jurisdiction here; "the lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in California.")

### III. CONCLUSION

For the reasons stated above, this matter should be dismissed for lack of personal jurisdiction. Alternatively, this matter must be dismissed pursuant to Rule 12(b)(3) and/or transferred to the appropriate venue(s) pursuant to 28 U.S.C. § 1404(a).

DATED November 20, 2020.

GINGRAS LAW OFFICE, PLLC

David S. Gingras
Attorney for Attorney for Defendants
Aaron Minc; Minc Law;
Anthony Will; &
Digital Revolution, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2020 I transmitted the foregoing to the clerk's office for filing via ECF and for service to:

Dr. Stewart Lucas Murrey
1217 Wilshire Blvd., #3655
Santa Monica, CA 90403
Plaintiff *Pro Se*

Nicholas D. Jurkowitz, Esq.
FENTON LAW GROUP, LLP
njurkowitz@fentonlawgroup.com
1990 S. Bundy Drive # 777
Los Angeles, CA 90025
Attorney for Defendant Domingo J. Rivera



13