David S. Gingras, CSB #218793
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

Attorney for Defendants
Aaron Minc; Minc Law;
Anthony Will; & Digital Revolution, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. STEWART LUCAS MURREY, an individual,<br><br>  Plaintiff,<br><br>vs.<br><br>AARON MINC, an individual, MINC LAW, a business entity, DOMINGO J. RIVERA, an individual, RIVERA LAW GROUP, PLC a/k/a DOMINGO RIVERA, ATTORNEY AT LAW, PLC, a limited liability company, ELIZABETH JORDAN, an individual; INTERNET REPUTATION CONTROL a/k/a IRC, a business entity, ANTHONY WILL, an individual, DIGITAL REVOLUTION LLC a/k/a REPUTATION RESOLUTIONS, a business entity, BRANDYOURSELF.COM, INC., a limited liability company, TOM VITOLO, an individual; CHRISTIAN TRYON, an individual; and JOHN DOE NUMBERS 1–10.<br><br>  Defendants. | Case No: 2:20-cv-6217-PA-SK<br><br>**DECLARATION OF AARON MINC IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:  December 21, 2020<br>Time:  1:30 P.M.<br>Courtroom:  9A<br>Judge:  Hon. Percy Anderson |

I, Aaron Minc, hereby state and declare as follows:

1.  My name is Aaron Minc. I am a United States citizen, a resident of the State of Ohio, I am over the age of 18 years, and if called to testify in court or other proceeding I could and would give the following testimony which is based upon my own personal knowledge.

2. I am lawyer based in Orange Village, Ohio. I have been admitted to practice law in the State of Ohio since 2010. Among other things, my practice focuses on Internet-related legal issues.

3. My primary focus is helping victims of online defamation. Over the past 10 years, I have litigated more than 100 Internet defamation lawsuits in 19 states and 3 countries. None of those cases were litigated in California, and none have any connection to the facts of this case.

4. I am the founder and principal of Minc Law LLC which is an Ohio-based law firm focused on Internet-related issues. Minc Law currently employs seven (7) attorneys, four paralegals, and two administrative and marketing personnel, all of whom are located in Ohio. Minc Law has no employees in California.

5. I am not now, nor have I ever been, licensed to practice law in California, nor have I ever appeared *pro hac vice* in any legal matters in California.

6. I am a life-long resident of Ohio, and I currently live in Ohio with my wife and two children.

7. I received my Bachelor of Science degree from Miami University in Oxford, Ohio, and my Juris Doctorate (cum laude) from Case Western Reserve School of Law in Ohio.

8. Over the last ten years of practicing law, I have assisted hundreds of clients, including both businesses and individuals, around the country and globally. A very small percentage of my clients have included persons and businesses located in California, but because my work primarily focuses on Internet-related issues, the geographic location of a particular client is generally not relevant.

9. When a person hires Minc Law, our firm always requires the client to enter into a written agreement which explains the scope of work to be performed and the costs involved, among other things.

10. I have reviewed the First Amended Complaint filed against me in this matter by Dr. Stewart Lucas Murrey.

11. Dr. Murrey contacted my firm in August 2019 seeking help dealing with numerous postings which appeared on a website called www.CheaterReport.com.

12. I never spoke with Dr. Murrey or any of his representatives during this time period. However, based on correspondence I reviewed that he had with my firm, he was working with a lawyer named Alexander J. Petale, Esq., who I understand is admitted to practice law in California. At Dr. Murrey's request, Mr. Petale was cc:'d on most if not all of the email correspondence with Dr. Murrey about the services he wanted my firm to perform. He and Mr. Petale (on Mr. Murrey's behalf) had phone conversations with paralegals at my office before engaging my firm for legal services. They were told the exact same information my firm provides everyone who calls our office about these services.

13. Following these discussions, Dr. Murrey was sent a copy of my firm's standard written engagement agreement dated August 20, 2019. A true and correct copy of this agreement is attached hereto as Exhibit A. I know from personal knowledge and as the owner and sole officer of Minc LLC, that this is a standard record kept in the regular course of businesses that we always save in each client file.

14. As is true of all my firm's engagement agreements with clients like Dr. Murrey, this agreement included the following clause:

> This agreement will be governed by and construed under Ohio law. Any dispute arising out of or under this agreement shall be subject only to the Bedford Municipal Court unless the jurisdictional limits for said Municipal Court shall be exceeded at which time the Cuyahoga County Court of Common Pleas shall have sole jurisdiction. You irrevocably consent to the personal and subject matter jurisdiction of said courts.

15. Dr. Murrey signed and returned the agreement to my firm on August 21, 2019. A copy of the executed signature page is attached hereto as Exhibit B. The page returned by Dr. Murrey also included a hand-written note which read: "I authorize Alexander J. Petale, Esq., as my representative herein." This note was added to the

agreement in order to confirm that Dr. Murrey was, in fact, represented by counsel, and that my firm was authorized to discuss this matter with Mr. Petale as necessary.

16. The discussions between my firm and Dr. Murrey relating to the engagement agreement were entirely "arm's length". Dr. Murrey was not pressured in any way into signing this agreement, nor did I nor anyone else make any false representations or promises to him or his lawyer about any terms of the agreement, including, but not limited to, the provision which required all disputes arising out of the agreement to be litigated in Ohio.

17. If Dr. Murrey had refused to accept the forum selection clause in my firm's agreement, it is firm policy that I would have had to personally review and approve the revision, and I would not have agreed to accept the revision and Dr. Murrey as a client if it was requested. This provision is a material provision in our contract given that my firm represents hundreds of people and businesses from across the country each year. If our contracts did not have this provision my small firm would quickly go bankrupt if were forced to constantly litigate disputes in foreign jurisdictions. Neither Dr. Murrey nor Mr. Petale ever expressed any concerns to me or my office about the forum selection clause.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.

Executed on November 20, 2020.

_____
Aaron Minc

4