1  **Dr. Stewart Lucas Murrey**
   1217 Wilshire Blvd. # 3655
2  Santa Monica, CA 90403
   Tel.: (310) 994-1711
3  Email: **2@lucasmurrey.io**

4  **Plaintiff & Plaintiff in Pro Se**

5

6                **UNITED STATES DISTRICT COURT**

7                **CENTRAL DISTRICT OF CALIFORNIA**

8

| | |
|---|---|
| 9  DR. STEWART LUCAS MURREY, an individual; | **Case No. 2:20-cv-06217-PA (SKx)** |
| 10                        Plaintiff, | *Hon. Judge Percy Anderson, Ctrm 9A, 9th Fl.* *Hon. Mag. Judge Steve Kim, Ctrm 540, 5th Fl.* |
| 11  vs. | |
| 12  AARON MINC, an individual, MINC LAW, a business entity; DOMINGO J. RIVERA, an individual; RIVERA LAW GROUP, PLC a.k.a. DOMINGO J. RIVERA, ATTORNEY AT LAW, PLC, a limited liability company; PRVT L.L.C., a limited liability company, ELIZABETH JORDAN, an individual; INTERNET REPUTATION CONTROL a.k.a. IRC, a business entity; ANTHONY WILL, an individual; DIGITAL REVOLUTION LLC a.k.a. REPUTATION RESOLUTIONS, a business entity; BRANDYOURSELF.COM, INC., a limited liability company, TOM VITOLO, an individual; CHRISTIAN TRYON, an individual; and JOHN DOE NUMBERS 1-10; | **PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS (FRCP 12(b)(2)); DECLARATION OF DR. STEWART LUCAS MURREY; DECLARATION OF ALEXANDER J. PETALE, ESQ.** |
| 13 | |
| 14 | |
| 15 | |
| 16 | Hearing Date:  21 December 2020 |
| 17 | Hearing Time:  1:30 p.m. |
| 18 | Courtroom:     10A |
| 19 | Judge:         Hon. Percy Anderson |
| 20 | |
| 21 | |
| 22 | |
| 23                        Defendants. | |

24

25

26

27

28

- 1 -

## I.    INTRODUCTION

Unless they are ignorant of Federal Law, Nick Jurkowitz and his client defendant individual and entities: Domingo J. Rivera, Domingo J. Rivera, Attorney at Law, PLC, Internet Reputation Resolutions (IRC) and PRVT LLC intentionally filed all four (4) of their motions to dismiss this case before any of them really started, much less completed the required conference of counsel pursuant to L.R. 7-3 (Declaration of Dr. Murrey, Par. 4). Having sent only one single, initial email requesting a telephonic conference on 19 November 2020 and then, hours later that same day, deceitfully misrepresenting to this Court that they had fulfilled their L.R. 7-3 duties in their Notices (See Exhibit 1 to the Decl. of Dr. Murrey, Par. 5), plaintiff Dr. Murrey is requesting a conference per L.R. 7-3 for his intended motions for sanctions against each of these four (4) defendants and their "specially" appearing representation, Mr. Jurkowitz, for their bad faith. Perhaps this matter could have been resolved without court intervention and this abuse of the law against a *pro se* litigant, to whom Federal Courts are particularly liberal, does not go unnoticed.

## II.    FACTUAL SUMMARY

Defendant Dominigo J. Rivera repeatedly perjured himself in several instances in his eight (8) declarations to this Court. Mr. Rivera and his entities do business in California. This includes, but is not limited to maintaining and enhancing the

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

1  "performance" of the revenge-porn, politically motivated "shaming"-website

2  **WWW.CHEATERREPORT.COM**.

3
4      Aware of the criminal organization to which he belongs, Mr. Rivera a.k.a. "DJ"

5  seeks to maintain absolute secrecy and anonymity about his and his entities'

6  involvement (exactly like **WWW.CHEATERREPORT.COM**) in said nationwide

7  extortion ring. On the one hand, "DJ" and his network of entities are one of the "go-

8  to" secret sources for his co-conspirators like defendants such as Aaron Minc to

9
10  remove postings from **WWW.CHEATERREPORT.COM**. The way their online

11
12  scam works is the following: After harmful postings severely damage victims

13  nationwide said victims are extorted into paying money for the removal of

14  defamatory postings, plaintiff in California who sent money from California to all

15
16  defendants included. Mr. Minc made the significance of Mr. Rivera and his entities

17  clear both during a telephone conversation and in an email to plaintiff on 15 July

18
19  2015 (See Decl. Dr. Murrey, Par.s 6-10, and Exhibit 2, Par. 11; see also the

20  Declaration of Alexander J. Petale).

21      But as Mr. Minc and all the other defendants know and which they illegally hide

22
23  from all their "clients" i.e. victims, plaintiff in California included, is that while "DJ

24  Rivera" secretly removes harmful postings on **WWW.CHEATERREPORT.COM**,

25  Mr. Rivera is also secretly doing business in California to maintain, support, operate

26
27
28

- 3 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

and perform duties necessary for **WWW.CHEATERREPORT.COM** to exist online in all fifty states, California included.

In an effort to hide his participation in this crime organization Mr. Rivera set up a business entity by the name of "Domingo J. Rivera, Rivera Law Group, Attorney at Law, PLC". The real reason, however, that "DJ" set up this seemingly commonplace company is so that he could, in turn, open up a second, anonymous company within the financial secrecy jurisdiction of Puerto Rico, which Mr. Rivera names "PRVT LLC".

Despite Mr. Rivera's perjuries in this Federal Court, he and his entities do have a real and serious, if secretive history of doing business in California. In fact, Mr. Rivera and his entities specifically do business in California *to maintain and advance this online criminal organization.* **Mr. Rivera uses among his various entities, PRVT LLC, to make payments to the San Francisco based tech-company Cloudflare, Inc. which is located at 101 Townsend St., San Francisco, CA 94107.** This is clear in the documents produced by Cloudflare, Inc. and the Registry of Corporations and Entities information showing that PRVT LLC is linked to Mr. Rivera and his other entities (See Decl. Dr. Murrey, Par.s 12-13, and Exhibit 3, Par. 13).

It is also clear that "DJ Rivera" maintains another secret entity within another financial secrecy jurisdiction, this time in Panama, also named "PRVT LLC" and

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

through which **WWW.CHEATERREPORT.COM** maintains its Domain,

Registrant, Administrative and Technical Contacts. (See Decl. Dr. Murrey, Par. 14,

and Exhibit 4, Par. 15). It should be noted that in their attempts to elude public

scrutiny and justice, it is common practice of those involved in this crime

organization, defendants all included, to rapidly open and dissolve countless

business entities. Defendant Anthony Will's entity "Digital Revolution" a.k.a.

"Reputation Resolutions", for instance, has been opened and dissolved countless

times within the last ten (10) years by him and other individuals. (See Decl. Dr.

Murrey, Par. 16, and Exhibit 5, Par. 17).

Thanks to Mr. Rivera, his entities, the defendants and other co-conspirators,

**WWW.CHEATERREPORT.COM** has an exceptionally powerful i.e. destructive

presence on Google and other such big-tech social-media platforms. Together these

criminals use this revenge-porn "shaming" and politically motivated website

**WWW.CHEATERREPORT.COM** to inflict incalculable harm and distress onto

countless people (its victims) nationwide and beyond, the plaintiff in California

included, while maintaining absolute anonymity. Because its victims have no

recourse due to **WWW.CHEATERREPORT.COM**'s intentionally absolute non-

responsive and anonymous nature, plaintiff in California included, they are forced to

give into targeted advertising and pay those who maintain this nationwide extortion

ring. Defendants such as Minc feign ignorance and deceitfully act as if they have no

- 5 -

secret connections and or agendas to continue harming and extorting the entirety of the American populace, including the citizenry of California to whom plaintiff belongs.

Mr. Rivera and his entities have taken money from others such as Mr. Minc and his law office countless times, including when plaintiff was victimized and extorted. This means that not only is Mr. Rivera and his entities doing significant business in California, paying for services and receiving and enjoying said services within California, to run this unsavory scam, he and his entities are also taking monies received from California, for instance, from Mr. Minc and his entities.

Aside from the conclusory and intentionally false statements by Mr. Rivera and his entities – which are meaningless as they fail to deal with the facts that plaintiff has stated in his lawsuit –, "DJ"'s summary of this action is borderline delusional. This action does not "arise from posts made on a public forum", as Mr. Rivera claims. This action arises from an extortion ring orchestrated by Mr. Rivera, his entities and co-conspirators that includes their payments to companies in California to operate and maintain the disgraceful revenge-porn and politically motivated "shaming"-website **WWW.CHEATERREPORT.COM** and other such online platforms. (See Decl. Dr. Murrey, Par. 18, and Exhibit 6, Par. 19). By severely harming innocent people nationwide, including California, through services

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

purchased and used in California, "DJ" and others, in turn, profit off of the irreparable damage and desperation they themselves caused.

As to be expected from an individual who aggressively perjures himself on countless occasions in federal court, Mr. Rivera is ignorant of several indisputable facts regarding this lawsuit. First: Mr. Rivera misrepresents the timeline of damages to plaintiff who continued to be targeted on **WWW.CHEATERREPORT.COM** well into 2018 and after. (See Decl. Dr. Murrey, Par. 20, and Exhibit 7, Par. 21). This creates still another direct link to Mr. Rivera's PRVT LLC which, according to Mr. Rivera's own declaration, was actively doing business in California and paying Cloudflare, Inc. in San Francisco (not far from Silicon Valley) to operate and maintain the revenge-porn and political "shaming"-website since 17 December 2017.

Because defendants, Mr. Rivera included, make false, conclusory statements about this lawsuit, critical facts to this case need be clarified. Plaintiff began to be severely harmed by anonymous postings beginning in 2016 on **WWW.CHEATERREPORT.COM**. (See Decl. Dr. Murrey, Par. 22) Between 2016 and through 2018 hundreds of malicious, defamatory and anonymous postings by individuals on **WWW.CHEATERREPORT.COM** unknown to plaintiff resulted in damages to plaintiff's life and ability to earn money as a scholar, real

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

1    estate, etc. not only during this time, but whose aftereffects continue today and for

2    the rest of plaintiff's life. (Ibid.)

3

4     Because defendant Rivera's crime organization harms its victims irreparably, the

5    unusually severe online defamation and cyber-bullying that the revenge-porn

6    website **WWW.CHEATERREPORT.COM** enacts, emboldens, facilitates and aids

7    and abets leads to extraordinary harassment in persons' everyday off-line lives.

8

9    Individuals who seemed to be posting on **WWW.CHEATERREPORT.COM**

10   contacted plaintiff's girlfriend in 2017 to further defame plaintiff to her by telephone

11   and email directly. Opposite to Mr. Rivera's meaningless conclusory statements,

12   

13   these individuals (Shannyn Poer and Flor Edwards) signed declarations in 2019

14   claiming that they had never posted on **WWW.CHEATERREPORT.COM**. (See

15   Decl. Dr. Murrey, Par. 23, and Exhibit 8, Par. 24). The anonymous and non-

16   

17   responsive nature of Mr. Rivera's online porn-website scam makes it impossible for

18   people to have any other recourse than to be extorted by these "removal" and

19   

20   "reputation management companies".

21    The cyberbullying of Mr. Rivera's **WWW.CHEATERREPORT.COM**

22   emboldened individuals to take *the exact language and defamation* from posts on

23   said website to make two (2) false police reports for which plaintiff was twice

24   

25   falsely arrested, once in 2017 and another time in 2018, the only two times in his life

26   he has ever been arrested. Although plaintiff was never charged, as there was no

27   

28   

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

evidence that he had done anything wrong – and although he settled both of the lawsuits that he subsequently filed against the county and city in his favor (See Case No.s 19STCV06357 and 2:19-CV-02501-FMO-(ASx)) –, his life is forever damaged because of this crime organization. Just as Mr. Rivera and his co-conspirators try to wiggle out of their clear guilt for their interstate extortion ring as well as their guilt for aiding and abetting defamation, etc., the individuals who made the false police reports falsely claimed that their reports were "privileged" and therefore were not defamation. However, their motions to strike (Anti-SLAPP) and dismiss all failed (See Decl. Dr. Murrey, Par.s 25-26, and Exhibit 9, Par. 27 – plaintiff respectfully asks the court to take judicial notice of an adopted tentative ruling presented here as Exhibit 9).

What drew plaintiff to his girlfriend who succumbed to cancer in March of 2018 was her ability to think for herself and not give into online brainwashing. Her belief and devotion to the real person plaintiff is versus the false image that this crime organization aggressively and maliciously created of him online via **WWW.CHEATERREPORT.COM** gave plaintiff the strength to seek legal recourse and remain by her side during her tragic decline, despite the fact that both plaintiff and his girlfriend continued to be targeted, assaulted and extorted by **WWW.CHEATERREPORT.COM** and "removal" and "reputation" companies even during the final months of her life. (See Decl. Dr. Murrey, Par. 28).

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

Although plaintiff undertook, for the first time in his life, an extraordinary volume of litigation beginning in 2017, every case in which he has been involved has resulted in either a judgment or settlement in his favor. Plaintiff is a scholar of ancient Greece and modern Europe by trade. He deals in evidence and reason. Unlike the defendants who see the law as an opportunity to hide their online crime organization, plaintiff does not litigate frivolously. (See Decl. Dr. Murrey, Par. 29).

Mr. Rivera's references to paragraphs 59-61 of plaintiff's first amended complaint are conclusory and false. The fact is that prior to the postings that severely harmed plaintiff on **WWW.CHEATERREPORT.COM** in 2016 and 2017, plaintiff had never heard the term or concept of a "removal" or "reputation management" company. (See Decl. Dr. Murrey, Par. 30). Only after being severely harmed in California by Mr. Rivera's website **WWW.CHEATERREPORT.COM** whose anonymous and non-responsive nature left plaintiff (like all its victims) with no recourse, but to remove said postings via companies whose advertising targeted him in California, was plaintiff forced under duress to sign various contracts, to accept forum selection clauses and to send money from California to defendants Anthony Will, his business entity "Reputation Resolutions" a.k.a. "Digital Revolution", and other defendants in a desperate attempt to survive the lethal assault that their crime organization had unleashed upon him. (See Decl. Dr. Murrey, Par. 31).

- 10 -

### III.    LEGAL STANDARD

Plaintiff Dr. Murrey need make only a *prima facie* showing of jurisdictional facts to satisfy his burden of demonstrating jurisdiction over defendant, in the absence of an evidentiary hearing. (*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). The Court must take uncontroverted allegations in the complaints as true and resolve any factual conflicts and draw all reasonable inferences in favor of Dr. Murrey. (*Id.*).

### IV.    ARGUMENT

**A. This Court has specific jurisdiction over Dr. Murrey's claims against Defendant.**

Under Rule 4(k)(1)(A), this Court applies California's long-arm statute to determine the bounds of the Court's jurisdiction over a party, which authorizes its courts to exercise jurisdiction to the full extent constitutionally permitted. (*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017)).

**A. Defendant's Conduct subjects him to this Court's jurisdiction.**

Defendant Domingo J. Rivera is the sole owner of PRVT LLC which he intentionally set up in an offshore territory to elude scrutiny while he and his "entities" do business in California and receive business services in California to secretly operate and maintain the core of this crime organization via the revenge-porn and website **WWW.CHEATERREPORT.COM** which, in turn, targets people nationwide, plaintiff and others in California included.

- 11 -

1    Rivera claims that he and his entities do not engage in business in California, but

2    a company and its individuals are subject to jurisdiction where they take action in

3

4    the forum, as when a "defendant's transmission of goods [into the forum state]

5    permits the exercise of jurisdiction . . . where the defendant can be said to have

6    targeted the forum." *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011).

7

8    Alternatively, as the Supreme Court observed in *Daimler AG v. Bauman*: "Agency

9    relationships […] may be relevant to the existence of *specific* jurisdiction" because

10

11   "a corporation can purposefully avail itself of a forum by directing its agents or

12   distributors to take action there." (*Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13

13   (2014)). In fact, Mr. Rivera and his entities, as shown and proven by plaintiff's

14

15   declaration and exhibits regarding the California-based company Cloudflare, Inc.

16   with whom defendants do business, have contacts within the forum state itself

17   which, despite the absurd lengths to which Mr. Rivera goes to mask them, are

18

19   extensive, long-standing and important to the core of their online and nationwide

20   criminal organization.

21   **B. Dr. Murrey's claims arise out of or relate to Defendant's conduct in**
        **California.**
22

23       Mr. Rivera and his businesses regularly, if secretly, do business within

24   California. Mr. Rivera and his businesses regularly received services in California

25

26   for which they pay. They do so to run an online scam whose unfortunate website

27   appears nationwide, including California, and which harms people nationwide,

28

- 12 -

plaintiff and others in California included. They then work with a network of co-conspirators spread out nationwide – often lawyers foaming at the mouth regarding forum selection clauses – who then extort their victims for money which they all received from plaintiff and his accounts in California, then said California-money is finally laundered back into the secret offshore financial "washing machine" of PRVT LLC et. al. that is, in turn, used to pay for website services, for instance in San Francisco, California.

This is relevant as second prong of the personal jurisdiction test involves a causal analysis. The Ninth Circuit has adopted a but-for test: "Under the 'but for' test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 742 (9th Cir. 2013) (quotation marks omitted), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015). Courts do not apply this test "stringently." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1085, 1092–93 (D. Or. 2016) (test "should not be narrowly applied; rather, the requirement is merely designed to confirm that there is some nexus between the cause of action and defendant's contact with the forum"; sustaining jurisdiction where defendant's infringing product was purchased over the web by only three people in the forum) (quotation marks omitted); *California Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 1573399, at *6 (E.D. Cal. Apr. 19, 2016)

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

("Despite its apparently strict language, many district courts in the Ninth Circuit have not applied the 'but for' test stringently"); *Elec. Recyclers Int'l, Inc. v. Calbag Metals Co.*, 2015 WL 1529490, at *4 (E.D. Cal. Apr. 2, 2015). Here the plaintiff's injuries occurred in California and have been caused by the totality of national conduct, and personal jurisdiction exists if the defendant undertook some of this conduct within the forum, which Mr. Rivera did. (See also *Shute v. Carnival*, 897 F.2d 377, 386 (9th Cir. 1990) (upholding personal jurisdiction where defendant had advertised in forum state but had no offices, employees or assets in the forum).

Subsequent cases have continued to make clear that the defendant's forum-based activities need not cause the entire harm. For example, in *Dubose v. Bristol-Myers Squibb Co.*, a resident of South Carolina sued foreign corporations in California for failure to warn and fraudulent misrepresentation with respect to a drug product that the defendants had tested at clinical trials in California and many other states. (2017 WL 2775034 (N.D. Cal. June 27, 2017). The *Dubose* court simultaneously issued an identical ruling in a companion case brought by a New York plaintiff. *Cortina v. Bristol-Myers Squibb Co.*, 2017 WL 2793808 (N.D. Cal. June 27, 2017). The court, applying the Ninth Circuit's but-for test and upholding jurisdiction, rejected the defendants' argument that there is a numerical threshold for in-state conduct when the injury is caused by conduct spread across many jurisdictions: "What would that threshold be? If 25 percent of the clinical trials were

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

conducted in California, would that be enough? 50 percent? 75 percent? The point is that our existing case law provides no basis for imposing an arbitrary cut-off, and the Court is disinclined to fashion a new barrier to the exercise of its jurisdiction from whole cloth." (2017 WL 2775034, at *4.) The court held that since the California clinical trials were "*part of* the unbroken chain of events leading to plaintiff's injury" they did not have to be the sole cause of the injury. (*Id.* at *3 (emphasis added)).

Here, Mr. Rivera and his entities engaged during the relevant time period in substantial in-state conduct to pay, operate, maintain the revenge-porn website **WWW.CHEATERREPORT.COM**. One may also consider the website in *Mavrix* that caused injury merely by making copyrighted materials "accessible to users" in California. (FAC ¶ 118(e); *Mavrix*, 647 F.3d at 1228.) Further, the personal jurisdiction analysis "depends, to a significant degree, on the specific type of tort ... at issue" which in this case is RICO. (*Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (analyzing purposeful direction element); *cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (courts may not "raise the standing hurdle higher than the necessary showing for success on the merits in an action")).

In this action, Dr. Murrey asserts several claims against defendants, including Racketeer Influenced and Corrupt Organizations Act ("Civil RICO"), 18 U.S.C. §

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

1962(a-d); Intentional and Fraudulent Misrepresentation; Fraud; Civil Conspiracy;

Violations of Calif. Bus. & Profs. Code § 17200, et seq. for Unlawful, Unfair and

Fraudulent Acts and Violations of Calif.'s Statutory and Common Law Right of

Publicity. Alongside the shadow-web that defendants created to abuse the World

Wide Web, it is clear that Mr. Rivera and his co-conspirators did business in

California while they also set up a network of domestic and off-shore entities in

well-known tax havens (Puerto Rico, Panama, etc.). They did this to secretly launder

money, divert funds, fabricate backdated corporate records, and in general execute a

variety of elaborate schemes including the operation and maintenance of the

revenge-porn website **WWW.CHEATERREPORT.COM**.  Dr. Murrey has shown

that his claims arose out of and were related to defendant's(s') activities in

California where they operated and enhanced the performance of the website

**WWW.CHEATERREPORT.COM**.

### C. Defendant Domingo J. Rivera has not demonstrated that exercise of personal jurisdiction over him is unreasonable.

Once plaintiff establishes the first two elements of specific jurisdiction, then

the burden shifts to the defendant(s), which cannot meet its "heavy burden" under

the Ninth Circuit's seven-factor test, "to present a compelling case that the exercise

of jurisdiction is unreasonable." (*Chunghwa Telecom Global v. Medcom*, 2016 WL

5815831, at *6 (N.D. Cal. Oct. 5, 2016)). Under factor one, the extent of the

defendant's purposeful interjection into the forum state, Mr. Rivera and his entities

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

purposefully injected themselves into California by deciding to pay for a California-based company's website services: Cloudflare, Inc., which were and are provided to in California, used in California and engaged for their scam conduct within the state. Under factor two, the burden on defendant(s) in defending in the forum is not heavy, given defendant's(s') responsibility for its ongoing secret operation in California over the past decade that has contributed to Dr. Murrey's injuries. (*Kabo Tool Co. v. Porauto Industrial Co.*, 2013 WL 5328496, at *7 (D. Nev. Sep. 20, 2013) ("While jurisdiction in Nevada may not be as convenient to the defendants, it does not present an unreasonable burden. The defendants here have been conducting business in Nevada for over 10 years. If the defendants have the ability to sufficiently conduct business, they also have the ability to defend their actions in Nevada.").

Since the Court is applying federal law, there cannot be a conflict with the sovereignty of another state (factor 3) (*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)). The forum state's interest in adjudicating the dispute, "California has an interest in protecting its residents," (*Universal Stabilization Techns., Inc. v. Advanced BioNutrition Corp.*, 2017 WL 1838955, at *6 (S.D. Cal. May 8, 2017)), which is particularly strong in this case. California is the most efficient forum to resolve the controversy (factor five), given that the injuries and some injury-inducing conduct occurred in this state. Factor six, the importance of the forum to the plaintiff's interest, favors California because it offers convenient

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

1  and effective relief for the Dr. Murrey's RICO and other claims. Finally, as to other

2  forums (factor seven), the "fact that the lawsuit will continue in California with

3  other parties tips the efficiency factor in [plaintiff's] favor." (*Core-Vent Corp. v.*

4  *Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993)).

5

6          Finally, as "expert internet attorneys" and "online Internet experts" all of the

7  defendants who all already do business in California and accept business and money

8  from California will have no inconvenience filing their defenses online in the

9  Central District of California.

10

11  **D. Defendant Domingo J. Rivera and his Entities have been Sufficiently**
     **Served**

12          "A federal court is without personal jurisdiction over a defendant unless the

13  defendant has been served in accordance with Federal Rules of Civil Procedure 4."

14  (*Travelers Cas. & Sur. Co. of Am. V. Brenneke*, 551 F.3d 1132, 1135 (9th Cir.2009).

15  However, "Rule 4 is a flexible rule that should be liberally construed so long as a

16  party receives sufficient notice of the complaint." *United Food & Comm. Workers*

17  *Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984). What is required is

18  "substantial compliance" with Rule 4, with "neither actual notice nor simply naming

19  the defendant in the complaint" being sufficient. *Direct Main Specialists, Inc. v.*

20  *Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir.1988) (quoting *Benny v.*

21  *Pipers*, 799 F.2d, 489, 492 (9th Cir.1986), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198,

22  98 .Ed.2d 149 (1987)).

By now it is clear just how much defendant "DJ Rivera" wants to elude this lawsuit through any and all means and remain, precisely like the website to which he is forever inextricably tied, anonymous and non-responsive. Nevertheless, it is astonishing how "DJ" openly mocks the legal system with his frivolous and conclusory statements also regarding service.

As a courtesy of good faith and to start a conversation in the hope of avoiding court intervention plaintiff emailed the First Amended Complaint and Summons to Mr. Rivera on 20 August 2020 and then plaintiff sent a second courtesy email to both of "DJ"'s known email address (both of which were confirmed by Mr. Minc) on 25 August 2020 (See Decl. Dr. Murrey, Par. 32, and Exhibit 10, Par. 33; and Exhibit 2). Mr. Rivera and all his entities were served via United States Priority Mail with Tracking on 4 September 2020 and on 11 October 2020 Alexander J. Petale, Esq., emailed Mr. Rivera and all his entities the lawsuit again and finally a professional process server was engaged who finally on 28 October 2020 after diligent attempts to find Mr. Rivera properly left the lawsuit and summons at Mr. Rivera's professional mailbox. (See Decl. Dr. Murrey, Par. 34, and Exhibit 11, Par. 35). As required by Cal. B&P Code § 17538.5(d)(1), the CMRA owner or operator, within 48 hours of receipt of process, placed the documents in Rivera's mailbox and, within five days of receipt, plaintiff then had all documents sent to Rivera's last known personal and or home address. (See Decl. Dr. Murrey, Par. 36). Counsel for

- 19 -

Minc, et. al., Mr. Gingras, informed plaintiff that before 10 November 2020 Mr. Rivera had contacted him and Mr. Rivera finally emailed plaintiff directly from the same email address with which Mr. Rivera received this lawsuit and summons in August and then again in October of 2020. (See Decl. Dr. Murrey, Par. 37, and Exhibit 12, Par. 38).

Plaintiff further did engage other investigators to look into Mr. Rivera and leave more copies at his network of addresses. However, given what they perceived as Mr. Rivera's shady ties to "intelligence" they hesitated and plaintiff did not want to put them in an uneasy situation. (See Decl. Dr. Murrey, Par. 39). If the court would like, plaintiff is willing to file a motion for publication of service. However, then he will have to further move the court for costs and it is clear that Mr. Rivera is fully aware of this lawsuit by now. In fact, it is questionable why Mr. Rivera is wasting the court's time and resources.

**E. Alternatively, Dr. Murrey is entitled for leave to amend his complaint and or jurisdictional discovery and or service by publication.**

Dr. Murrey requests jurisdictional discovery if necessary, which "should be granted when . . . the jurisdictional facts are contested or more facts are needed." (*Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Illumina, Inc. v. Qiagen NV*, 2016 WL 3902541, at *4-5 (N.D. Cal. July 19, 2016) ("there are too many factual disputes to resolve without more thorough jurisdictional discovery" against Dutch parent company); *SA Luxury Expeditions LLC v. Latin America for*

- 20 -

1  *Less, LLC*, 2014 WL 6065838, at *2 (N.D. Cal. Nov. 12, 2014) ("defendant's

2  declarations dodge the key issues with artful wording"); *Macias v. Waste Mgmt.*

3
4  *Holdings, Inc.*, 2014 WL 4793989, at *3 (N.D. Cal. Sept. 25, 2014) ("discovery is

5  needed to clarify the controverted issue of personal jurisdiction")). If the Court finds

6  that plaintiff's allegations are insufficient to establish jurisdiction, plaintiff requests

7
8  discovery regarding Mr. Rivera's role as the ultimate decisionmaker with respect to

9  levels of this nationwide online scam, including taking into account his offshore

10  banking stratagem, the business he does and decisions he makes with other

11
12  businesses in California, including any contractual arrangements Mr. Rivera and the

13  other defendants have entered into relating to their California activities.

14
15  **F. Defendant Domingo J. Rivera a.k.a. "DJ" is a Mafia/"Intelligence"**
     **Clown who with his Co-Conspirators think that they are Immune from**
16     **Federal Law as they Irreparably Harm Americans Nationwide and**
       **People Everywhere**

17
18      Anyone taking a careful look at this case, Mr. Rivera's multiple motions and

19  declarations will notice a lack of decency that goes well beyond "DJ" and his

20  counsel failing to complete a telephonic conference prior to the filing of his four

21
22  motions and defendant's protracted and frivolous attempts to elude service of this

23  lawsuit.

24      Beyond his false conclusory statements are defendant's silences that coalesce

25  about what he knows **WWW.CHEATERREPORT.COM** to be. While never

26
27  refuting his involvement with this criminal online organization, "DJ" fails to

28

- 21 -

mention for whom he was "in-house counsel", nor the name the "other lawyer" with whom he worked, or the other members of "IRC" a.k.a. Internet Reputation Control. While offering garbled sentences about a "private/proxy domain registration company […]" Mr. Rivera never mentions why, if he has actually created a bullet-proof legal strategy to get away with this scam, everyone and everything need be absolutely private and anonymous, like "PRVT LLC".

As plaintiff has shown, "DJ" works closely with other individuals like Aaron Minc. (See Decl. Dr. Murrey, Par.s 6-10, and Exhibit 2, Par. 11; see also the Declaration of Alexander J. Petale). As it turns out "DJ's friend Aaron Minc is often sued for civil conspiracies, fraud, etc. alongside the "NY FBI" and has appeared in an advertisement with a California businessman who has been charged with felonies for his own "posting removal" extortion ring. Like "DJ", Minc likes to abuse the law if he's caught red-handed, thus his lawsuits in Ohio, also against plaintiff that Minc filed after plaintiff filed this case – and which, astonishingly, is based on Minc's delusional claim that his "trade secrets" were "misappropriated". (See Decl. Dr. Murrey, Par. 40, and Exhibit 13, Par. 41). Exposing someone's extortion ring is hardly stealing a trade secret.

Then there is the issue of geography, beyond jurisdiction and venue. "DJ" is all over Virginia, Henrico County, etc. exactly where most of the seventeen (17) "intelligence" agencies and their contractors try to keep their heads down – and the

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

infamous espionage district with its shameful history of grand juries. "There is a

perfectly acceptable legal system in Virginia, where Rivera resides, should

Plaintiff choose to file suit there," his counsel says.

In line with his lack of subtly, "DJ" follows suit with CIA's intentionally

pejorative use of the concept and words "conspiracy theory" that dates back to when

Alan Dulles seeking to misdirect the public away from the assignation of JFK.

Anyone familiar with American history will know the illicit wedding of organized

crime and pre-"intelligence" agencies in the 1910s and 1920s. And anyone

following current events would have noticed how entangled news outlets and

"intelligence" have become. One of thinks of the now shamed LA Times

"journalist" Ken Dilanian. (See Decl. Dr. Murrey, Exhibit 14, par. 42) *This reminds
one of "DJ"'s own news appearance wherein he says scams are reliable and that
the public "should pay the crooks" when they are extorted online.* (See Decl. Dr.

Murrey, Exhibit 15, Par. 15).

When one looks at the heinous history of organized crime and "intelligence"

– for instance, the somewhat recent pedophile ring "The Finders Cult" inseparable

from the FBI and CIA – or more recently the American and Israeli "intelligence"

sex trafficking ring to which Jeffrey Epstein and Ghislaine Maxwell (her father

worked with Mossad until they murdered him after a money-deal went sideways)

and host of other "celebrity" individuals too endless and grisly to name –, it is clear

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

1  that a revenge-porn "shaming"-website with political motives like

2  **WWW.CHEATERREPORT.COM** looks like just another "covert op to control

3

4  and exploit the American populace gone bad".

5    But although "DJ" and his co-conspirators – Mr. Gingras, it should be noted,

6  who is Minc and Will's counsel also appears in an advertisement on yet another

7  "Name-Shame" website (See Decl. Dr. Murrey, Par. 44, Exhibit 16) – are hoping

8

9  they can keep their scam in the dark and elude justice *per usual*, it is worth noting

10 that the federal judge Alexander Acosta, who infamously gave Jeffrey Epstein a

11 "sweetheart deal" that caused countless more victims to suffer all because, in

12

13 Acosta's words, he was told that "he [Epstein] belonged to intelligence", now has a

14 legacy of shame. (See Decl. Dr. Murrey, Exhibit 17, Par. 45)

15

16

17    //

18

19

20    Defendants would do well to remember that instead of: "We the blob of

21 silicon valley tech oligarchs and un-elected 'intelligence officers'…", *The*

22 *Constitution* begins: "*We the people…*" This is vital. This is one of the things that

23

24 makes America attractive: a legal system with the potential to harness the common

25 sense and decency that is hidden in the hardwiring of hundreds of millions of people

26

27

28

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

and which has been evolvin for hundreds of thousands of years. This is far more

trustworthy than the exceptional psychopathy on display in said defendant-clowns.

## V.    CONCLUSION

For the reasons and arguments presented herein, Dr. Murrey respectfully requests

the Court to deny defendant Domingo J. Rivera's motion and find that Mr. Rivera is

subject to jurisdiction.

DATED: 29 November 2020              Respectfully submitted,


                          By:    _____

                                 Dr. Stewart Lucas Murrey
                                 *Plaintiff & Plaintiff in Pro Se*

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS