1  **Dr. Stewart Lucas Murrey**
   1217 Wilshire Blvd. # 3655
2  Santa Monica, CA 90403
   Tel.: (310) 994-1711
3  Email: **2@lucasmurrey.io**

4  **Plaintiff & Plaintiff in Pro Se**

5

6              **UNITED STATES DISTRICT COURT**

7              **CENTRAL DISTRICT OF CALIFORNIA**

8

9  DR. STEWART LUCAS MURREY, an       **Case No. 2:20-cv-06217-PA (SKx)**
   individual;                        *Hon. Judge Percy Anderson, Ctrm 9A, 9th Fl.*
10             Plaintiff,             *Hon. Mag. Judge Steve Kim, Ctrm 540, 5th Fl.*

11 vs.
                                      **PLAINTIFF DR. MURREY'S**
12 AARON MINC, an individual, MINC    **OPPOSITION TO DEFENDANT**
   LAW, a business entity; DOMINGO J. **DOMINGO J. RIVERA, ATTORNEY**
13 RIVERA, an individual; RIVERA LAW  **AT LAW A.K.A. THE RIVERA**
   GROUP, PLC a.k.a. DOMINGO J.       **GROUP, PLC'S MOTION TO**
14 RIVERA, ATTORNEY AT LAW, PLC,      **DISMISS (FRCP 12(b)(2));**
   a limited liability company; PRVT  **DECLARATION OF DR. STEWART**
15 L.L.C., a limited liability company; **LUCAS MURREY; DECLARATION**
   ELIZABETH JORDAN, an individual;   **OF ALEXANDER J. PETALE, ESQ.**
16 INTERNET REPUTATION
   CONTROL a.k.a. IRC, a business
17 entity; ANTHONY WILL, an
   individual; DIGITAL REVOLUTION     Hearing Date:    21 December 2020
18 LLC a.k.a. REPUTATION              Hearing Time:    1:30 p.m.
   RESOLUTIONS, a business entity;    Courtroom:       10A
19 BRANDYOURSELF.COM, INC., a         Judge:           Hon. Percy Anderson
   limited liability company, TOM
20 VITOLO, an individual; CHRISTIAN
   TRYON, an individual; and JOHN DOE
21 NUMBERS 1-10;

22             Defendants.

23

24

25

26

27

28

---

- 1 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

## I. INTRODUCTION

Unless they are ignorant of Federal Law, Nick Jurkowitz and his client defendant individual and entities: Domingo J. Rivera, Domingo J. Rivera, Attorney at Law a.k.a. The Rivera Group, PLC, Internet Reputation Resolutions (IRC) and PRVT LLC intentionally filed all four (4) of their motions to dismiss this case before any of them really started, much less completed the required conference of counsel pursuant to L.R. 7-3 (Declaration of Dr. Murrey, Par. 4). Having sent only one single, initial email requesting a telephonic conference on 19 November 2020 and then, hours later that same day, deceitfully misrepresenting to this Court that they had fulfilled their L.R. 7-3 duties in their Notices (See Exhibit 1 to the Decl. of Dr. Murrey, Par. 5), plaintiff Dr. Murrey is requesting a conference per L.R. 7-3 for his intended motions for sanctions against each of these four (4) defendants and their "specially" appearing representation, Mr. Jurkowitz, for their bad faith. Perhaps this matter could have been resolved without court intervention and this abuse of the law against a *pro se* litigant, to whom Federal Courts are particularly liberal, does not go unnoticed.

## II. FACTUAL SUMMARY

Defendant Domingo J. Rivera, Attorney at Law a.k.a. The Rivera Group, PLC ("Rivera Group") repeatedly perjured itself in several instances in their eight (8) declarations to this Court. Mr. Rivera and his entities do business in California. This

- 2 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

1  includes, but is not limited to maintaining and enhancing the "performance" of the

2  revenge-porn, politically motivated "shaming"-website

3
4  **WWW.CHEATERREPORT.COM**.

5      Aware of the criminal organization to which its belongs, Mr. Rivera a.k.a. "DJ"

6  and his "Rivera Group", seek to maintain absolute secrecy and anonymity about his

7
8  and his entities' involvement (exactly like **WWW.CHEATERREPORT.COM**) in

9  said nationwide extortion ring. On the one hand, "DJ" and the "Rivera Group"

10 network of entities are one of the "go-to" secret sources for his co-conspirators like

11
12 defendants such as Aaron Minc to remove postings from

13 **WWW.CHEATERREPORT.COM**. The way their online scam works is the

14 following: After harmful postings on **WWW.CHEATERREPORT.COM** severely

15
16 damage the online reputations of victims nationwide said victims are extorted into

17 paying money for the removal of defamatory postings, plaintiff in California who

18
19 sent money from California to all defendants included. Mr. Minc made the

20 significance of Mr. Rivera and his entities, "Rivera Group" included, clear both

21 during a telephone conversation and in an email to plaintiff on 15 July 2015 (See

22
23 Decl. Dr. Murrey, Par.s 6-10, and Exhibit 2, Par. 11; see also the Declaration of

24 Alexander J. Petale).

25      But as Mr. Minc and all the other defendants know (and which they illegally hide

26 from all their "clients" i.e. victims, plaintiff in California included), while "DJ

27
28

- 3 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

Rivera" and his "Rivera Group" secretly remove harmful postings on **WWW.CHEATERREPORT.COM**, Mr. Rivera and his "Rivera Group" are also secretly doing business in California to maintain, support, operate and perform duties necessary for **WWW.CHEATERREPORT.COM** to exist online in all fifty states, California included.

In an effort to hide his participation in this crime organization Mr. Rivera set up a business entity by the name of "Domingo J. Rivera, Rivera Law Group, Attorney at Law, PLC". The real reason, however, that "DJ" set up this seemingly commonplace company is so that he could, in turn, open up a second, anonymous company within the financial secrecy jurisdiction of Puerto Rico, which Mr. Rivera names "PRVT LLC" and to which "The Rivera Group" is the secret link.

Despite Mr. Rivera's perjuries in this Federal Court, he and his entities do have a real and serious, if secretive history of doing business in California. In fact, Mr. Rivera and his entities specifically do business in California *to maintain and advance this online criminal organization.* **<u>Mr. Rivera uses among his various entities, PRVT LLC, which is linked directly to The Rivera Group, to make payments to the San Francisco based tech-company Cloudflare, Inc. which is located at 101 Townsend St., San Francisco, CA 94107.</u>** This is clear in the documents produced by Cloudflare, Inc. and the Registry of Corporations and Entities information showing that PRVT LLC is linked to "The Rivera Group" and

- 4 -

Mr. Rivera and his other entities (See Decl. Dr. Murrey, Par.s 12-13, and Exhibit 3, Par. 13).

It is also clear that "DJ Rivera" maintains another secret entity within another financial secrecy jurisdiction, this time in Panama, also named "PRVT LLC" and through which **WWW.CHEATERREPORT.COM** maintains its Domain, Registrant, Administrative and Technical Contacts. (See Decl. Dr. Murrey, Par. 14, and Exhibit 4, Par. 15). It should be noted that in their attempts to elude public scrutiny and justice, it is common practice of those involved in this crime organization, defendants all included, to rapidly open and dissolve countless business entities. Defendant Anthony Will's entity "Digital Revolution" a.k.a. "Reputation Resolutions", for instance, has been opened and dissolved countless times within the last ten (10) years by him and other individuals. (See Decl. Dr. Murrey, Par. 16, and Exhibit 5, Par. 17).

Thanks to Mr. Rivera, his entities, "The Rivera Group" included, the defendants and other co-conspirators, **WWW.CHEATERREPORT.COM** has an exceptionally powerful i.e. destructive presence on Google and other such big-tech social-media platforms. Together these criminals use this revenge-porn "shaming" and politically motivated website **WWW.CHEATERREPORT.COM** to inflict incalculable harm and distress onto countless people (its victims) nationwide and beyond, the plaintiff in California included, while maintaining absolute anonymity.

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

Because its victims have no recourse due to **WWW.CHEATERREPORT.COM**'s intentionally absolute non-responsive and anonymous nature, plaintiff in California included, they are forced to give into targeted advertising and pay those who maintain this nationwide extortion ring. Defendants such as Minc feign ignorance and deceitfully act as if they have no secret connections and or agendas to continue harming and extorting the entirety of the American populace, including the citizenry of California to whom plaintiff belongs.

Mr. Rivera and his entities, "The Rivera Group" included, have taken money from others such as Mr. Minc and his law office countless times, including when plaintiff was victimized and extorted. This means that not only is Mr. Rivera and his entities, "The Rivera Group" included, doing significant business in California, paying for services and receiving and enjoying said services within California, to run this unsavory scam, Mr. Rivera and his entities, "The Rivera Group" included, are also taking monies received from California, for instance, from Mr. Minc and his entities.

Aside from the conclusory and intentionally false statements by Mr. Rivera and his entities, "The Rivera Group" included – all of which are meaningless as they fail to deal with the facts that plaintiff has stated in his lawsuit –, "DJ"'s summary of this action is borderline delusional. This action does not "arise from posts made on a public forum", as Mr. Rivera claims. This action arises from an extortion ring

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

orchestrated by Mr. Rivera, his entities, "The Rivera Group" included,  and co-conspirators that includes their payments to companies in California to operate and maintain the disgraceful revenge-porn and politically motivated "shaming"-website **WWW.CHEATERREPORT.COM** and other such online platforms. (See Decl. Dr. Murrey, Par. 18, and Exhibit 6, Par. 19). By severely harming innocent people nationwide, including California, through services purchased and used in California, "DJ" and others, in turn, profit off of the irreparable damage and desperation they themselves caused.

As to be expected from an individual who aggressively perjures himself on countless occasions in federal court, Mr. Rivera is ignorant of several indisputable facts regarding this lawsuit. First: Mr. Rivera misrepresents the timeline of damages to plaintiff who continued to be targeted on **WWW.CHEATERREPORT.COM** well into 2018 and after. (See Decl. Dr. Murrey, Par. 20, and Exhibit 7, Par. 21). This creates still another direct link to Mr. Rivera's entities such as PRVT LLC and The Rivera Group which, according to Mr. Rivera's own declaration, has been actively doing business in California and paying Cloudflare, Inc. in San Francisco (not far from Silicon Valley) to operate and maintain the revenge-porn and political "shaming"-website since 17 December 2017.

Because defendants, Mr. Rivera and "The Rivera Group" included, make false, conclusory statements about this lawsuit, critical facts to this case need be clarified.

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

1   Plaintiff began to be severely harmed by anonymous postings beginning in 2016 on

2   **WWW.CHEATERREPORT.COM**. (See Decl. Dr. Murrey, Par. 22) Between

3

4   2016 and through 2018 hundreds of malicious, defamatory and anonymous postings

5   by individuals on **WWW.CHEATERREPORT.COM** unknown to plaintiff

6   resulted in damages to plaintiff's life and ability to earn money as a scholar, in real

7

8   estate, etc. not only during this time, but after as the harmful aftereffects will

9   continue for the rest of plaintiff's life. (Ibid.)

10     Because defendant Rivera's crime organization harms its victims irreparably, the

11

12   unusually severe online defamation and cyber-bullying that the revenge-porn

13   website **WWW.CHEATERREPORT.COM** enacts, emboldens, facilitates and aids

14

15   and abets leads to extraordinary harassment in persons' everyday off-line lives.

16   Individuals who seemed to be posting on **WWW.CHEATERREPORT.COM**

17   contacted plaintiff's girlfriend in 2017 to further defame plaintiff to her by telephone

18

19   and email directly. Opposite to Mr. Rivera's meaningless conclusory statements,

20   these individuals (Shannyn Poer and Flor Edwards) signed declarations in 2019

21   claiming that they had never posted on **WWW.CHEATERREPORT.COM**. (See

22

23   Decl. Dr. Murrey, Par. 23, and Exhibit 8, Par. 24). The anonymous and non-

24   responsive nature of Mr. Rivera's online porn-website scam makes it impossible for

25   people to have any other recourse than to be extorted by these "removal" and

26

27   "reputation management companies".

28

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

The cyberbullying of Mr. Rivera's **WWW.CHEATERREPORT.COM**
emboldened individuals to take *the exact language and defamation* from posts on
said website to make two (2) false police reports for which plaintiff was twice
falsely arrested, once in 2017 and another time in 2018, the only two times in his life
he has ever been arrested. Although plaintiff was never charged, as there was no
evidence that he had done anything wrong – and although he settled both of the
lawsuits that he subsequently filed against the county and city in his favor (See Case
No.s 19STCV06357 and 2:19-CV-02501-FMO-(ASx)) –, his life is forever
damaged because of this crime organization. Just as Mr. Rivera and his co-
conspirators try to wiggle out of their clear guilt for their interstate extortion ring as
well as their guilt for aiding and abetting defamation, etc., the individuals who made
the false police reports falsely claimed that their reports were "privileged" and
therefore were not defamation. However, their several motions to strike (Anti-
SLAPP) and dismiss all failed (See Decl. Dr. Murrey, Par.s 25-26, and Exhibit 9,
Par. 27 – plaintiff respectfully asks the court to take judicial notice of an adopted
tentative ruling presented here as Exhibit 9).

What drew plaintiff to his girlfriend who succumbed to cancer in March of 2018
was her ability to think for herself and not give into online brainwashing. Her belief
and devotion to the real person plaintiff is versus the false image that this crime
organization aggressively and maliciously created of him online via

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

1  **WWW.CHEATERREPORT.COM** gave plaintiff the strength to seek legal

2  recourse and remain by her side during her tragic decline, despite the fact that both

3

4  plaintiff and his girlfriend continued to be targeted, assaulted and extorted by

5  **WWW.CHEATERREPORT.COM** and "removal" and "reputation" companies

6  even during the final months of her life. (See Decl. Dr. Murrey, Par. 28).

7

8     Although plaintiff undertook, for the first time in his life, an extraordinary

9  volume of litigation beginning in 2017, every case in which he has been involved

10  has resulted in either a judgment or settlement in his favor. Plaintiff is a scholar of

11

12  ancient Greece and modern Europe by trade. He deals in evidence and reason.

13  Unlike the defendants who see the law as an opportunity to maliciously conceal

14  their online crime organization, plaintiff does not litigate frivolously. (See Decl. Dr.

15

16  Murrey, Par. 29).

17     Defendant's references to paragraphs 59-61 of plaintiff's first amended

18  complaint are conclusory and false. The fact is that prior to the postings that

19

20  severely harmed plaintiff on **WWW.CHEATERREPORT.COM** in 2016 and

21  2017, plaintiff had never heard the term or concept of a "removal" or "reputation"

22

23  management" company. (See Decl. Dr. Murrey, Par. 30). Only after being severely

24  harmed in California by Mr. Rivera's website **WWW.CHEATERREPORT.COM**

25  whose anonymous and non-responsive nature left plaintiff (like all its victims) with

26  no recourse, but to remove said postings via companies whose advertising targeted

27

28

- 10 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

1  him in California, was plaintiff forced under duress to sign various contracts, to

2  accept forum selection clauses and to send money from California to defendants

3
4  Anthony Will, his business entity "Reputation Resolutions" a.k.a. "Digital

5  Revolution", and other defendants in a desperate attempt to survive the lethal assault

6  that their crime organization had unleashed upon him. (See Decl. Dr. Murrey, Par.

7
8  31).

9              **III.   LEGAL STANDARD**

10
11      Plaintiff Dr. Murrey need make only a *prima facie* showing of jurisdictional facts

12  to satisfy his burden of demonstrating jurisdiction over defendant, in the absence of

13
14  an evidentiary hearing. (*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d

15  1124, 1127 (9th Cir. 2010)). The Court must take uncontroverted allegations in the

16  complaints as true and resolve any factual conflicts and draw all reasonable

17
18  inferences in favor of Dr. Murrey. (*Id.*).

19              **IV.   ARGUMENT**

20   **A. This Court has specific jurisdiction over Dr. Murrey's claims against**
21   **Defendant.**

22      Under Rule 4(k)(1)(A), this Court applies California's long-arm statute to

23  determine the bounds of the Court's jurisdiction over a party, which authorizes its

24
25  courts to exercise jurisdiction to the full extent constitutionally permitted. (*Axiom*

26  *Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017)).

27   **A. Defendant's Conduct subjects him to this Court's jurisdiction.**
28

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

Defendant "The Rivera Group" was set up to help hide Mr. Rivera's other entity PRVT LLC in an offshore territory to elude scrutiny while he and his "entities" did business in California and received business services in California to secretly operate and maintain the core of this crime organization via the revenge-porn and website **WWW.CHEATERREPORT.COM** which, in turn, targets people nationwide, plaintiff and others in California included.

Rivera claims that he and his entities do not engage in business in California, but a company and its individuals are subject to jurisdiction where they take action in the forum, as when a "defendant's transmission of goods [into the forum state] permits the exercise of jurisdiction . . . where the defendant can be said to have targeted the forum." *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011). Alternatively, as the Supreme Court observed in *Daimler AG v. Bauman*: "Agency relationships [...] may be relevant to the existence of *specific* jurisdiction" because "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." (*Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014)). In fact, Mr. Rivera and his entities, as shown and proven by plaintiff's declaration and exhibits regarding the California-based company Cloudflare, Inc. with whom defendants do business, have contacts that, despite the absurd lengths to which Mr. Rivera goes to mask them, are extensive, long-standing and important to the core of their online and nationwide criminal organization.

- 12 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

**B. Dr. Murrey's claims arise out of or relate to Defendant's conduct in California.**

Mr. Rivera and his businesses, "The Rivera Group" included, regularly, if secretly, do business within California. Mr. Rivera and his businesses, "The Rivera Group" included, regularly received services in California for which they pay. They do so to run an online scam whose unfortunate website appears nationwide, including California, and which harms people nationwide, plaintiff and others in California included. They then work with a network of co-conspirators spread out nationwide – often lawyers foaming at the mouth regarding forum selection clauses – who then extort their victims for money which they all received from plaintiff and his accounts in California, then said California-money is finally laundered back into the secret offshore financial "washing machine" of PRVT LLC which is directly linked to "The Rivera Group" et. al. that is, in turn, used to pay for website services, for instance in San Francisco, California.

This is relevant as second prong of the personal jurisdiction test involves a causal analysis. The Ninth Circuit has adopted a but-for test: "Under the 'but for' test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 742 (9th Cir. 2013) (quotation marks omitted), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015). Courts do not apply this test "stringently." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1085,

- 13 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

1092–93 (D. Or. 2016) (test "should not be narrowly applied; rather, the requirement is merely designed to confirm that there is some nexus between the cause of action and defendant's contact with the forum"; sustaining jurisdiction where defendant's infringing product was purchased over the web by only three people in the forum) (quotation marks omitted); *California Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 1573399, at *6 (E.D. Cal. Apr. 19, 2016) ("Despite its apparently strict language, many district courts in the Ninth Circuit have not applied the 'but for' test stringently"); *Elec. Recyclers Int'l, Inc. v. Calbag Metals Co.*, 2015 WL 1529490, at *4 (E.D. Cal. Apr. 2, 2015). Here the plaintiff's injuries occurred in California and have been caused by the totality of national conduct, and personal jurisdiction exists if the defendant undertook some of this conduct within the forum, which Mr. Rivera and "The Rivera Group" did. (See also *Shute v. Carnival*, 897 F.2d 377, 386 (9th Cir. 1990) (upholding personal jurisdiction where defendant had advertised in forum state but had no offices, employees or assets in the forum).

Subsequent cases have continued to make clear that the defendant's forum-based activities need not cause the entire harm. For example, in *Dubose v. Bristol-Myers Squibb Co.*, a resident of South Carolina sued foreign corporations in California for failure to warn and fraudulent misrepresentation with respect to a drug product that the defendants had tested at clinical trials in California and many other

- 14 -

states. (2017 WL 2775034 (N.D. Cal. June 27, 2017). The *Dubose* court simultaneously issued an identical ruling in a companion case brought by a New York plaintiff. *Cortina v. Bristol-Myers Squibb Co.*, 2017 WL 2793808 (N.D. Cal. June 27, 2017). The court, applying the Ninth Circuit's but-for test and upholding jurisdiction, rejected the defendants' argument that there is a numerical threshold for in-state conduct when the injury is caused by conduct spread across many jurisdictions: "What would that threshold be? If 25 percent of the clinical trials were conducted in California, would that be enough? 50 percent? 75 percent? The point is that our existing case law provides no basis for imposing an arbitrary cut-off, and the Court is disinclined to fashion a new barrier to the exercise of its jurisdiction from whole cloth." (2017 WL 2775034, at *4.) The court held that since the California clinical trials were "*part of* the unbroken chain of events leading to plaintiff's injury" they did not have to be the sole cause of the injury. (*Id.* at *3 (emphasis added)).

Here, Mr. Rivera and his entities, "The Rivera Group" included, engaged during the relevant time period in substantial in-state conduct to pay, operate, maintain the revenge-porn website **WWW.CHEATERREPORT.COM**. One may also consider the website in *Mavrix* that caused injury merely by making copyrighted materials "accessible to users" in California. (FAC ¶ 118(e); *Mavrix*, 647 F.3d at 1228.) Further, the personal jurisdiction analysis "depends, to a

- 15 -

significant degree, on the specific type of tort ... at issue" which in this case is

RICO. (*Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (analyzing purposeful

direction element); *cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*

*Inc.*, 528 U.S. 167, 181 (2000) (courts may not "raise the standing hurdle higher

than the necessary showing for success on the merits in an action")).

In this action, Dr. Murrey asserts several claims against defendants, including

Racketeer Influenced and Corrupt Organizations Act ("Civil RICO"), 18 U.S.C. §

1962(a-d); Intentional and Fraudulent Misrepresentation; Fraud; Civil Conspiracy;

Violations of Calif. Bus. & Profs. Code § 17200, et seq. for Unlawful, Unfair and

Fraudulent Acts and Violations of Calif.'s Statutory and Common Law Right of

Publicity. Alongside the shadow-web that defendants created to abuse the World

Wide Web, it is clear that Mr. Rivera, his entities, "The Rivera Group" included,

and their co-conspirators did business in California while they also set up a network

of domestic and off-shore entities in well-known tax havens (Puerto Rico, Panama,

etc.). They did this to secretly launder money, divert funds, fabricate backdated

corporate records, and in general execute a variety of elaborate schemes including

the operation and maintenance of the revenge-porn website

**WWW.CHEATERREPORT.COM**.  Dr. Murrey has thus shown that his claims

arose out of and were related to defendant's(s') activities in California where they

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

operated and enhanced the performance of the website

**WWW.CHEATERREPORT.COM**.

### C. Defendant Domingo J. Rivera has not demonstrated that exercise of personal jurisdiction over him is unreasonable.

Once plaintiff establishes the first two elements of specific jurisdiction, then the burden shifts to the defendant(s), which cannot meet its "heavy burden" under the Ninth Circuit's seven-factor test, "to present a compelling case that the exercise of jurisdiction is unreasonable." (*Chunghwa Telecom Global v. Medcom*, 2016 WL 5815831, at *6 (N.D. Cal. Oct. 5, 2016)). Under factor one, the extent of the defendant's purposeful interjection into the forum state, Mr. Rivera and his entities purposefully injected themselves into California by deciding to pay for a California-based company's website services: Cloudflare, Inc., which were and are provided to in California, used in California and engaged for their scam conduct within the state. Under factor two, the burden on defendant(s) in defending in the forum is not heavy, given defendant's(s') responsibility for its ongoing secret operation in California over the past decade that has contributed to Dr. Murrey's injuries. (*Kabo Tool Co. v. Porauto Industrial Co.*, 2013 WL 5328496, at *7 (D. Nev. Sep. 20, 2013) ("While jurisdiction in Nevada may not be as convenient to the defendants, it does not present an unreasonable burden. The defendants here have been conducting business in Nevada for over 10 years. If the defendants have the ability to sufficiently conduct business, they also have the ability to defend their actions in Nevada.").

Since the Court is applying federal law, there cannot be a conflict with the sovereignty of another state (factor 3) (*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)). The forum state's interest in adjudicating the dispute, "California has an interest in protecting its residents," (*Universal Stabilization Techns., Inc. v. Advanced BioNutrition Corp.*, 2017 WL 1838955, at *6 (S.D. Cal. May 8, 2017)), which is particularly strong in this case. California is the most efficient forum to resolve the controversy (factor five), given that the injuries and some injury-inducing conduct occurred in this state. Factor six, the importance of the forum to the plaintiff's interest, favors California because it offers convenient and effective relief for the Dr. Murrey's RICO and other claims. Finally, as to other forums (factor seven), the "fact that the lawsuit will continue in California with other parties tips the efficiency factor in [plaintiff's] favor." (*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993)).

Finally, as "expert internet attorneys" and "online Internet experts" all of the defendants – all of whom already have a custom of doing business in California and accepting business and money from California – will have no inconvenience filing their defenses online in the Central District of California.

**D. Defendant Domingo J. Rivera and his Entities, "The Rivera Group" included, have been Sufficiently Served**

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rules of Civil Procedure 4."

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12

(*Travelers Cas. & Sur. Co. of Am. V. Brenneke*, 551 F.3d 1132, 1135 (9th Cir.2009).

However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Comm. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984). What is required is "substantial compliance" with Rule 4, with "neither actual notice nor simply naming the defendant in the complaint" being sufficient. *Direct Main Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir.1988) (quoting *Benny v. Pipers*, 799 F.2d, 489, 492 (9th Cir.1986), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 .Ed.2d 149 (1987)).

13
14
15
16
17
18
19

By now it is clear just how much defendant "DJ Rivera" and his entities want to elude this lawsuit through any and all means and remain, precisely like the website to which they are linked, anonymous and non-responsive. Nevertheless, it is astonishing how "DJ" openly mocks the legal system with his frivolous and conclusory statements also regarding service.

20
21
22
23
24
25
26
27
28

As a courtesy of good faith and to start a conversation in the hope of avoiding court intervention plaintiff emailed the First Amended Complaint and Summons to Mr. Rivera and his entities, "The Rivera Group" included, on 20 August 2020 and then plaintiff sent a second courtesy email to both of "DJ"'s known email address (both of which were confirmed by Mr. Minc) on 25 August 2020 (See Decl. Dr. Murrey, Par. 32, and Exhibit 10, Par. 33; and Exhibit 2). Mr. Rivera and all his

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS

1    entities, "The Rivera Group" included, were served via United States Priority Mail

2    with Tracking on 4 September 2020 and on 11 October 2020 Alexander J. Petale,

3

4    Esq., emailed Mr. Rivera and all his entities, "The Rivera Group" included, the

5    lawsuit again and finally a professional process server was engaged who finally on

6    28 October 2020 after diligent attempts to find Mr. Rivera properly left the lawsuit

7

8    and summons at Mr. Rivera's and "The Rivera Group"'s professional mailbox. (See

9    Decl. Dr. Murrey, Par. 34, and Exhibit 11, Par. 35). As required by Cal. B&P Code

10   § 17538.5(d)(1), the CMRA owner or operator, within 48 hours of receipt

11

12   of process, placed the documents in Rivera's mailbox and, within five days

13   of receipt, plaintiff then had all documents sent to Rivera's last known personal and

14

15   or home address. (See Decl. Dr. Murrey, Par. 36). Counsel for Minc, et. al., Mr.

16   Gingras, informed plaintiff that before 10 November 2020 Mr. Rivera had contacted

17   him and Mr. Rivera finally emailed plaintiff directly from the same email address

18

19   with which Mr. Rivera and his entities, "The Rivera Group" included, received this

20   lawsuit and summons in August and then again in October of 2020. (See Decl. Dr.

21   Murrey, Par. 37, and Exhibit 12, Par. 38).

22        Plaintiff further engaged investigators to look into Mr. Rivera and his entities,

23

24   "The Rivera Group" included, and left more copies of this lawsuit at his network of

25   addresses. However, given what they perceived as Mr. Rivera's shady ties to

26   "intelligence" they hesitated and plaintiff did not want to put them in an uneasy

27

28

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

situation. (See Decl. Dr. Murrey, Par. 39). If the court would like, plaintiff is willing

to file a motion for publication of service. However, then he will further have to

move the court for reimbursement of whatever costs were necessary from

defendant(s) and it is clear that Mr. Rivera is fully aware of this lawsuit by now. In

fact, it is questionable why Mr. Rivera is wasting the court's time and resources.

### E. Alternatively, Dr. Murrey is entitled for leave to amend his complaint and or jurisdictional discovery and or service by publication.

Dr. Murrey requests jurisdictional discovery if necessary, which "should be

granted when . . . the jurisdictional facts are contested or more facts are needed."

(*Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Illumina, Inc. v.*

*Qiagen NV*, 2016 WL 3902541, at *4-5 (N.D. Cal. July 19, 2016) ("there are too

many factual disputes to resolve without more thorough jurisdictional discovery"

against Dutch parent company); *SA Luxury Expeditions LLC v. Latin America for*

*Less, LLC*, 2014 WL 6065838, at *2 (N.D. Cal. Nov. 12, 2014) ("defendant's

declarations dodge the key issues with artful wording"); *Macias v. Waste Mgmt.*

*Holdings, Inc.*, 2014 WL 4793989, at *3 (N.D. Cal. Sept. 25, 2014) ("discovery is

needed to clarify the controverted issue of personal jurisdiction")). If the Court finds

that plaintiff's allegations are insufficient to establish jurisdiction, plaintiff requests

discovery regarding Mr. Rivera's and "The Rivera Group"'s role as the ultimate

decisionmaker with respect to levels of this nationwide online scam, including

taking into account his offshore banking stratagem, the business he does and

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

1   decisions he makes with other businesses in California, including any contractual

2   arrangements Mr. Rivera and the other defendants have entered into relating to their

3
    California activities.
4

5       **F. Defendant Domingo J. Rivera a.k.a. "DJ" is a Mafia/"Intelligence"**
           **Clown who with his Co-Conspirators think that they are Immune from**
6          **Federal Law as they Irreparably Harm Americans Nationwide and**
           **Peoples Everywhere**
7

8          Anyone taking a careful look at this case, Mr. Rivera's multiple motions and

9
    declarations will notice a lack of decency that goes well beyond "DJ" and his
10

11  counsel failing to complete a telephonic conference prior to the filing of his four

12  motions and defendant's protracted and frivolous attempts to elude service of this

13
    lawsuit.
14

15         Beyond his false conclusory statements are defendant's silences that coalesce

16  about what he knows **WWW.CHEATERREPORT.COM** to be. While never

17
    refuting his involvement with this criminal online organization, "DJ" fails to
18

19  mention for whom he was "in-house counsel", nor the name the "other lawyer" with

20  whom he worked, or the other members of "IRC" a.k.a. Internet Reputation Control,

21
    nor "The Rivera Groups" explicit ties to "PRVT LLC" etc. While offering garbled
22

23  sentences about a "private/proxy domain registration company […]" Mr. Rivera

24  refuses to explain the simple question as to why, if he has actually created a bullet-

25
    proof legal strategy to get away with this scam, everyone and everything need be
26

27  absolutely private and anonymous, like "PRVT LLC".

28

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

As plaintiff has shown, "DJ" and his entities, "The Rivera Group" included, works closely with other individuals like Aaron Minc. (See Decl. Dr. Murrey, Par.s 6-10, and Exhibit 2, Par. 11; see also the Declaration of Alexander J. Petale). As it turns out "DJ"'s friend Aaron Minc is often sued for civil conspiracies, fraud, etc. alongside the "NY FBI" and has appeared in an advertisement with a California businessman who has been charged with felonies for his own "posting removal" extortion ring. Like "DJ", Minc likes to abuse the law if he's caught red-handed, thus his lawsuits in Ohio, also against plaintiff that Minc filed after plaintiff filed this case – and which, astonishingly, is based on Minc's delusional claim that his "trade secrets" were "misappropriated". (See Decl. Dr. Murrey, Par. 40, and Exhibit 13, Par. 41). Exposing someone's extortion ring is hardly stealing a trade secret.

Then there is the issue of geography, beyond jurisdiction and venue. "DJ" is all over Virginia, Henrico County, etc. exactly where most of the seventeen (17) "intelligence" agencies and their contractors try to keep their heads down – and the infamous espionage district with its shameful history of grand juries, the place where the deceptive "Rivera Group" fronts secretly for the non-Virginia based "PRVT LLC" that allows "DJ" and the "Rivera Group" to do business in California. "There is a perfectly acceptable legal system in Virginia, where Rivera resides, should Plaintiff choose to file suit there," his counsel says.

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

In line with his lack of subtly, "DJ" follows suit with CIA's intentionally pejorative use of the concept and words "conspiracy theory" that dates back to when Alan Dulles seeking to misdirect the public away from the assignation of JFK. Anyone familiar with American history will know the illicit wedding of organized crime and pre-"intelligence" agencies in the 1910s and 1920s. And anyone following current events would have noticed how entangled news outlets and "intelligence" have become. One of thinks of the now shamed LA Times "journalist" Ken Dilanian. (See Decl. Dr. Murrey, Exhibit 14, par. 42) *This reminds one of "DJ"'s own news appearance wherein he says scams are reliable and that the public "should pay the crooks" when they are extorted online.* (See Decl. Dr. Murrey, Exhibit 15, Par. 15).

When one looks at the heinous history of organized crime and "intelligence" – for instance, the somewhat recent pedophile ring "The Finders Cult" inseparable from the FBI and CIA – or more recently the American and Israeli "intelligence" sex trafficking ring to which Jeffrey Epstein and Ghislaine Maxwell (her father worked with Mossad until they murdered him after a money-deal went sideways) and host of other "celebrity" individuals too endless and grisly to name –, it is clear that a revenge-porn "shaming"-website with political motives like **WWW.CHEATERREPORT.COM** looks like just another "covert op to control and exploit the American populace gone bad".

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

But although "DJ" and his entities, "The Rivera Group" included, and his co-conspirators – Mr. Gingras, it should be noted, who is Minc and Will's counsel also appears in an advertisement on yet another "Name-Shame" website (See Decl. Dr. Murrey, Par. 44, Exhibit 16) – are hoping they can keep their scam in the dark and elude justice *per usual*, it is worth noting that the federal judge Alexander Acosta, who infamously gave Jeffrey Epstein a "sweetheart deal" that caused countless more victims to suffer all because, in Acosta's words, he was told that "he [Epstein] belonged to intelligence", now has a legacy of shame. (See Decl. Dr. Murrey, Exhibit 17, Par. 45)

//

//

Defendants would do well to remember that instead of: "We the blob of silicon valley tech oligarchs and un-elected 'intelligence officers'…", *The Constitution* begins: "*We the people…*" This is vital. This is one of the things that makes America unusual and great: a legal system with the potential to harness the common sense and decency that is hidden in the hardwiring of hundreds of millions of people and which has been evolving for hundreds of thousands of years. This is

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S
MOTION TO DISMISS

far more trustworthy than the exceptional psychopathy on display in said defendant-clowns.

## V.    CONCLUSION

For the reasons and arguments presented herein, Dr. Murrey respectfully requests the Court to deny defendant Domingo J. Rivera's motion and find that Mr. Rivera is subject to jurisdiction.

DATED: 29 November 2020              Respectfully submitted,

By: _____

Dr. Stewart Lucas Murrey
*Plaintiff & Plaintiff in Pro Se*

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT DOMINGO J. RIVERA'S MOTION TO DISMISS