**Dr. Stewart Lucas Murrey**
1217 Wilshire Blvd. # 3655
Santa Monica, CA 90403
Tel.: (310) 994-1711
Email: **2@lucasmurrey.io**

**Plaintiff & Plaintiff in Pro Se**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DR. STEWART LUCAS MURREY, an individual;

Plaintiff,

vs.

AARON MINC, an individual, MINC LAW, a business entity; DOMINGO J. RIVERA, an individual; RIVERA LAW GROUP, PLC a.k.a. DOMINGO J. RIVERA, ATTORNEY AT LAW, PLC, a limited liability company; PRVT L.L.C., a limited liability company, ELIZABETH JORDAN, an individual; INTERNET REPUTATION CONTROL a.k.a. IRC, a business entity; ANTHONY WILL, an individual; DIGITAL REVOLUTION LLC a.k.a. REPUTATION RESOLUTIONS, a business entity; BRANDYOURSELF.COM, INC., a limited liability company, TOM VITOLO, an individual; CHRISTIAN TRYON, an individual; and JOHN DOE NUMBERS 1-10;

Defendants.

**Case No. 2:20-cv-06217-PA (SKx)**
*Hon. Judge Percy Anderson, Ctrm 9A, 9th Fl.*
*Hon. Mag. Judge Steve Kim, Ctrm 540, 5th Fl.*

**PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANT PRVT LLC'S MOTION TO DISMISS (FRCP 12(b)(2)); DECLARATION OF DR. STEWART LUCAS MURREY; DECLARATION OF ALEXANDER J. PETALE, ESQ.**

Hearing Date:    21 December 2020
Hearing Time:    1:30 p.m.
Courtroom:       10A
Judge:           Hon. Percy Anderson

## I.    INTRODUCTION

1  Unless they are ignorant of Federal Law, Nick Jurkowitz and his client defendant

2  individual and entities: Domingo J. Rivera, Domingo J. Rivera, Attorney at Law

3
4  a.k.a. The Rivera Group, PLC, Internet Reputation Resolutions (IRC) and PRVT

5  LLC intentionally filed all four (4) of their motions to dismiss this case before any

6
7  of them really started, much less completed the required conference of counsel

8  pursuant to L.R. 7-3 (Declaration of Dr. Murrey, Par. 4). Having sent only one

9  single, initial email requesting a telephonic conference on 19 November 2020 and

10  then, hours later that same day, deceitfully misrepresenting to this Court that they

11
12  had fulfilled their L.R. 7-3 duties in their Notices (See Exhibit 1 to the Decl. of Dr.

13  Murrey, Par. 5), plaintiff Dr. Murrey is requesting a conference per L.R. 7-3 for his

14
15  intended motions for sanctions against each of these four (4) defendants and their

16  "specially" appearing representation, Mr. Jurkowitz, for their bad faith. Perhaps this

17  matter could have been resolved without court intervention and this abuse of the law

18
19  against a *pro se* litigant, to whom Federal Courts are particularly liberal, does not go

20  unnoticed.

21              **II.    FACTUAL SUMMARY**

22
23  Defendants Mr. Rivera and PRVT LLC repeatedly perjured themselves in several

24  instances in their eight (8) declarations to this Court. Mr. Rivera and his entities, in

25  particular PRVT LLC, do business in California. This includes, but is not limited to

26
27  maintaining and enhancing the "performance" of the revenge-porn, politically

28  motivated "shaming"-website **WWW.CHEATERREPORT.COM**.

- 2 -

1    Aware of the criminal organization to which it belongs, Mr. Rivera a.k.a. "DJ"

2  and his PRVT LLC, seek to maintain absolute secrecy and anonymity about his and

3  his entities' involvement (exactly like **WWW.CHEATERREPORT.COM**) in said

4  nationwide extortion ring. On the one hand, "DJ" and his network of entities are one

5  of the "go-to" secret sources for his co-conspirators like defendants such as Aaron

6

7  Minc to remove postings from **WWW.CHEATERREPORT.COM**. The way their

8  online scam works is the following: After harmful postings on

9  **WWW.CHEATERREPORT.COM** severely damage the online reputations of

10

11  victims nationwide said victims are extorted into paying money for the removal of

12  defamatory postings, plaintiff in California who sent money from California to all

13  defendants included. Mr. Minc made the significance of Mr. Rivera and his entities

14  clear both during a telephone conversation and in an email to plaintiff on 15 July

15

16  2015 (See Decl. Dr. Murrey, Par.s 6-10, and Exhibit 2, Par. 11; see also the

17  Declaration of Alexander J. Petale).

18

19    But as Mr. Minc and all the other defendants know (and which they illegally hide

20  from all their "clients" i.e. victims, plaintiff in California included), while "DJ

21  Rivera" and his entities such as "IRC" secretly remove harmful postings on

22

23  **WWW.CHEATERREPORT.COM**, Mr. Rivera and his "IRC" are also secretly

24  tied to Mr. Rivera's other entities such as "The Rivera Law Group" and "PRVT

25

26  LLC" which do business in California and offshore financial secrecy jurisdictions to

27  maintain, support, operate and perform duties necessary for

28

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

**WWW.CHEATERREPORT.COM** to exist online in all fifty states, California included.

In an effort to hide his participation in this crime organization Mr. Rivera set up a business entity by the name of "Domingo J. Rivera, Rivera Law Group, Attorney at Law, PLC". The real reason, however, that "DJ" set up this seemingly commonplace company is so that he could, in turn, open up a second, anonymous company within the financial secrecy jurisdiction of Puerto Rico, which Mr. Rivera names "PRVT LLC".

Whereas defendant "IRC" is inseparable from this secret network, it performs the same corrupt function as that performed by defendants Minc, Will, their entities and the other defendants: As advertised on its website: **<u>"Internet Reputation Control: A Solution to Internet Defamation"</u>** appears as if it is a business whose service is to help victims of defamatory postings online. (See Decl. Dr. Murrey, Exhibit 18, Par. 46). However, "IRC" conceals from its client-victims that those who own this company, defendant Domingo J. Rivera included, secretly also own other companies such as "PRVT LLC" that pay for and receive business services to maintain revenge-porn/"shaming"-websites including **WWW.CHEATERREPORT.COM** that are the original cause of irreparable harm and which are "producing" new nationwide "blood-money" to extort daily. (Ibid.) Through "IRC" Mr. Rivera and his co-conspirators designed the nationwide illusion that money following through one stream is unrelated to money flowing backwards in another secret stream

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

(through for instance, defendant PRVT LLC) i.e. a financial sleight of hand: as if

"DJ"'s right hand does not know what his left doing.

Despite Mr. Rivera's perjuries in this Federal Court, he and his entities do have a

real and serious, if secretive history of doing business in California. In fact, Mr.

Rivera and his entities specifically do business in California *to maintain and*

*advance this online criminal organization.* **Mr. Rivera uses among his various**

**entities, PRVT LLC, which is linked directly to The Rivera Group, to make**

**payments to the San Francisco based tech-company Cloudflare, Inc. which is**

**located at 101 Townsend St., San Francisco, CA 94107. And as we have seen,**

**inseparable from this network is IRC.** This is clear in the documents produced by

Cloudflare, Inc. and the Registry of Corporations and Entities information showing

that PRVT LLC is linked to "The Rivera Group" and Mr. Rivera and his other

entities (See Decl. Dr. Murrey, Par.s 12-13, and Exhibit 3, Par. 13).

It is also clear that "DJ Rivera" maintains another secret entity within another

financial secrecy jurisdiction, this time in Panama, also named "PRVT LLC" and

through which **WWW.CHEATERREPORT.COM** maintains its Domain,

Registrant, Administrative and Technical Contacts. (See Decl. Dr. Murrey, Par. 14,

and Exhibit 4, Par. 15). It should be noted that in their attempts to elude public

scrutiny and justice, it is common practice of those involved in this crime

organization, defendants all included, to rapidly open and dissolve countless

business entities. Defendant Anthony Will's entity "Digital Revolution" a.k.a.

1  "Reputation Resolutions", for instance, has been opened and dissolved countless

2  times within the last ten (10) years by him and other individuals. (See Decl. Dr.

3
   Murrey, Par. 16, and Exhibit 5, Par. 17).
4

5      Thanks to Mr. Rivera, his entities, PRVT LLC included, the defendants and other

6  co-conspirators, **WWW.CHEATERREPORT.COM** has an exceptionally

7
   powerful i.e. destructive presence on Google and other such big-tech social-media
8

9  platforms. Together these criminals use this revenge-porn "shaming" and politically

10 motivated website **WWW.CHEATERREPORT.COM** to inflict incalculable harm

11
   and distress onto countless people (its victims) nationwide and beyond, the plaintiff
12

13 in California included, while maintaining absolute anonymity. Because its victims

14
   have no recourse due to **WWW.CHEATERREPORT.COM**'s intentionally
15

16 absolute non-responsive and anonymous nature, plaintiff in California included,

17 they are forced to give into targeted advertising and pay those who maintain this

18
   nationwide extortion ring. Defendants such as Minc feign ignorance and deceitfully
19

20 act as if they have no secret connections and or agendas to continue harming and

21 extorting the entirety of the American populace, including the citizenry of California

22
   to whom plaintiff belongs.
23

24     Mr. Rivera and his entities included have taken money from victims directly as

25 well as from others such as Mr. Minc and his law office countless times, including

26
   when plaintiff was victimized and extorted. This means that not only is Mr. Rivera
27

28 and his entities such as PRVT LLC doing significant and regular business in

- 6 -

California, paying for services and receiving and enjoying said business services within California, to run this unsavory scam, Mr. Rivera and his entities are also simultaneously taking monies received from California, for instance, from Mr. Minc and his entities.

Aside from the conclusory and intentionally false statements by Mr. Rivera and his entities, PRVT LLC included – all of which are meaningless as they fail to deal with the facts that plaintiff has stated in his lawsuit –, "DJ"'s summary of this action *is borderline delusional. This action does not "arise from posts made on a public forum"*, as Mr. Rivera claims. This action arises from an extortion ring orchestrated by Mr. Rivera, his entities, PRVT LLC included, and co-conspirators that includes their payments to companies in California to operate and maintain the disgraceful revenge-porn and politically motivated "shaming"-website **WWW.CHEATERREPORT.COM** and other such online platforms. (See Decl. Dr. Murrey, Par. 18, and Exhibit 6, Par. 19). By severely harming innocent people nationwide, including California, through services purchased and used in California, "DJ" and others, in turn, profit off of the irreparable damage and desperation they themselves caused.

As to be expected from an individual who aggressively perjures himself on countless occasions in federal court, Mr. Rivera is ignorant of several indisputable facts regarding this lawsuit. First: Mr. Rivera misrepresents the timeline of damages to plaintiff who continued to be targeted on **WWW.CHEATERREPORT.COM**

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

1  well into 2018 and after. (See Decl. Dr. Murrey, Par. 20, and Exhibit 7, Par. 21).

2  This creates still another direct link to Mr. Rivera's entities such as PRVT LLC

3  which, according to Mr. Rivera's own declaration, has been actively doing business

4

5  to operate and maintain the revenge-porn and political "shaming"-website since 17

6  December 2017.

7

8      Because defendants, Mr. Rivera and PRVT LLC included, make false,

9  conclusory statements about this lawsuit, critical facts to this case need be clarified.

10  Plaintiff began to be severely harmed by anonymous postings beginning in 2016 on

11

12  **WWW.CHEATERREPORT.COM**. (See Decl. Dr. Murrey, Par. 22) Between

13  2016 and through 2018 hundreds of malicious, defamatory and anonymous postings

14

15  by individuals on **WWW.CHEATERREPORT.COM** unknown to plaintiff

16  resulted in damages to plaintiff's life and ability to earn money as a scholar, in real

17  estate, etc. not only during this time, but after as the harmful aftereffects will

18

19  continue for the rest of plaintiff's life. (Ibid.)

20      Because defendant Rivera's crime organization harms its victims irreparably, the

21  unusually severe online defamation and cyber-bullying that the revenge-porn

22

23  website **WWW.CHEATERREPORT.COM** enacts, emboldens, facilitates and aids

24  and abets leads to extraordinary harassment in persons' everyday off-line lives.

25  Individuals who seemed to be posting on **WWW.CHEATERREPORT.COM**

26

27  contacted plaintiff's girlfriend in 2017 to further defame plaintiff to her by telephone

28  and email directly. Opposite to Mr. Rivera's meaningless conclusory statements,

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

1 these individuals (Shannyn Poer and Flor Edwards) signed declarations in 2019

2 claiming that they had never posted on **WWW.CHEATERREPORT.COM**. (See

3

4 Decl. Dr. Murrey, Par. 23, and Exhibit 8, Par. 24). The anonymous and non-

5 responsive nature of Mr. Rivera's online porn-website scam makes it impossible for

6 people to have any other recourse than to be extorted by these "removal" and

7

8 "reputation management companies".

9     The cyberbullying of Mr. Rivera's **WWW.CHEATERREPORT.COM**

10 emboldened individuals to take *the exact language and defamation* from posts on

11

12 said website to make two (2) false police reports for which plaintiff was twice

13 falsely arrested, once in 2017 and another time in 2018, the only two times in his life

14

15 he has ever been arrested. Although plaintiff was never charged, as there was no

16 evidence that he had done anything wrong – and although he settled both of the

17 lawsuits that he subsequently filed against the county and city in his favor (See Case

18

19 No.s 19STCV06357 and 2:19-CV-02501-FMO-(ASx)) –, his life is forever

20 damaged because of this crime organization. Just as Mr. Rivera and his co-

21 conspirators try to wiggle out of their clear guilt for their interstate extortion ring as

22

23 well as their guilt for aiding and abetting defamation, etc., the individuals who made

24 the false police reports falsely claimed that their reports were "privileged" and

25 therefore were not defamation. However, their several motions to strike (Anti-

26

27 SLAPP) and dismiss all failed (See Decl. Dr. Murrey, Par.s 25-26, and Exhibit 9,

28

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

Par. 27 – plaintiff respectfully asks the court to take judicial notice of an adopted

tentative ruling presented here as Exhibit 9).

What drew plaintiff to his girlfriend who succumbed to cancer in March of 2018

was her ability to think for herself and not give into online brainwashing. Her belief

and devotion to the real person plaintiff is versus the false image that this crime

organization aggressively and maliciously created of him online via

**WWW.CHEATERREPORT.COM** gave plaintiff the strength to seek legal

recourse and remain by her side during her tragic decline, despite the fact that both

plaintiff and his girlfriend continued to be targeted, assaulted and extorted by

**WWW.CHEATERREPORT.COM** and "removal" and "reputation" companies

even during the final months of her life. (See Decl. Dr. Murrey, Par. 28).

Although plaintiff undertook, for the first time in his life, an extraordinary

volume of litigation beginning in 2017, every case in which he has been involved

has resulted in either a judgment or settlement in his favor. Plaintiff is a scholar of

ancient Greece and modern Europe by trade. He deals in evidence and reason.

Unlike the defendants who see the law as an opportunity to maliciously conceal

their online crime organization, plaintiff does not litigate frivolously. (See Decl. Dr.

Murrey, Par. 29).

Defendant's references to paragraphs 59-61 of plaintiff's first amended

complaint are conclusory and false. The fact is that prior to the postings that

severely harmed plaintiff on **WWW.CHEATERREPORT.COM** in 2016 and

- 10 -

1  2017, plaintiff had never heard the term or concept of a "removal" or "reputation

2  management" company. (See Decl. Dr. Murrey, Par. 30). Only after being severely

3
4  harmed in California by Mr. Rivera's website **WWW.CHEATERREPORT.COM**

5  whose anonymous and non-responsive nature left plaintiff (like all its victims) with

6
7  no recourse, but to remove said postings via companies whose advertising targeted

8  him in California, was plaintiff forced under duress to sign various contracts, to

9  accept forum selection clauses and to send money from California to defendants

10  Anthony Will, his business entity "Reputation Resolutions" a.k.a. "Digital

11
12  Revolution", and other defendants in a desperate attempt to survive the lethal assault

13  that their crime organization had unleashed upon him. (See Decl. Dr. Murrey, Par.

14  31).

15

16  ### III.   LEGAL STANDARD

17
18  Plaintiff Dr. Murrey need make only a *prima facie* showing of jurisdictional facts

19  to satisfy his burden of demonstrating jurisdiction over defendant, in the absence of

20  an evidentiary hearing. (*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d

21
22  1124, 1127 (9th Cir. 2010)). The Court must take uncontroverted allegations in the

23  complaints as true and resolve any factual conflicts and draw all reasonable

24  inferences in favor of Dr. Murrey. (*Id.*).

25

26  ### IV.   ARGUMENT

27  **A. This Court has specific jurisdiction over Dr. Murrey's claims against
      Defendant.**

28

- 11 -

Under Rule 4(k)(1)(A), this Court applies California's long-arm statute to determine the bounds of the Court's jurisdiction over a party, which authorizes its courts to exercise jurisdiction to the full extent constitutionally permitted. (*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017)).

**A. Defendant's Conduct subjects him to this Court's jurisdiction.**

Defendant "IRC" was set up to help hide Mr. Rivera's other entity PRVT LLC in an offshore territory to elude scrutiny while he and his "entities" did business in California and received business services in California to secretly operate and maintain the core of this crime organization via the revenge-porn and website **WWW.CHEATERREPORT.COM** which, in turn, targets people nationwide, plaintiff and others in California included.

Rivera claims that he and his entities do not engage in business in California, but a company and its individuals are subject to jurisdiction where they take action in the forum, as when a "defendant's transmission of goods [into the forum state] permits the exercise of jurisdiction . . . where the defendant can be said to have targeted the forum." *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011). Alternatively, as the Supreme Court observed in *Daimler AG v. Bauman*: "Agency relationships […] may be relevant to the existence of *specific* jurisdiction" because "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." (*Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014)). In fact, Mr. Rivera and his entities, as shown and proven by plaintiff's

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

1
2
3
4
5

declaration and exhibits regarding the California-based company Cloudflare, Inc. with whom defendants do business, have contacts that, despite the absurd lengths to which Mr. Rivera goes to mask them, are extensive, long-standing and important to the core of their online and nationwide criminal organization.

6
7

**B. Dr. Murrey's claims arise out of or relate to Defendant's conduct in California.**

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Mr. Rivera and his businesses such as PRVT LLC regularly, if secretly, do business within California. Mr. Rivera and his businesses, PRVT LLC included, regularly received services in California for which they pay. They do so to run an online scam whose unfortunate website appears nationwide, including California, and which harms people nationwide, plaintiff and others in California included. They then work with a network of co-conspirators spread out nationwide – often lawyers foaming at the mouth regarding forum selection clauses – who then extort their victims for money which they all received from plaintiff and his accounts in California, then said California-money is finally laundered back into the secret offshore financial "washing machine" of PRVT LLC which is directly linked to "IRC" et. al. that is, in turn, used to pay for website services, for instance in San Francisco, California.

24
25
26
27
28

This is relevant as second prong of the personal jurisdiction test involves a causal analysis. The Ninth Circuit has adopted a but-for test: "Under the 'but for' test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *Learjet, Inc. v. Oneok,*

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

*Inc.*, 715 F.3d 716, 742 (9th Cir. 2013) (quotation marks omitted), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015). Courts do not apply this test "stringently." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1085, 1092–93 (D. Or. 2016) (test "should not be narrowly applied; rather, the requirement is merely designed to confirm that there is some nexus between the cause of action and defendant's contact with the forum"; sustaining jurisdiction where defendant's infringing product was purchased over the web by only three people in the forum) (quotation marks omitted); *California Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 1573399, at *6 (E.D. Cal. Apr. 19, 2016) ("Despite its apparently strict language, many district courts in the Ninth Circuit have not applied the 'but for' test stringently"); *Elec. Recyclers Int'l, Inc. v. Calbag Metals Co.*, 2015 WL 1529490, at *4 (E.D. Cal. Apr. 2, 2015). Here the plaintiff's injuries occurred in California and have been caused by the totality of national conduct, and personal jurisdiction exists if the defendant undertook some of this conduct within the forum, which Mr. Rivera and PRVT LLC did. (See also *Shute v. Carnival*, 897 F.2d 377, 386 (9th Cir. 1990) (upholding personal jurisdiction where defendant had advertised in forum state but had no offices, employees or assets in the forum).

Subsequent cases have continued to make clear that the defendant's forum-based activities need not cause the entire harm. For example, in *Dubose v. Bristol-Myers Squibb Co.*, a resident of South Carolina sued foreign corporations in

California for failure to warn and fraudulent misrepresentation with respect to a drug product that the defendants had tested at clinical trials in California and many other states. (2017 WL 2775034 (N.D. Cal. June 27, 2017). The *Dubose* court simultaneously issued an identical ruling in a companion case brought by a New York plaintiff. *Cortina v. Bristol-Myers Squibb Co.*, 2017 WL 2793808 (N.D. Cal. June 27, 2017). The court, applying the Ninth Circuit's but-for test and upholding jurisdiction, rejected the defendants' argument that there is a numerical threshold for in-state conduct when the injury is caused by conduct spread across many jurisdictions: "What would that threshold be? If 25 percent of the clinical trials were conducted in California, would that be enough? 50 percent? 75 percent? The point is that our existing case law provides no basis for imposing an arbitrary cut-off, and the Court is disinclined to fashion a new barrier to the exercise of its jurisdiction from whole cloth." (2017 WL 2775034, at *4.) The court held that since the California clinical trials were "*part of* the unbroken chain of events leading to plaintiff's injury" they did not have to be the sole cause of the injury. (*Id.* at *3 (emphasis added)).

Here, Mr. Rivera and his entities, PRVT LLC included, engaged during the relevant time period in substantial in-state conduct to pay, operate, maintain the revenge-porn website **WWW.CHEATERREPORT.COM**. One may also consider the website in *Mavrix* that caused injury merely by making copyrighted materials "accessible to users" in California. (FAC ¶ 118(e); *Mavrix*, 647 F.3d at 1228.)

Further, the personal jurisdiction analysis "depends, to a significant degree, on the specific type of tort ... at issue" which in this case is RICO. (*Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (analyzing purposeful direction element); *cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (courts may not "raise the standing hurdle higher than the necessary showing for success on the merits in an action")).

In this action, Dr. Murrey asserts several claims against defendants, including Racketeer Influenced and Corrupt Organizations Act ("Civil RICO"), 18 U.S.C. § 1962(a-d); Intentional and Fraudulent Misrepresentation; Fraud; Civil Conspiracy; Violations of Calif. Bus. & Profs. Code § 17200, et seq. for Unlawful, Unfair and Fraudulent Acts and Violations of Calif.'s Statutory and Common Law Right of Publicity. Alongside the shadow-web that defendants created to abuse the World Wide Web, it is clear that Mr. Rivera, his entities such as PRVT LLC and their co-conspirators did business in California while they also set up a network of domestic and off-shore entities in well-known tax havens (Puerto Rico, Panama, etc.). They did this to secretly launder money, divert funds, fabricate backdated corporate records, and in general execute a variety of elaborate schemes including the operation and maintenance of the revenge-porn website **WWW.CHEATERREPORT.COM**.  Dr. Murrey has thus shown that his claims arose out of and were related to defendant's(s') activities in California where they

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

1  operated and enhanced the performance of the website

2  **WWW.CHEATERREPORT.COM**.

3
4  ### C. Defendant has not demonstrated that exercise of personal jurisdiction over it is unreasonable.

5
6  Once plaintiff establishes the first two elements of specific jurisdiction, then

7  the burden shifts to the defendant(s), which cannot meet its "heavy burden" under

8  the Ninth Circuit's seven-factor test, "to present a compelling case that the exercise

9  of jurisdiction is unreasonable." (*Chunghwa Telecom Global v. Medcom*, 2016 WL

10  5815831, at *6 (N.D. Cal. Oct. 5, 2016)). Under factor one, the extent of the

11  defendant's purposeful interjection into the forum state, Mr. Rivera and his entities

12  purposefully injected themselves into California by deciding to pay for a California-

13  based company's website services: Cloudflare, Inc., which were and are provided to

14  in California, used in California and engaged for their scam conduct within the state.

15  Under factor two, the burden on defendant(s) in defending in the forum is not heavy,

16  given defendant's(s') responsibility for its ongoing secret operation in California

17  over the past decade that has contributed to Dr. Murrey's injuries. (*Kabo Tool Co. v.*

18  *Porauto Industrial Co.*, 2013 WL 5328496, at *7 (D. Nev. Sep. 20, 2013) ("While

19  jurisdiction in Nevada may not be as convenient to the defendants, it does not

20  present an unreasonable burden. The defendants here have been conducting business

21  in Nevada for over 10 years. If the defendants have the ability to sufficiently

22  conduct business, they also have the ability to defend their actions in Nevada.").

28

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

Since the Court is applying federal law, there cannot be a conflict with the sovereignty of another state (factor 3) (*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)). The forum state's interest in adjudicating the dispute, "California has an interest in protecting its residents," (*Universal Stabilization Techns., Inc. v. Advanced BioNutrition Corp.*, 2017 WL 1838955, at *6 (S.D. Cal. May 8, 2017)), which is particularly strong in this case. California is the most efficient forum to resolve the controversy (factor five), given that the injuries and some injury-inducing conduct occurred in this state. Factor six, the importance of the forum to the plaintiff's interest, favors California because it offers convenient and effective relief for the Dr. Murrey's RICO and other claims. Finally, as to other forums (factor seven), the "fact that the lawsuit will continue in California with other parties tips the efficiency factor in [plaintiff's] favor." (*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993)).

Finally, as "expert internet attorneys" and "online Internet experts" all of the defendants – all of whom already have a custom of doing business in California and accepting business and money from California – will have no inconvenience filing their defenses online in the Central District of California.

### D. Defendant Domingo J. Rivera and his Entities, PRVT LLC included, have been Sufficiently Served

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rules of Civil Procedure 4." (*Travelers Cas. & Sur. Co. of Am. V. Brenneke*, 551 F.3d 1132, 1135 (9th Cir.2009).

- 18 -

However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Comm. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984). What is required is "substantial compliance" with Rule 4, with "neither actual notice nor simply naming the defendant in the complaint" being sufficient. *Direct Main Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir.1988) (quoting *Benny v. Pipers*, 799 F.2d, 489, 492 (9th Cir.1986), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 .Ed.2d 149 (1987)).

By now it is clear just how much defendant "DJ Rivera" and his entities want to elude this lawsuit through any and all means and remain, precisely like the website to which they are linked, anonymous and non-responsive. Nevertheless, it is astonishing how "DJ" openly mocks the legal system with his frivolous and conclusory statements also regarding service.

As a courtesy of good faith and to start a conversation in the hope of avoiding court intervention plaintiff emailed the First Amended Complaint and Summons to Mr. Rivera and his entities, PRVT LLC included, on 20 August 2020 and then plaintiff sent a second courtesy email to both of "DJ"'s known email address (both of which were confirmed by Mr. Minc) on 25 August 2020 (See Decl. Dr. Murrey, Par. 32, and Exhibit 10, Par. 33; and Exhibit 2). Mr. Rivera and all his entities, PRVT LLC included, were served via United States Priority Mail with Tracking on 4 September 2020 and on 11 October 2020 Alexander J. Petale, Esq., emailed Mr.

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

1    Rivera and all his entities, PRVT LLC included, the lawsuit again and finally a

2    professional process server was engaged who finally on 28 October 2020 after

3
     diligent attempts to find Mr. Rivera properly left the lawsuit and summons at Mr.
4

5    Rivera's and PRVT LLC's professional mailbox. (See Decl. Dr. Murrey, Par. 34,

6    and Exhibit 11, Par. 35). As required by Cal. B&P Code § 17538.5(d)(1), the

7
     CMRA owner or operator, within 48 hours of receipt of process, placed the
8

9    documents in Rivera's mailbox and, within five days of receipt, plaintiff then had all

10   documents sent to Rivera's last known personal and or home address. (See Decl. Dr.

11
     Murrey, Par. 36). Counsel for Minc, et. al., Mr. Gingras, informed plaintiff that
12

13   before 10 November 2020 Mr. Rivera had contacted him and Mr. Rivera finally

14   emailed plaintiff directly from the same email address with which Mr. Rivera and

15
     his entities, PRVT LLC included, received this lawsuit and summons in August and
16

17   then again in October of 2020. (See Decl. Dr. Murrey, Par. 37, and Exhibit 12, Par.

18   38).
19

20         Plaintiff further engaged investigators to look into Mr. Rivera and his entities,

21   PRVT LLC included, and left more copies of this lawsuit at his network of

22   addresses. However, given what they perceived as Mr. Rivera's shady ties to
23
     "intelligence" they hesitated and plaintiff did not want to put them in an uneasy
24

25   situation. (See Decl. Dr. Murrey, Par. 39). If the court would like, plaintiff is willing

26   to file a motion for publication of service. However, then he will further have to
27

28   move the court for reimbursement of whatever costs were necessary from

- 20 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

1  defendant(s) and it is clear that Mr. Rivera is fully aware of this lawsuit by now. In

2  fact, it is questionable why Mr. Rivera is wasting the court's time and resources.

3
4  **E. Alternatively, Dr. Murrey is entitled for leave to amend his complaint and or jurisdictional discovery and or service by publication.**

5  Dr. Murrey requests jurisdictional discovery if necessary, which "should be

6
7  granted when . . . the jurisdictional facts are contested or more facts are needed."

8  (*Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Illumina, Inc. v.*

9
10  *Qiagen NV*, 2016 WL 3902541, at *4-5 (N.D. Cal. July 19, 2016) ("there are too

11  many factual disputes to resolve without more thorough jurisdictional discovery"

12  against Dutch parent company); *SA Luxury Expeditions LLC v. Latin America for*

13
14  *Less, LLC*, 2014 WL 6065838, at *2 (N.D. Cal. Nov. 12, 2014) ("defendant's

15  declarations dodge the key issues with artful wording"); *Macias v. Waste Mgmt.*

16  *Holdings, Inc.*, 2014 WL 4793989, at *3 (N.D. Cal. Sept. 25, 2014) ("discovery is

17
18  needed to clarify the controverted issue of personal jurisdiction")). If the Court finds

19  that plaintiff's allegations are insufficient to establish jurisdiction, plaintiff requests

20  discovery regarding Mr. Rivera's and PRVT LLC's role as the ultimate

21
22  decisionmaker with respect to levels of this nationwide online scam, including

23  taking into account his offshore banking stratagem, the business he does and

24  decisions he makes with other businesses in California, including any contractual

25
26  arrangements Mr. Rivera and the other defendants have entered into relating to their

27  California activities.

28

- 21 -
PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

### F. Defendant Domingo J. Rivera a.k.a. "DJ" is a Mafia/"Intelligence" Clown who with his Co-Conspirators think that they are Immune from Federal Law as they Irreparably Harm Americans Nationwide and Peoples Everywhere

Anyone taking a careful look at this case, Mr. Rivera's multiple motions and declarations will notice a lack of decency that goes well beyond "DJ" and his counsel failing to complete a telephonic conference prior to the filing of his four motions and defendant's protracted and frivolous attempts to elude service of this lawsuit.

Beyond his false conclusory statements are defendant's silences that coalesce about what he knows **WWW.CHEATERREPORT.COM** to be. While never refuting his involvement with this criminal online organization, "DJ" fails to mention for whom he was "in-house counsel", nor the name the "other lawyer" with whom he worked, or the other members of "IRC" a.k.a. Internet Reputation Control, nor "The Rivera Group"'s explicit ties to "PRVT LLC" etc. While offering garbled sentences about a "private/proxy domain registration company [...]" Mr. Rivera refuses to explain the simple question as to why, if he has actually created a bullet-proof legal strategy to get away with this scam, everyone and everything need be absolutely private and anonymous, like "PRVT LLC".

As plaintiff has shown, "DJ" and his entities, PRVT LLC included, works closely with other individuals like Aaron Minc. (See Decl. Dr. Murrey, Par.s 6-10, and Exhibit 2, Par. 11; see also the Declaration of Alexander J. Petale). As it turns out "DJ"'s friend Aaron Minc is often sued for civil conspiracies, fraud, etc.

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

alongside the "NY FBI" and has appeared in an advertisement with a California

businessman who has been charged with felonies for his own "posting removal"

extortion ring. Like "DJ", Minc likes to abuse the law if he's caught red-handed,

thus his lawsuits in Ohio, also against plaintiff that Minc filed after plaintiff filed

this case – and which, astonishingly, is based on Minc's delusional claim that his

"trade secrets" were "misappropriated". (See Decl. Dr. Murrey, Par. 40, and Exhibit

13, Par. 41). Exposing someone's extortion ring is hardly stealing a trade secret.

Then there is the issue of geography, beyond jurisdiction and venue. "DJ" is

all over Virginia, Henrico County, etc. exactly where most of the seventeen (17)

"intelligence" agencies and their contractors try to keep their heads down – and the

infamous espionage district with its shameful history of grand juries, the place

where the deceptive "Rivera Group" and "IRC" front secretly for the non-Virginia

based "PRVT LLC" that allows "DJ" to do business in California. "There is a

perfectly acceptable legal system in Virginia, where Rivera resides, should

Plaintiff choose to file suit there," his counsel says.

In line with his lack of subtly, "DJ" follows suit with CIA's intentionally

pejorative use of the concept and words "conspiracy theory" that dates back to when

Alan Dulles seeking to misdirect the public away from the assignation of JFK.

Anyone familiar with American history will know the illicit wedding of organized

crime and pre-"intelligence" agencies in the 1910s and 1920s. And anyone

following current events would have noticed how entangled news outlets and

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS

1    "intelligence" have become. One of thinks of the now shamed LA Times

2    "journalist" Ken Dilanian. (See Decl. Dr. Murrey, Exhibit 14, par. 42) *This reminds*

3

4    *one of "DJ"'s own news appearance wherein he says scams are reliable and that*

5    *the public "should pay the crooks" when they are extorted online.* (See Decl. Dr.

6    Murrey, Exhibit 15, Par. 15).

7

8          When one looks at the heinous history of organized crime and "intelligence"

9    – for instance, the somewhat recent pedophile ring "The Finders Cult" inseparable

10

11    from the FBI and CIA – or more recently the American and Israeli "intelligence"

12    sex trafficking ring to which Jeffrey Epstein and Ghislaine Maxwell (her father

13    worked with Mossad until they murdered him after a money-deal went sideways)

14

15    and host of other "celebrity" individuals too endless and grisly to name –, it is clear

16    that a revenge-porn "shaming"-website with political motives like

17    **WWW.CHEATERREPORT.COM** looks like just another "covert op to control

18    and exploit the American populace gone bad".

19

20          But although "DJ" and his entities, PRVT LLC included, and his co-

21    conspirators – Mr. Gingras, it should be noted, who is Minc and Will's counsel also

22    appears in an advertisement on yet another "Name-Shame" website (See Decl. Dr.

23

24    Murrey, Par. 44, Exhibit 16) – are hoping they can keep their scam in the dark and

25    elude justice *per usual*, it is worth noting that the federal judge Alexander Acosta,

26    who infamously gave Jeffrey Epstein a "sweetheart deal" that caused countless more

27    victims to suffer all because, in Acosta's words, he was told that "he [Epstein]

28

- 24 -

belonged to intelligence", now has a legacy of shame. (See Decl. Dr. Murrey, Exhibit 17, Par. 45)

Defendants would do well to remember that instead of: "We the blob of silicon valley tech oligarchs and un-elected 'intelligence officers'…", *The Constitution* begins: "*We the people…*" This is vital. This is one of the things that makes America unusual and great: a legal system with the potential to harness the common sense and decency that is hidden in the hardwiring of hundreds of millions of people and which has been evolving for hundreds of thousands of years. This is far more trustworthy than the exceptional psychopathy on display in said defendant-clowns.

## V.    CONCLUSION

For the reasons and arguments presented herein, Dr. Murrey respectfully requests the Court to deny defendant Domingo J. Rivera's motion and find that Mr. Rivera is subject to jurisdiction.

DATED: 29 November 2020                Respectfully submitted,


By:    _____
       Dr. Stewart Lucas Murrey
       *Plaintiff & Plaintiff in Pro Se*

- 25 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDAN'S MOTION TO DISMISS