1  **Dr. Stewart Lucas Murrey**
   1217 Wilshire Blvd. # 3655
2  Santa Monica, CA 90403
   Tel.: (310) 994-1711
3  Email: **2@lucasmurrey.io**

4  **Plaintiff & Plaintiff in Pro Se**

5

6                **UNITED STATES DISTRICT COURT**

7                **CENTRAL DISTRICT OF CALIFORNIA**

8

9  DR. STEWART LUCAS MURREY, an          **Case No. 2:20-cv-06217-PA (SKx)**
   individual;                           *Hon. Judge Percy Anderson, Ctrm 9A, 9th Fl.*
10                     Plaintiff,         *Hon. Mag. Judge Steve Kim, Ctrm 540, 5th Fl.*

11 vs.                                    **PLAINTIFF DR. MURREY'S**
                                          **OPPOSITION TO DEFENDANTS**
12 AARON MINC, an individual, MINC        **AARON MINC, MINC LAW,**
   LAW, a business entity; DOMINGO J.     **ANTHONY WILL AND DIGITAL**
13 RIVERA, an individual; RIVERA LAW      **REVOLUTION A.K.A. REPUTATION**
   GROUP, PLC a.k.a. DOMINGO J.           **RESOLUTIONS' MOTION TO**
14 RIVERA, ATTORNEY AT LAW, PLC,          **DISMISS OR, IN THE**
   a limited liability company; PRVT      **ALTERNATIVE, TO TRANSFER**
15 L.L.C., a limited liability company,   **VENUE; DECLARATION OF DR.**
   ELIZABETH JORDAN, an individual;       **STEWART LUCAS MURREY;**
16 INTERNET REPUTATION                    **DECLARATION OF ALEXANDER J.**
   CONTROL a.k.a. IRC, a business         **PETALE, ESQ.**
17 entity; ANTHONY WILL, an
   individual; DIGITAL REVOLUTION
18 LLC a.k.a. REPUTATION                  Hearing Date:    21 December 2020
   RESOLUTIONS, a business entity;        Hearing Time:    1:30 p.m.
19 BRANDYOURSELF.COM, INC., a             Courtroom:       9A
   limited liability company, TOM         Judge:           Hon. Percy Anderson
20 VITOLO, an individual; CHRISTIAN
   TRYON, an individual; and JOHN DOE
21 NUMBERS 1-10;

22                     Defendants.

23

24

25

26

27

28

                                   - 1 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    FACTUAL SUMMARY

Defendants Aaron Minc, Minc Law, Anthony Will and Digital Revolution a.k.a. Reputation Resolutions perjured themselves in their declarations to this Court. Mr. Minc, Mr. Will and their entities have regularly received money from clients in California i.e. do business in California during the past decade, plaintiff's money in 2017 and 2019 included. They also conspired with other defendants who regularly do business in California such as Domingo J. Rivera and his entity PRVT LLC. Defendants scam the American citizenry nationwide, plaintiff who was harmed from said scam in California included, in their deception of being "Internet Heroes" who are against victims of revenge-porn, politically motivated "shaming"-websites including, but not limited to **WWW.CHEATERREPORT.COM**.

Aware of the criminal organization to which they belong, defendants seek to maintain absolute secrecy and anonymity about their and their entities' involvement (exactly like **WWW.CHEATERREPORT.COM**) in said nationwide extortion ring, specifically how they work directly with others, including but not limited to defendants "DJ" Rivera and his domestic and offshore entities many of which directly maintain said website through the business they do in California. The way their online scam works is the following: After harmful postings on **WWW.CHEATERREPORT.COM** severely damage the online reputations of victims nationwide said victims are extorted into paying money to defendants for the removal of defamatory postings, plaintiff in California who sent money from

- 2 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

California to all defendants included. Mr. Minc made the significance of Mr. Rivera and his entities clear both during a telephone conversation and in an email to plaintiff on 15 July 2015 (See Decl. Dr. Murrey, Par.s 6-10, and Exhibit 2, Par. 11; see also the Declaration of Alexander J. Petale).

But as Mr. Minc and all the other defendants know (and which they illegally hide from all their "clients", plaintiff in California included), as "DJ" secretly removes harmful postings for them, defendants are also tied to Mr. Rivera whose "PRVT" LLC does business in California to maintain, support, operate and perform duties necessary for said website to exist online in all fifty states, California included.

Like Mr. Rivera's "IRC": "*Internet Reputation Control: A Solution to Internet Defamation*" (See Decl. Dr. Murrey, Exhibit 18, Par. 46), defendants conceal from their client-victims that they also secretly work with those who maintain the anonymous, non-responsive website promoting and aiding and abetting the irreparable harm caused to said victims, plaintiff in California included, including but not limited to defendant Domingo J. Rivera and his entities such as "PRVT LLC". (See Decl. Dr. Murrey, Par.s 12-13, and Exhibit 3, Par. 13). Together defendants and their co-conspirators designed the nationwide illusion that money following through one stream is unrelated to money flowing backwards in another secret stream (through for instance, defendant PRVT LLC) i.e. a financial sleight of hand: as if defendants' right hands do not know what their left hands are doing.

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

"DJ Rivera" also maintains another secret entity within another financial secrecy

jurisdiction, this time in Panama, also named "PRVT LLC" and through which

**WWW.CHEATERREPORT.COM** maintains its Domain, Registrant,

Administrative and Technical Contacts. (See Decl. Dr. Murrey, Par. 14, and Exhibit

4, Par. 15). It should be noted that in their attempts to elude public scrutiny and

justice, it is common practice of those involved in this crime organization,

defendants all included, to rapidly open and dissolve countless business entities.

Defendant Anthony Will's entity "Digital Revolution" a.k.a. "Reputation

Resolutions", for instance, has been opened and dissolved countless times within the

last ten (10) years by him and other individuals. (See Decl. Dr. Murrey, Par. 16, and

Exhibit 5, Par. 17).

Thanks to defendants et. al., **WWW.CHEATERREPORT.COM** has an

exceptionally powerful i.e. destructive presence on Google and other such big-tech

social-media platforms. Together these criminals use this revenge-porn website to

inflict incalculable harm and distress onto countless people (its victims) nationwide

and beyond, the plaintiff in California included, while maintaining absolute

anonymity. Because its victims have no recourse due to said website's intentionally

absolute non-responsive and anonymous nature, plaintiff in California included,

they are forced to give into targeted advertising and pay those who maintain this

nationwide extortion ring. Defendants feign ignorance and deceitfully act as if they

have no secret connections and or agendas to continue harming and extorting the

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  entirety of the American populace, including the citizenry of California to whom

2  plaintiff belongs.

3
4      Aside from the conclusory and intentionally false statements by defendants – all

5  of which are meaningless as they fail to deal with the facts that plaintiff has stated in

6  his lawsuit –, their summary of this action is borderline delusional. Saying that there

7
8  were "numerous critical statements posted on a provocatively-named website"

9  hardly does this case justice. **WWW.CHEATERREPORT.COM** is an unusually

10
11  despicable revenge-porn and politically motivated anonymous and non-responsive

12  "shaming"-website that never vets nor does any due diligence in regard to the

13  postings, often conspicuous defamation, that it publishes and which quickly

14
15  consuming one's online identity. (See Decl. Dr. Murrey, Par. 18, and Exhibit 6, Par.

16  19). As links to postings about a person shamed on it rapidly consume any and all

17  Google search results within days, any serious, hard and productive work that a

18
19  person has done to establish a respectable career and life are instantly erased along

20  with any and all future social-political connections this person may undertake.

21  (Ibid.) After "DJ" et. al. severely harm innocent people nationwide, including

22
23  plaintiff in California, his co-conspirators such as defendnats Minc, Will, et. al. mop

24  up the online bloody-mess of dismembered identities for profit, which they then

25  "kick-back" to "DJ" et. al. who does business in California to maintain said scam.

26      Because defendants make false, conclusory statements about this lawsuit, critical

27
28  facts to this case need be clarified. Plaintiff began to be severely harmed by

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

anonymous postings beginning in 2016 on said website (See Decl. Dr. Murrey, Par. 22) Between 2016 and through 2018 hundreds of malicious, defamatory and anonymous postings by individuals unknown to plaintiff resulted in damages to plaintiff's life and ability to earn money as a scholar, in real estate, etc. not only during this time, but after as the harmful aftereffects continue. (Ibid.)

Because defendants' scam harms its victims severely, the online defamation and cyber-bullying that the revenge-porn website enacts, emboldens, facilitates and aids and abets leads to extraordinary harassment in persons' everyday off-line lives. Individuals who seemed to be posting on **WWW.CHEATERREPORT.COM** contacted plaintiff's girlfriend in 2017 to further defame plaintiff to her by telephone and email directly. The anonymous and non-responsive nature of said website scam makes it impossible for people to have any other recourse than to be extorted by defendants' "removal" and "reputation management companies".

The cyberbullying of **WWW.CHEATERREPORT.COM** emboldened individuals to take *the exact language and defamation* from posts on said website to make two (2) false police reports for which plaintiff was twice falsely arrested, once in 2017 and another time in 2018, the only two times in his life he has ever been arrested. Although plaintiff was never charged, as there was no evidence that he had done anything wrong – and although he settled both of the lawsuits that he subsequently filed against the county and city in his favor (See Case No.s 19STCV06357 and 2:19-CV-02501-FMO-(ASx)) –, his life is forever damaged

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

because of this crime organization. Just as defendants and their co-conspirators try
to wiggle out of their clear guilt for their interstate extortion ring as well as their
guilt for aiding and abetting defamation, etc., the individuals who made the false
police reports falsely claimed that their reports were "privileged" and therefore were
not defamation. However, their several motions to strike (Anti-SLAPP) and dismiss
all failed (See Decl. Dr. Murrey, Par.s 25-26, and Exhibit 9, Par. 27 – plaintiff
respectfully asks the court to take judicial notice of an adopted tentative ruling
presented here as Exhibit 9).

What drew plaintiff to his girlfriend who succumbed to cancer in March of 2018
was her ability to think for herself and not give into online brainwashing. Her belief
and devotion to the real person plaintiff is versus the false image that this crime
organization aggressively and maliciously created of him online via said website
gave plaintiff the strength to seek legal recourse and remain by her side during her
tragic decline, despite the fact that both plaintiff and his girlfriend continued to be
targeted, assaulted and extorted by **WWW.CHEATERREPORT.COM** and
"removal" and "reputation" companies even during the final months of her life. (See
Decl. Dr. Murrey, Par. 28).

Although plaintiff undertook, for the first time in his life, an extraordinary
volume of litigation beginning in 2017, every case in which he has been involved
has resulted in either a judgment or settlement in his favor. Plaintiff is a scholar of
ancient Greece and modern Europe by trade. He deals in evidence and reason.

1
2
3
4
Unlike the defendants who see the law as an opportunity to maliciously conceal their online crime organization, plaintiff does not litigate frivolously. (See Decl. Dr. Murrey, Par. 29).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
Defendant's references to paragraphs 59-61 of plaintiff's first amended complaint are conclusory and false. The fact is that prior to the postings that severely harmed plaintiff on **WWW.CHEATERREPORT.COM** in 2016 and 2017, plaintiff had never heard the term or concept of a "removal" or "reputation management" company. (See Decl. Dr. Murrey, Par. 30). Only after being severely harmed in California by **WWW.CHEATERREPORT.COM** whose anonymous and non-responsive nature left plaintiff (like all its victims) with no recourse, but to remove said postings via companies including those of defendants whose advertising targeted him in California, was plaintiff forced under duress to sign various contracts, to accept forum selection clauses and to send money from California to defendants Anthony Will, his business entity "Reputation Resolutions" a.k.a. "Digital Revolution", Minc Law, and other defendants in a desperate attempt to survive the lethal assault that their crime organization had unleashed upon him. (See Decl. Dr. Murrey, Par. 31).

24
## II.    LEGAL STANDARD

25
26
27
28
Further, plaintiff Dr. Murrey need make only a *prima facie* showing of jurisdictional facts to satisfy his burden of demonstrating jurisdiction over defendant, in the absence of an evidentiary hearing. (*Brayton Purcell LLP v.*

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). The Court must take uncontroverted allegations in the complaints as true and resolve any factual conflicts and draw all reasonable inferences in favor of Dr. Murrey. (*Id.*).

## III.   ARGUMENT

**A. Defendants Conspired to Intentionally Mislead Plaintiff; Defendants' "Agreements" were Intentionally Deceptive and Fraudulent; Plaintiff was Specifically Misled Regarding the "Forum Selection Clauses" in Defendants "Contracts" which are a Part of Defendants' Crime Organization; Said "Forum Selection Clauses" are Invalid.**

If plaintiff knew that defendants were conspiring with one another and DJ Rivera and said website, he never would have done business with them, much less signed any agreements, much less agreed to any forum selection clauses, much less paid them money from California (which they all received and took) for service rendered in California (Plaintiff's experience of the removal of postings online in California). (See Decl. Dr. Murrey, Par. 47).

**B. Enforcement of said Fraudulent "Forum Selection Clauses" Will Deprive Plaintiff Dr. Murrey of His Day in Court.**

Without one Central Federal Court wherein plaintiff and all defendants can be efficiently gathered, plaintiff would lack the recourse of a federal subpoena and be unable to perform the proper discovery necessary to uncover this conspicuous online crime organization. The Central District Court of California is the proper venue because 1) this is where the plaintiff was severely harmed, 2) California is where at least one of the defendants regularly does business ("PRVT LLC"), 3) all defendants regularly do business in California as when they receive money from their "client"-

victims in California, 4) to say nothing about Mr. Minc's ties to charged felons in

California who regularly "do business" i.e. enact similar online extortion rings in

California (See Decl. Dr. Murrey, Par. 40, and Exhibit 13, Par. 41), and finally 5) it

would be no inconvenience for defendants who are all self-proclaimed "Internet

Experts" to litigate their cases online as most litigation is done today.

### C. Enforcement of said Fraudulent "Forum Selection Clauses" Will Contravene Public Policy.

Plaintiff Dr. Murrey has presented facts in his complaint, during the pre-filing

telephonic conference and in these opposing papers, declarations and exhibits that

support a finding that public policy of California would justify invalidating "the

forum selection clauses" in the "agreements" peculiar to this crime organization.

### D. Defendants are Subject to Personal Jurisdiction in California.

Under Rule 4(k)(1)(A), this Court applies California's long-arm statute to

determine the bounds of the Court's jurisdiction over a party, which authorizes its

courts to exercise jurisdiction to the full extent constitutionally permitted. (*Axiom

Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017)).

### E. Defendants Conduct subjects them to this Court's jurisdiction.

Defendants not only regularly do business in California as when they receive

money from their "client"-victims in California (which they did in this case with

plaintiff), the ads that their companies run also target the American people

nationwide, including to those like plaintiff in California. This is how plaintiff came

to become aware of defendants' "removal services", only after he was severely

- 10 -

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   harmed by postings on said website and he was searching online to see if he could

2   rehabilitate his life from said harm. (See Decl. Dr. Murrey, Par. 49). And finally

3
4   defendants knowingly conspire with "DJ Rivera" and his various entities which, like

5   PRVT LLC, regularly do business in California.

6       Defendants claim that they and their entities do not engage in business in

7
8   California, but a company and its individuals are subject to jurisdiction where they

9   take action in the forum, as when a "defendant's transmission of goods [into the

10  forum state] permits the exercise of jurisdiction . . . where the defendant can be said
11
12  to have targeted the forum." *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882

13  (2011). Defendants all received money from plaintiff in California. Alternatively, as

14  the Supreme Court observed in *Daimler AG v. Bauman*: "Agency relationships [...]
15
16  may be relevant to the existence of *specific* jurisdiction" because "a corporation can

17  purposefully avail itself of a forum by directing its agents or distributors to take

18  action there." (*Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014)). As shown
19
20  and proven by plaintiff's declaration and exhibits, defendants do business, have

21  contacts in California that, despite the absurd lengths to which they go with Mr.

22  Rivera to mask them, they are extensive, long-standing and important to the core of
23
24  their online and nationwide criminal organization.

25  **F. Dr. Murrey's claims arise out of or relate to Defendants' conduct in
       California.**
26
27      As noted above, the Central District Court of California is the proper venue

28

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    because 1) this is where the plaintiff was severely harmed, 2) California is where at

2    least one of the defendants regularly does business ("PRVT LLC"), 3) all defendants

3
     regularly do business in California as when they receive money from their "client"-
4

5    victims in California, 4) to say nothing about Mr. Minc's ties to charged felons in

6    California who regularly "do business" i.e. enact similar online extortion rings in

7
     California (See Decl. Dr. Murrey, Par. 40, and Exhibit 13, Par. 41), and finally 5) it
8

9    would be no inconvenience for defendants who are all self-proclaimed "Internet

10   Experts" to litigate their cases online as most litigation is done today.

11
12         This is relevant as second prong of the personal jurisdiction test involves a

13   causal analysis. The Ninth Circuit has adopted a but-for test: "Under the 'but for'

14
     test, a lawsuit arises out of a defendant's contacts with the forum state if a direct
15

16   nexus exists between those contacts and the cause of action." *Learjet, Inc. v. Oneok,*

17   *Inc.*, 715 F.3d 716, 742 (9th Cir. 2013) (quotation marks omitted), *aff'd sub nom.*

18
     *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015). Courts do not apply this test
19

20   "stringently." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1085,

21   1092–93 (D. Or. 2016) (test "should not be narrowly applied; rather, the

22
     requirement is merely designed to confirm that there is some nexus between the
23

24   cause of action and defendant's contact with the forum"; sustaining jurisdiction

25   where defendant's infringing product was purchased over the web by only three

26
     people in the forum) (quotation marks omitted); *California Brewing Co. v. 3*
27

28   *Daughters Brewing LLC*, 2016 WL 1573399, at *6 (E.D. Cal. Apr. 19, 2016)

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

("Despite its apparently strict language, many district courts in the Ninth Circuit have not applied the 'but for' test stringently"); *Elec. Recyclers Int'l, Inc. v. Calbag Metals Co.*, 2015 WL 1529490, at *4 (E.D. Cal. Apr. 2, 2015). Here the plaintiff's injuries occurred in California and have been caused by the totality of national conduct, and personal jurisdiction exists if the defendant undertook some of this conduct within the forum, which Mr. Rivera and PRVT LLC did and these defendants also did when they received money from plaintiff in California. (See also *Shute v. Carnival*, 897 F.2d 377, 386 (9th Cir. 1990) (upholding personal jurisdiction where defendant had advertised in forum state but had no offices, employees or assets in the forum).

Subsequent cases have continued to make clear that the defendant's forum-based activities need not cause the entire harm. For example, in *Dubose v. Bristol-Myers Squibb Co.*, a resident of South Carolina sued foreign corporations in California for failure to warn and fraudulent misrepresentation with respect to a drug product that the defendants had tested at clinical trials in California and many other states. (2017 WL 2775034 (N.D. Cal. June 27, 2017). The *Dubose* court simultaneously issued an identical ruling in a companion case brought by a New York plaintiff. *Cortina v. Bristol-Myers Squibb Co.*, 2017 WL 2793808 (N.D. Cal. June 27, 2017). The court, applying the Ninth Circuit's but-for test and upholding jurisdiction, rejected the defendants' argument that there is a numerical threshold for in-state conduct when the injury is caused by conduct spread across many

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

jurisdictions: "What would that threshold be? If 25 percent of the clinical trials were conducted in California, would that be enough? 50 percent? 75 percent? The point is that our existing case law provides no basis for imposing an arbitrary cut-off, and the Court is disinclined to fashion a new barrier to the exercise of its jurisdiction from whole cloth." (2017 WL 2775034, at *4.) The court held that since the California clinical trials were "*part of* the unbroken chain of events leading to plaintiff's injury" they did not have to be the sole cause of the injury. (*Id.* at *3 (emphasis added)).

Here, defendants received payments from plaintiff in California during the relevant time period and they conspired knowingly with Mr. Rivera and his entities, PRVT LLC included, who also engaged during the relevant time period in substantial in-state conduct to pay, operate, maintain the revenge-porn website **WWW.CHEATERREPORT.COM**. One may also consider the website in *Mavrix* that caused injury merely by making copyrighted materials "accessible to users" in California. (FAC ¶ 118(e); *Mavrix*, 647 F.3d at 1228.) Further, the personal jurisdiction analysis "depends, to a significant degree, on the specific type of tort ... at issue" which in this case is RICO. (*Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (analyzing purposeful direction element); *cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (courts may not "raise the standing hurdle higher than the necessary showing for success on the merits in an action")).

In this action, Dr. Murrey asserts several claims against defendants, including Racketeer Influenced and Corrupt Organizations Act ("Civil RICO"), 18 U.S.C. § 1962(a-d); Intentional and Fraudulent Misrepresentation; Fraud; Civil Conspiracy; Violations of Calif. Bus. & Profs. Code § 17200, et seq. for Unlawful, Unfair and Fraudulent Acts and Violations of Calif.'s Statutory and Common Law Right of Publicity. Alongside the shadow-web that defendants created to abuse the World Wide Web, it is clear that defendants alongside Mr. Rivera, his entities such as PRVT LLC and their co-conspirators did business in California while they also set up a network of domestic and off-shore entities in well-known tax havens (Puerto Rico, Panama, etc.). They did this to secretly launder money, divert funds, fabricate backdated corporate records, and in general execute a variety of elaborate schemes including the operation and maintenance of the revenge-porn website **WWW.CHEATERREPORT.COM**.  Dr. Murrey has thus shown that his claims arose out of and were related to defendant's(s') activities in California where they targeted victims with their companies ads, where they provided "removal services" experience online in California and where they operated and enhanced the performance of the website **WWW.CHEATERREPORT.COM**  via a company in California (Cloudflare, Inc.).

**G. Defendants have not demonstrated that exercise of personal jurisdiction over it is unreasonable.**

Once plaintiff establishes the first two elements of specific jurisdiction, then

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

the burden shifts to the defendant(s), which cannot meet its "heavy burden" under the Ninth Circuit's seven-factor test, "to present a compelling case that the exercise of jurisdiction is unreasonable." (*Chunghwa Telecom Global v. Medcom*, 2016 WL 5815831, at *6 (N.D. Cal. Oct. 5, 2016)). Under factor one, the extent of the defendant's purposeful interjection into the forum state, defendants targeted their companies' advertisements to victims of said website which is secretly run by them and their conspirators including, but not limited to Mr. Rivera and his entities "PRVT LLC" which purposefully injected themselves into California by deciding to pay for a California-based company's website services: Cloudflare, Inc., and which were and are provided to in California, used in California and engaged for their scam conduct within the state. Under factor two, the burden on defendant(s) in defending in the forum is not heavy, given defendants' responsibility for their ongoing secret operation in California, targeted ads in California and origin of money transfers from California over the past decade that has contributed to Dr. Murrey's injuries. (*Kabo Tool Co. v. Porauto Industrial Co.*, 2013 WL 5328496, at *7 (D. Nev. Sep. 20, 2013) ("While jurisdiction in Nevada may not be as convenient to the defendants, it does not present an unreasonable burden. The defendants here have been conducting business in Nevada for over 10 years. If the defendants have the ability to sufficiently conduct business, they also have the ability to defend their actions in Nevada.").

Since the Court is applying federal law, there cannot be a conflict with the sovereignty of another state (factor 3) (*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)). The forum state's interest in adjudicating the dispute, "California has an interest in protecting its residents," (*Universal Stabilization Techns., Inc. v. Advanced BioNutrition Corp.*, 2017 WL 1838955, at *6 (S.D. Cal. May 8, 2017)), which is particularly strong in this case. California is the most efficient forum to resolve the controversy (factor five), given that the injuries and most of the injury-inducing conduct occurred in this state. Factor six, the importance of the forum to the plaintiff's interest, favors California because it offers convenient and effective relief for the Dr. Murrey's RICO and other claims. Finally, as to other forums (factor seven), the "fact that the lawsuit will continue in California with other parties tips the efficiency factor in [plaintiff's] favor." (*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993)).

And again as self-proclaimed "Expert Internet Attorneys" and the like, all defendants (all of whom already have a custom of doing business in California and accepting business and money from California) will have no inconvenience filing their defenses online in the Central District of California.

**H. Defendants have Waived Service Prior to Their Filing of This Motion**

Defendants have waived service prior to their filing of this motion. (See Decl. Dr. Murrey, Par. 48).

**I. Alternatively, Dr. Murrey is entitled for leave to amend his complaint and or jurisdictional discovery.**

- 17 -

1    Dr. Murrey requests jurisdictional discovery if necessary, which "should be

2   granted when . . . the jurisdictional facts are contested or more facts are needed."

3   (*Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Illumina, Inc. v.*

4   *Qiagen NV*, 2016 WL 3902541, at *4-5 (N.D. Cal. July 19, 2016) ("there are too

5   many factual disputes to resolve without more thorough jurisdictional discovery"

6

7   against Dutch parent company); *SA Luxury Expeditions LLC v. Latin America for*

8   *Less, LLC*, 2014 WL 6065838, at *2 (N.D. Cal. Nov. 12, 2014) ("defendant's

9   declarations dodge the key issues with artful wording"); *Macias v. Waste Mgmt.*

10  *Holdings, Inc.*, 2014 WL 4793989, at *3 (N.D. Cal. Sept. 25, 2014) ("discovery is

11

12  needed to clarify the controverted issue of personal jurisdiction")). If the Court finds

13  that plaintiff's allegations are insufficient to establish jurisdiction, plaintiff requests

14  discovery regarding defendants' roles with respect to levels of this nationwide

15

16  online scam, including taking into their financial history, including any and all

17  business they have conducted in California, nationwide, via offshore banking

18  accounts, any other "contractual arrangements" they have made with the other

19  defendants and have entered into relating to their California activities.

20

21

22      **J. Defendants Aaron Minc, Minc Law, Anthony Will, Digital Revolution
            a.k.a. Reputation Resolutions Represent a Swamp of
            Mafia/"Intelligence" Clowns who think that they are Immune from
            Federal Law as they Irreparably Harm Americans Nationwide and
            Peoples Everywhere**

23

24

25

26

27

28

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1
2
3
4

        Anyone taking a careful look at this case: this motion, the declarations of

defendants as well as Mr. Rivera's multiple motions and declarations will notice

something usual.

5
6
7
8
9
10
11
12

        Beyond his false conclusory statements are defendant's silences that coalesce

about what they know **WWW.CHEATERREPORT.COM** to be. While never

refuting their involvement with "DJ" and thus with this criminal online organization,

defendants refuse to explain the simple question as to why, if they have actually

created a bullet-proof legal strategy to get away with this scam, everyone and

everything need be absolutely private and anonymous, like "PRVT LLC"?

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        As plaintiff has shown, "DJ" and his entities, PRVT LLC included, works

closely with other individuals like Aaron Minc. (See Decl. Dr. Murrey, Par.s 6-10,

and Exhibit 2, Par. 11; see also the Declaration of Alexander J. Petale). As it turns

out "DJ's friend Aaron Minc is often sued for civil conspiracies, fraud, etc.

alongside the "NY FBI" and has appeared in an advertisement with a California

businessman who has been charged with felonies for his own "posting removal"

extortion ring. Like "DJ", Minc likes to abuse the law if he's caught red-handed,

thus his lawsuits in Ohio, also against plaintiff that Minc filed after plaintiff filed

this case – and which, astonishingly, is based on Minc's delusional claim that his

"trade secrets" were "misappropriated". (See Decl. Dr. Murrey, Par. 40, and Exhibit

13, Par. 41). Exposing someone's extortion ring is hardly stealing a trade secret.

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

It is relevant that in Mr. Minc's desperate attempt to escape Federal justice, months after Mr. Minc and his law office had been emailed, mailed and served properly in person copies of this federal lawsuit – that is, while Mr. Minc and his office were aggressively avoiding service of this lawsuit in bad faith –, Mr. Minc shamelessly turned to a local abuse of process by filing a delusional lawsuit against plaintiff in Ohio. (See Decl. Dr. Murrey, Exhibit 19, Par. 50). Relevant also is Dr. Murrey's Motion to Dismiss, Mr. Minc's Opposition, Dr. Murrey's Reply and Mr. Minc's Motion to Strike said Reply in said Ohio case, of which plaintiff respectfully asks this court to take judicial notice. (See Decl. Dr. Murrey, Exhibit 20, Par. 51).

Then there is the issue of geography, beyond jurisdiction and venue. Minc's buddy "DJ" is all over Virginia, Henrico County, etc. exactly where most of the seventeen (17) "intelligence" agencies and their contractors try to keep their heads down – and the infamous espionage district with its shameful history of grand juries, the place where the deceptive "Rivera Group" and "IRC" front secretly for the non-Virginia based "PRVT LLC" that allows "DJ" and crew to do business secretly in California, at least, until now. "There is a perfectly acceptable legal system in Virginia, where Rivera resides, should Plaintiff choose to file suit there," his counsel says.

In line with his lack of subtly, Minc's close associate "DJ" in his similar motion to dismiss follows suit with CIA's intentionally pejorative use of the concept and words "conspiracy theory" that dates back to when Alan Dulles seeking to

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   misdirect the public away from the assignation of JFK. Anyone familiar with

2   American history will know the illicit wedding of organized crime and pre-

3
4   "intelligence" agencies in the 1910s and 1920s. And anyone following current

5   events would have noticed how entangled news outlets and "intelligence" have

6   become. One of thinks of the now shamed LA Times "journalist" Ken Dilanian.

7
8   (See Decl. Dr. Murrey, Exhibit 14, par. 42) *This reminds one of "DJ"'s own news*

9   *appearance wherein he says scams are reliable and that the public "should pay the*

10  *crooks" when they are extorted online.* (See Decl. Dr. Murrey, Exhibit 15, Par. 15).

11
12          When one looks at the heinous history of organized crime and "intelligence"

13  – for instance, the somewhat recent pedophile ring "The Finders Cult" inseparable

14
15  from the FBI and CIA – or more recently the American and Israeli "intelligence"

16  sex trafficking ring to which Jeffrey Epstein and Ghislaine Maxwell (her father

17  worked with Mossad until they murdered him after a money-deal went sideways)

18
19  and host of other "celebrity" individuals too endless and grisly to name –, it is clear

20  that a revenge-porn "shaming"-website with political motives like

21  **WWW.CHEATERREPORT.COM** looks like just another "covert op to control

22  and exploit the American populace gone bad".

23
24          But although defendants, "DJ" and his entities, PRVT LLC included, and

25  their co-conspirators – Mr. Gingras, it should be noted, who is Minc and Will's

26  counsel also appears in an advertisement on yet another "Name-Shame" website

27
28  (See Decl. Dr. Murrey, Par. 44, Exhibit 16) – are hoping they can keep their scam in

- 21 -

the dark and elude justice *per usual*, it is worth noting that the federal judge

Alexander Acosta, who infamously gave Jeffrey Epstein a "sweetheart deal" that

caused countless more victims to suffer all because, in Acosta's words, he was told

that "he [Epstein] belonged to intelligence", now has a legacy of shame. (See Decl.

Dr. Murrey, Exhibit 17, Par. 45)

Defendants would do well to remember that instead of: "We the blob of

silicon valley tech oligarchs and un-elected 'intelligence officers'…", *The*

*Constitution* begins: "*We the people…*" This is vital. This is one of the things that

makes America unusual and great: a legal system with the potential to harness the

common sense and decency that is hidden in the hardwiring of hundreds of millions

of people and which has been evolving for hundreds of thousands of years. This is

far more trustworthy than the exceptional psychopathy on display in said defendant-

clowns.

## IV.    CONCLUSION

For the reasons and arguments presented herein, Dr. Murrey respectfully requests

the Court to deny defendants motion and find that they are subject to jurisdiction.

DATED: 29 November 2020                    Respectfully submitted,


By: _____
Dr. Stewart Lucas Murrey
*Plaintiff & Plaintiff in Pro Se*

PLAINTIFF DR. MURREY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS