David S. Gingras, CSB #218793
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

Attorney for Defendants
Aaron Minc; Minc Law;
Anthony Will; & Digital Revolution, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. STEWART LUCAS MURREY, an individual,<br><br>    Plaintiff,<br><br>  vs.<br><br>AARON MINC, an individual, MINC LAW, a business entity, DOMINGO J. RIVERA, an individual, RIVERA LAW GROUP, PLC a/k/a DOMINGO RIVERA, ATTORNEY AT LAW, PLC, a limited liability company, ELIZABETH JORDAN, an individual; INTERNET REPUTATION CONTROL a/k/a IRC, a business entity, ANTHONY WILL, an individual, DIGITAL REVOLUTION LLC a/k/a REPUTATION RESOLUTIONS, a business entity, BRANDYOURSELF.COM, INC., a limited liability company, TOM VITOLO, an individual; CHRISTIAN TRYON, an individual; and JOHN DOE NUMBERS 1–10.<br><br>    Defendants. | Case No: 2:20-cv-6217-PA-SK<br><br>**REPLY IN SUPPORT OF DEFENDANT AARON MINC, MINC LAW, ANTHONY WILL AND DIGITAL REVOLUTION, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>Date:        December 21, 2020<br>Time:        1:30 P.M.<br>Courtroom:   9A<br>Judge:       Hon. Percy Anderson |

## I. INTRODUCTION

In response to a relatively short (12 substantive page) Motion to Dismiss (Doc. #31) filed by Defendants Aaron Minc, Anthony Will, and their respective entities (the "Minc/Will Defendants"), and similar motions from co-defendants, Plaintiff Dr. Murrey responded with a vitriolic, rage-filled explosion spanning more than 500 pages of argument and exhibits (162 of which relate, sort of, to Mr. Minc and Mr. Will). Dr. Murrey's response includes mostly (if not entirely) irrelevant and repetitive *ad hominem* attacks accusing Defendants of participating in a "crime organization", comparing Defendants to accused child rapist Jeffrey Epstein (as if this has *anything* to do with this case), and suggesting Defendants "Represent a Swamp of Mafia/Intelligence Clowns". To underscore his point, or maybe his lack of one, Dr. Murrey even includes needless gratuitous pornographic images taken from www.CheaterReport.com. *See*, *e.g.*, ECF Doc. 44–2 at Page ID #1333. *But why*? *What is the point of all this?*

Apparently Dr. Murrey's point is: "the Internet contains bad stuff". Unlike most of Dr. Murrey's other arguments, that point is both true and undisputed. Indeed, Defendants would have gladly stipulated to the fact that lots of bad stuff is available online, rather than have Dr. Murrey submit pornographic images to the Court in an effort to prove this irrelevant "fact". Regarding the actual *substance* of Dr. Murrey's argument vis-à-vis the Minc/Will Defendants….well, there is not much substance to discuss.

To recap the salient facts – several years ago, someone began posting derogatory statements on the Internet about Dr. Murrey. At some point, Dr. Murrey decided he could not address these statements on his own. So Dr. Murrey hired various professionals to help him. Among them were attorney Aaron Minc (in Ohio).

After discussing the issues with Mr. Minc's staff, Dr. Murrey entered into a written agreement with Mr. Minc's firm that contained a clear and unequivocal forum selection clause which required *all* disputes arising out of the agreement to be litigated in Ohio. Dr. Murrey also entered into a similar agreement with Mr. Will (via his company Reputation Resolutions) which required disputes to be litigated in North Carolina.

Dr. Murrey now wants to ignore these written agreements by shouting: "FRAUD!" But the alleged fraud he claims has *nothing* to do with the forum selection clauses Dr. Murrey agreed to. Rather, the alleged fraud is a murky, paranoid, broad-ranging, and wholly conclusory/unsupported allegation that Mr. Minc and Mr. Will are somehow secretly "conspiring" with the anonymous owner of www.CheaterReport.com.

All theatrics aside, as was succinctly explained in Defendants' motion, the legal standard for resolving this matter is simple and clear: "a valid forum selection clause should be given "'controlling weight in all but the most exceptional cases.'" *Spread Your Wings LLC v. AMZ Group LLC*, 2020 WL 5749085 (N.D.Cal. 2020) (emphasis added) (quoting *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013)); *see also Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) ("[o]nly under extraordinary circumstances unrelated to the convenience of the parties" should a motion to enforce a forum-selection clause be denied) (quoting *Atlantic Marine*, 571 U.S. at 62).

Dr. Murrey does not challenge this controlling rule of law. Thus, the question here is also very simple – should this Court hold Dr. Murrey to the terms of the written agreements he made with Defendants, or should Dr. Murrey be allowed to ignore his written contractual promises? Dr. Murrey's rage and fury notwithstanding, the answer to that question is exceedingly simple.

As was already explained in the Minc/Will Defendants' motion, generalized allegations of fraud are *per se* insufficient to overcome an otherwise valid forum selection clause. Yet that is precisely the situation we have here – Dr. Murrey offers no evidence (indeed, not even any argument) that would tend to show he was defrauded into *agreeing* (as he did) to the terms of *the forum selection clauses*.

That undisputed fact ends the enquiry here. Dr. Murrey agreed, in writing, to litigate disputes where Mr. Minc and Mr. Will are located, not here in California. Applying well-settled law, this Court must enforce that promise by transferring this case or, alternatively, dismissing it for lack of personal jurisdiction.

## II. ARGUMENT

### A. Dr. Murrey Has Not Shown The Forum Selection Clauses Were Obtained By Fraud

The legal standards governing the enforcement of forum selection clauses were explained in detail in Defendants' motion (Doc. 31) at pp. 3–8. Those rules will not be repeated here except to note controlling authority from both the U.S. Supreme Court and the Ninth Circuit require the party opposing enforcement of the clause (Dr. Murrey) to meet a heavy burden showing "extraordinary circumstances".

To do this, Dr. Murrey must prove, *inter alia*, <u>the forum selection clause *itself* was obtained by fraud or coercion</u>. *See* Doc. 31 at 4–5. A generalized allegation of fraud relating to the contact as a whole is insufficient as a matter of law to meet that standard.

In his opposition, Dr. Murrey presents exactly <u>one sentence</u> of "argument" to explain and support his position:

> If plaintiff [Dr. Murrey] knew that defendants were conspiring with one another and DJ Rivera [the alleged owner of www.CheaterReport.com] and said website, he never would have done business with them, much less signed any agreements, much less agreed to any forum selection clauses, much less paid them money from California (which they all received and took) for service rendered in California (Plaintiffs experience of the removal of postings online in California).

Plaintiff's Opp., Doc. 44 at 9:10–17.

Putting aside the fact that Dr. Murrey has offered literally ZERO evidence to support his conclusory allegation that "defendants were conspiring with one another", at its core, Dr. Murrey is making precisely the generalized "*I was duped*!" argument discussed in Defendants' motion. As already explained, this argument is not sufficient, as a matter of law, to overcome the strong presumption in favor of enforcing forum selection clauses. Accepting Dr. Murrey's argument would mean *any* party could freely ignore the terms of a written forum selection clause simply by concocting a baseless allegation of generalized fraud against the other party. That is not the law.

GINGRAS LAW OFFICE, PLLC
4802 EAST RAY ROAD, #23-271
PHOENIX, AZ 85044

In the absence of compelling evidence of fraud/coercion by the Minc/Will Defendants which related <u>directly to the inclusion of the forum selection clause</u>, Dr. Murrey cannot escape the terms of his agreements with Defendants. Because Dr. Murrey bears the burden of proof on this point, and because he has not met that burden, transfer/dismissal is mandatory.

### B. Enforcement Of The Forum Selection Clause Will Not Deprive Dr. Murrey Of His Day In Court

When a forum selection clause is valid and not otherwise unenforceable due to fraud, the Court may still deny enforcement of the clause if it would effectively leave the plaintiff with no recourse at all, but *only* when the agreed-upon forum literally offers no remedy at all; "under *Atlantic Marine*, courts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedies whatsoever." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1091–92 (9th Cir. 2018). Again, as the party *resisting* enforcement, Dr. Murrey bears the burden of proof on this point. *See Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1082 (E.D.Cal. 2019) (enforcement may be denied "if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced … .") (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).

In his opposition, under a heading claiming enforcement of the clauses would deprive him of his day in court, Dr. Murrey offers little more than a cursory assertion: "Without one Central Federal Court wherein plaintiff and all defendants can be efficiently gathered, plaintiff would lack the recourse of a federal subpoena *and be unable to perform the proper discovery necessary to uncover this conspicuous online crime organization*." Opp., Doc. 44 at 9:20–24 (emphasis added).

This argument is both legally irrelevant and factually incorrect. First, legally speaking, Dr. Murrey's argument is, in effect, that California is simply a more convenient forum *for him*; not that the courts of Ohio or North Carolina would provide him with no recourse at all. That argument is simply not relevant here, because "Where the parties

4

have agreed to a forum-selection clause, they '<u>waive the right to challenge the preselected forum as inconvenient or less convenient</u> for themselves or their witnesses, or for their pursuit of the litigation.'" *Yei A. Sun*, 901 F.3d at 1091 (emphasis added) (quoting *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013)). In short, the question of whether California or Ohio is a more convenient forum simply has nothing to do with whether requiring Dr. Murrey to litigate elsewhere would effectively provide him without any recourse at all.

This leads to the second, and more factual, point – Dr. Murrey is simply wrong as a matter of *fact* when he claims that he would be "unable" to pursue discovery through litigation in Ohio or North Carolina. That is simply false as a matter of fact. Again, other than Dr. Murrey, it appears that no other parties are located in California. No witnesses are located in California. No documents (or at least no documents possessed by any Defendant) are located in California. Indeed, other than Dr. Murrey, it appears that every party, every percipient witness, and all relevant documents are located *outside* California.

That fact shows the fatal flaw in Dr. Murrey's argument—even if Dr. Murrey were allowed to break his agreement with Defendants and litigate this case in California, that does not mean discovery will be more convenient compared to litigating this case elsewhere. Instead, because no other parties or witnesses are present in this state, virtually all discovery will need to occur *outside California* even if this case remains here.

In any event, the question of convenience is simply not relevant at this stage. Instead, Dr. Murrey has failed to show that litigating this matter in Ohio or North Carolina would be tantamount to denying him *any* recourse at all.

### C. Enforcement Of The Forum Selection Clause Will Not Contravene Public Policy

The next step in the inquiry focuses on matters of public policy. Again, the legal standards on this point were discussed on pages 7–8 of the Minc/Will Defendants' motion (Doc. 31), so they will not be repeated in full here.

5

Once again, Dr. Murrey devotes a single conclusory sentence to this point, claiming (with zero factual or legal support) that the "public policy of California would justify invalidating the forum selection clauses in the agreements peculiar to this crime organization." Opp., Doc. 44, at 10:12–13 (internal quotation marks omitted).

Defendants' reply to this argument will be equally succinct; as was already explained in their motion, to carry his burden of showing that public policy favors his side, "the plaintiff must point to a statute or judicial decision that clearly states such a strong public policy." Mot., Doc. 31 at 7:18–20 (quoting *Yei A. Sun*, 901 F.3d at 1090) (citing *Spread Your Wings*, 2020 WL 5749085, *7–8) (rejecting generalized policy arguments, and noting, "plaintiffs have not demonstrated that a strong California policy outweighs the strong federal policy of enforcing forum selection clauses.")

Dr. Murrey's cursory and unsupported reference to an unidentified public policy is not sufficient to satisfy his burden of showing that California policy outweighs the strong federal interest in enforcing forum selection clauses.

### D. Attorney Petale's Denials Are Irrelevant

Before discussing other issues, one final comment is warranted regarding the forum selection clause. On pages 5–6 of Defendants' motion, it was noted that during the contract negotiations with Dr. Murrey and Mr. Minc's firm, Dr. Murrey appeared to be represented by counsel – Mr. Alexander J. Petale. Mr. Petale's declaration (Doc. 44–7) admits he loaned money to Dr. Murrey to hire Mr. Minc's firm in August 2019. As explained in Mr. Minc's declaration, the participation of a third party (Mr. Petale) caused Mr. Minc to ask Dr. Murrey to provide his written consent to allow Mr. Petale act as Dr. Murrey's "representative" regarding the agreement, which Dr. Murrey did. *See* Doc. 32–1, Exhibit A at Page ID#711.

Defendants mentioned this point because, as noted on page 5 of their motion, Courts have been particularly unwilling to ignore forum selection clauses when the party opposing enforcement was sophisticated (as Dr. Murrey is) and/or where that party was represented by counsel at the time. *See* Doc. 31 at 5 (compiling cases).

As explained in Mr. Minc's declaration (Doc. 31–1) at ¶ 15, he clearly believed Dr. Murrey was represented by counsel (Mr. Petale). And Mr. Minc formed that belief for good reason—Dr. Murrey eventually returned a fully executed copy of his agreement with Mr. Minc's firm which included a hand-written notation from Dr. Murrey indicating: "I authorize Alexander J. Petale, Esq., as my representative herein."  As Mr. Minc further explains, "This note was added to the agreement <u>in order to confirm that Dr. Murrey, was, in fact, represented by counsel</u>, and that my firm was authorized to discuss this matter with Mr. Petale as necessary." Doc. 31–1 at 3:37–4:2 (emphasis added).

Disappointingly, but perhaps not surprisingly, both Dr. Murrey and Mr. Petale now try to backpedal and/or rewrite history by avowing that, although he was unquestionably involved, Mr. Petale was *not really* acting as Dr. Murrey's "counsel" during the conversations and negotiations with Mr. Minc. Nevertheless, Mr. Petale never denies reviewing the agreement entered into between Dr. Murrey and Mr. Minc's firm.

Whether or not attorney Petale was truly acting as Dr. Murrey's counsel, financial advisor, loan shark, or some other capacity makes no difference here. Clearly, there is no question but that Dr. Murrey *could* have consulted with counsel (either Mr. Petale or someone else) before he accepted the terms of the written agreements with Mr. Minc and Mr. Will. That fact is entirely undisputed. As such, it should weigh heavily, if not conclusively, against any finding that Dr. Murrey was defrauded or coerced into accepting the forum selection clauses as-written.

### E. Defendants Are Not Subject To Personal Jurisdiction In California

If this Court agrees with Defendants and finds the forum selection causes are enforceable, that finding ends the discussion; transfer or dismissal of the case is mandatory. But as noted in Defendants' motion, even if the Court were to hold the clauses unenforceable, dismissal would still be proper as to the Minc/Will Defendants because they are not subject to personal jurisdiction here.

Unlike the other points, Dr. Murrey's opposition *does* devote some time and attention to the question of personal jurisdiction. In short, Dr. Murrey claims (without any

7

evidentiary support) that Mr. Minc and Mr. Will "advertise" in California. But Dr. Murrey's main argument seems to be this – Mr. Minc and Mr. Will "defrauded" Dr. Murrey which resulted in him sending money *from* California to Defendants outside of California. *See* Opp., Doc. 44, at 14:11 (alleging, "defendants received payments from plaintiff in California … .") In Dr. Murrey's view, that fact, coupled with the alleged fraud, should be sufficient to create personal jurisdiction in California.

The Ninth Circuit rejected a very similar (if not identical) argument in *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008). That case involved fraud and related claims arising from the sale of a vehicle on eBay. The buyer (Boschetto) claims that he saw a car advertised on eBay by the seller (Hansing). The vehicle and Mr. Hansing were both located in Wisconsin, whereas Mr. Boschetto was located in California and planned to have the vehicle delivered to him there. *See Boschetto*, 539 F.3d at 1014–15

After completing the purchase on eBay and sending money from California to Wisconsin, Mr. Boschetto discovered the vehicle was materially different from the sales listing in several ways. After Mr. Hansing refused to rescind the contract, Boschetto filed suit in California for fraud and other claims, and defendants moved to dismiss for lack of personal jurisdiction. *See id*. The trial court held personal jurisdiction in California did not exist under these facts, and on appeal, the Ninth Circuit affirmed, explaining:

> [T]he lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in California. The arrangement between Boschetto and Hansing which is, at bottom, a contract for the sale of a good, is insufficient to have created a substantial connection with California. <u>Hansing … did not create any ongoing obligations with Boschetto in California; once the car was sold the parties were to go their separate ways</u>. Neither Boschetto's complaint nor his affidavit in opposition to dismissal point to any continuing commitments assumed by the Defendants under the contract.

*Id*. at 1017 (emphasis added).

In short, *Boschetto* stands for the principle that an alleged fraud committed by an out-of-state defendant which causes economic loss to California-resident plaintiff is not,

8

standing alone, sufficient to create personal jurisdiction in California, at least where the fraud does not arise from the defendant's "ongoing obligations" in California. *See id*. at 1019 (noting, "This was a one-time contract for the sale of a good that involved the forum state only because that is where the purchaser happened to reside, but otherwise created no 'substantial connection' or ongoing obligations there.") And that is *exactly* the situation here with the agreement between Dr. Murrey, Mr. Minc and Mr. Will.

According to the Complaint, both Mr. Minc and Mr. Will agreed to provide one-off services to Dr. Murrey.[1] Once those limited-scope services were completed, "the parties were to go their separate ways"; i.e., neither Minc nor Will agreed to perform any sort of ongoing or continuous work for Dr. Murrey. Again, that jurisdictional fact is entirely undisputed; Dr. Murrey never claims either Mr. Minc or Mr. Will engaged in any other *ongoing* connection with California, and he certainly offers no evidence to that effect.

For these reasons, Mr. Minc and Mr. Will are not subject to personal jurisdiction in California for exactly the same reasons the Wisconsin-resident defendant in *Boschetto* was not subject to jurisdiction here—a one-off transaction with a California resident is not (even if fraudulent) sufficient to create jurisdiction here.

### F.  No Basis Exists For Jurisdictional Discovery

In *Boschetto*, after the district court found personal jurisdiction was lack, the plaintiff sought leave to pursue jurisdictional discovery. Dr. Murrey makes the same request here, seeking leave to pursue discovery "regarding defendants' roles with respect to levels of this nationwide online scam, including taking into their financial history, including any and all business they have conducted in California …" Opp. at 18:15–16.

---

[1] In his opposition, Dr. Murrey argues, falsely, that his claims arise from "service rendered *in California* …." Opp. at 9:14–15 (emphasis added). However, later in that same sentence, Dr. Murrey appears to clarify that what he means: he was in California when he "experienced" the effects of the services provided by Mr. Minc and Mr. Will. That Dr. Murrey may have felt beneficial effects in California simply because he resides here does not mean that Defendants are engaged in ongoing business *within the State of California*.

GINGRAS LAW OFFICE, PLLC
4802 EAST RAY ROAD, #23-271
PHOENIX, AZ 85044

This request should be rejected for the same reason it was rejected in *Boschetto*; because it is "based on little more than a hunch that it might yield jurisdictionally relevant facts … ." *Id.* at 1020 (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986) (district court did not abuse its discretion by refusing jurisdictional discovery where the plaintiffs "state only that they 'believe' discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction.")

### III.  CONCLUSION

For the reasons stated above, this matter should be dismissed for lack of personal jurisdiction. Alternatively, this matter must be dismissed pursuant to Rule 12(b)(3) and/or transferred to the appropriate venue(s) pursuant to 28 U.S.C. § 1404(a).

DATED December 10, 2020.

GINGRAS LAW OFFICE, PLLC

David S. Gingras
Attorney for Attorney for Defendants
Aaron Minc; Minc Law;
Anthony Will; &
Digital Revolution, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2020 I transmitted the foregoing to the clerk's office for filing via ECF and for service to:

Dr. Stewart Lucas Murrey
1217 Wilshire Blvd., #3655
Santa Monica, CA 90403
Plaintiff *Pro Se*

Nicholas D. Jurkowitz, Esq.
FENTON LAW GROUP, LLP
njurkowitz@fentonlawgroup.com
1990 S. Bundy Drive # 777
Los Angeles, CA 90025
Attorney for Defendant Domingo J. Rivera

