Vincent Cox (SBN 070511)
*CoxV@ballardspahr.com*
Loralee Sundra (SBN 162732)
*SundraL@ballardspahr.com*
**Ballard Spahr LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Tel.: 424.204.4400; Fax: 424.204.4350

Attorneys for Defendants
BRANDYOURSELF.COM, INC.,
CHRISTIAN TRYON, and TOM VITOLO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

DR. STEWART LUCAS MURREY, an individual,

Plaintiff,

*v.*

AARON MINC, an individual, MINC LAW, a business entity; DOMINGO J. RIVERA, an individual; RIVERA LAW GROUP, PLC a.k.a. DOMINGO J. RIVERA, ATTORNEY AT LAW, PLC, a limited liability company; PRVT L.L.C., a limited liability company, ELIZABETH JORDAN, an individual; INTERNET REPUTATION CONTROL a.k.a. IRC, a business entity; ANTHONY WILL, an individual; DIGITAL REVOLUTION LLC a.k.a. REPUTATION RESOLUTIONS, a business entity; BRANDYOURSELF.COM, INC., a limited liability company, TOM VITOLO, an individual; CHRISTIAN TRYON, an individual; and JOHN DOE NUMBERS 1-10;

Defendants.

Case No. 2:20-cv-06217-PA (SKx)

**NOTICE OF MOTION AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C. §1404(a); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Declarations of Joline Martin, Christian Tryon, and Tom Vitolo; and [Proposed] Order filed concurrently herewith]

**JUDGE**: Hon. Percy Anderson
**DATE**: January 25, 2021
**TIME**: 1:30 PM
**CTRM**: 9A

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on January 25, 2021 at 1:30 P.M., or as soon thereafter as this Motion may be heard, in Courtroom 9A of the above-captioned Court, located at 350 W. 1st Street, 9th Floor, Los Angeles, CA 90012, Defendants Brandyourself.com, Inc., Christian Tryon, and Tom Vitolo, will and hereby do move to transfer this action to the United States District Court for the Southern District of New York.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 24, 2020. This Motion is filed pursuant to 28 U.S.C. § 1404(a) and requests that the Court transfer this action because a valid forum selection clause in Plaintiff's contract with BrandYourself.com, Inc. mandates that this action be litigated in the United States District Court for the Southern District of New York.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declarations of Joline Martin, Tom Vitolo, Christian Tryon, and exhibits thereto, all pleadings and papers on file in this action, and such other matters as may be presented to the Court at the time of the hearing.

DATED: December 14, 2020

**BALLARD SPAHR LLP**

By: /s/ *Vincent Cox*
VINCENT COX
LORALEE SUNDRA

Attorneys for Defendants
BRANDYOURSELF.COM, INC.,
CHRISTIAN TRYON, and TOM VITOLO

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. The Campaign of Vituperation Against Murrey ........ 2

B. The Contract Between Plaintiff and BrandYourself.com, Inc. ........ 2

III. ARGUMENT ........ 5

A. Standard of Review. ........ 5

B. The BY Forum Selection Clause Applies To This Case And Is Valid. ........ 6

1. The Forum Selection Clause Applies To This Case ........ 6

2. The Forum Selection Clause Is *Prima Facie* Valid ........ 7

3. The Forum Selection Clause Is Valid As Applied. ........ 7

C. Public Interest Factors Weigh In Favor Of A Transfer. ........ 8

IV. CONCLUSION. ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) .......... 5, 7

*Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*,
571 U.S. 49 134 S.Ct. 568, 187 L.Ed. 2d 487 .......... 1, 2, 5, 8, 9

*Batchelder v. Kawamoto*,
147 F.3d 915 (9th Cir. 1998) .......... 7

*Crown Capital Sec., L.P. v. Liberty Surplus Ins. Corp.*,
2015 WL 12748815 (C.D.Cal. Mar. 30, 2015) .......... 5

*Docksider, Ltd. v. Sea Tech., Ltd.*,
875 F.2d 762 (9th Cir. 1989) .......... 7

*In Re Facebook, Inc., S/Holder Derivative Privacy Litig.*,
367 F. Supp. 3d 1108 (N.D. Cal. 2019) .......... 8

*Huffington v. T.C. Grp., LLC*,
637 F.3d 18 (1st Cir. 2011) .......... 6

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) .......... 5, 7

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (2013) .......... 8

*Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) .......... 5

**Rules and Statutes**

28 U.S.C. § 1404(a) .......... 1, 4, 5, 9

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Dr. Stewart Lucas Murrey ("Plaintiff" or "Murrey") improperly filed this civil RICO, fraud, unfair competition law, and right of publicity action in the Central District of California, despite the fact that, in his February 8, 2017 contract with defendant BrandYourself, Inc. ("BrandYourself"),Evans Dec. Exs.1& 2, he agreed that ". . . all actions or proceedings filed in connection with this Agreement shall be tried and litigated exclusively in the state or federal courts located in New York, NY." *Id*., Ex. 1,¶ 5 Pursuant to 28 U.S.C. § 1404(a), the action should be transferred to the United States District Court for the Southern District of New York, which Plaintiff agreed would be the sole and exclusive forum for this litigation.

Under the Supreme Court's ruling in *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49,66 134 S.Ct. 568, 583, 187, 187 L.Ed. 2d 487 ("*Atlantic Marine*"):

> "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain."

Under *Atlantic Marine*, a valid forum selection clause is entitled to substantial deference, and its enforcement can only be rebutted by "public interest factors," which will "rarely defeat" a motion to transfer. *Id.* at 64. Valid forum selection

clauses should be enforced "[i]n all but the most unusual cases." *Id*. at 66. Because Plaintiff "def[ied] the forum-selection clause" by not filing in the Southern District of New York, he "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor" transfer. *Id.* 63-67. Plaintiff cannot meet that burden here.[1]

## II. FACTUAL BACKGROUND

### A. The Campaign of Vituperation Against Murrey

Beginning in late 2016, and continuing through October 2017, Plaintiff was the object of numerous vituperative postings on the website www.cheaterreport.com. First Amended Complaint ("FAC") ¶ 24. The authors of these posts are not a mystery to Plaintiff. As set forth in Plaintiff's Declaration on file in this action at Dkt. 30, p. 24, the authors of these posts were three women who styled themselves the Lucas Murrey Support Group: Shannyn Poer, Flor Edwards, and Jessica Lynn. None of those individuals are mentioned in the FAC, and Plaintiff has had the opportunity to file defamation suits against those responsible for the posts.

Apparently dissatisfied with the unremunerative nature of defamation litigation, Plaintiff has embarked upon his suit, which in the FAC alleges an intricate conspiracy to extort, defraud, and defame him, and to make commercial use of his name and likeness, and names as defendants a series of entities that he claims to have directly or indirectly dealt with in attempting to rectify the injuries to his reputation that were inflicted upon him by the vividly negative internet postings that plaintiff concedes were made by the unrelated third parties Poer, Edwards and Lynn.

### B. The Contract Between Plaintiff and BrandYourself

On February 6, 2017, Plaintiff phoned BrandYourself and spoke to Christian

[1] Moving Defendants' responses to the FAC are due on December 22, 2020. In the interest of judicial economy, this motion is filed prior to those responses, which will consist of a joint motion addressing the FAC's deficiencies, in particular, its lack of specificity and plausibility as regards the moving Defendants.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Tryon, a Senior Reputation Adviser, explaining his background, including his scholarly pedigree, and talking about the negative effects upon him from a post concerning him placed on the website *cheaterreport.com*. He told Tryon that he was hiring a company called Reputation Resolutions to get the negative publicity removed. He and Tryon discussed the services that BY could offer. Plaintiff said he wanted the Concierge Agreement suggested by Tryon, calling for monthly payments of $399 in exchange for the BrandYourself services over a one-year period that included:

- one custom website for Murrey (including domains and hosting)
- eight online social media profiles for client.
- one piece of unique content to be published on each of Murrey's online social media properties.

On February 8, 2017, Tryon sent the BrandYourself Concierge Agreement ("Agreement") to Murrey for review and signature, and Murrey returned it several hours later, signed, together with a monthly payment authorization for Murrey's credit card. Tryon Dec. ¶¶ 5-6, Ex.1, Martin Dec., Exs. 1,2,3.

Notably, none of the services BrandYourself agreed to provide included any removal of adverse internet postings anywhere in the world. The services were aimed at providing positive content which search engines would locate, and which would either soften or which would be available to those who access Murrey's name on the internet to in some degree offset the defamatory material that had been posted concerning Murrey. Tryon Dec. ¶4, Ex. A to Ex. 1. The Agreement incorporated by reference BrandYourself's Terms of Service and Privacy Policy, contained a limitation of warranties, granted Murrey's permission for BrandYourself to use social media in Murrey's name, and, of greatest importance here, in paragraph 6, provided that . . . "all actions or proceedings arising in connection with this agreement shall be tried and litigated exclusively in the federal or state courts located

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

In New York, NY. Martin Dec, Exs. 1,2

BY began the process of delivering the contracted services in a professional manner. Martin Dec. Exs. 4,5. Murrey approved of the services, and reports were sent to him and received pointing to the exact properties and pieces of content created while Murrey was subscribed to the services. *Id*. On May 20, 2017, the day after Murrey had received his first Quarterly Report from BrandYourself summarizing its services for him in the prior quarter, he emailed BrandYourself, Martin Dec., Ex. 5, and said:

> "So I think since I'm not really using this service but am happy to keep up with the payments, I'd like to transfer your expertise to a friend who needs to promote her fascinating book that she shall publish soon."

BrandYourself then allowed an early termination of Murrey's contract, and in June 2017, entered into a new eight month contract with the "friend" Murrey had sent to BrandYourself named Flor Edwards. Martin Dec. Exs. 6,7. (Strangely, Flor Edwards was a member of the "Lucas Murrey support group" that had been posting negative statements concerning Murrey). Murrey directed BrandYourself to continue charging his credit card for the services delivered to Flor Edwards, and it continued to do so until Murrey apparently had a falling out with Edwards in July 2017. Martin Dec, Exs. 8, 9, 10. BrandYourself then permitted an early termination of the Edwards contract, and as a result the last charge to Murrey's credit card for BrandYourself services was made in July 2017. Martin Dec., Exs 11-16.The evidence will show that BrandYourself had no further interaction with Murrey prior to this lawsuit that he filed three years later, and that BY had no interactions with any of the other defendants in connection with its services it delivered to Murrey.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

## III. ARGUMENT

### A. Federal Law Strongly Supports Enforcement of Contractual Venue.

28 U.S.C. § 1404(a) provides a mechanism for enforcement of forum selection clauses that require litigation in a particular federal district. *Atlantic Marine*, 571 U.S. at 62. Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division as to which all parties have consented." 28 U.S.C. § 1404(a). Under *Atlantic Marine*, "[t]he presence of a valid form selection clause requires district courts to adjust their usual 1404(a) analysis" by giving the plaintiff's choice of forum "no weight" and considering "public interest factors only." 571 U.S. at 63-64. "Because [the public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64. "Therefore, when a defendant files a motion requesting transfer to pursuant to a foreign selection clause, 'a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer.'" *Crown Capital Sec., L.P. v. Liberty Surplus Ins. Corp.*, 2015 WL 12748815, at *4 (C.D.Cal. Mar. 30, 2015) (quoting *Atlantic Marine*, 571 U.S. at 52).

To determine whether a forum selection clause is valid, courts look to whether ". . . the party challenging enforcement of such provision can show if it is 'unreasonable under the circumstances.'" *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). A forum selection clause is "unreasonable" as applied only if "(1) its incorporation into the contract was the result of fraud, undue influence, or overweening power; (2) the selected form is so 'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes be deprived of its day in

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

court'; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought." *Argueta*, 87 F.3d at 325 (internal citations omitted).

Here, as demonstrated below, the Agreement's forum selection clause applies to this action, is *prima facie* enforceable, and is enforceable as applied. Accordingly, this action should be transferred to the Southern District of New York.

**B. The Agreement's Forum Selection Clause Applies To This Case And Is Valid.**

**1. The Forum Selection Clause Applies To This Case.**

The forum selection clause in Paragraph 6 of the Agreement provides an exclusive forum for all actions that arise "in connection with this Agreement. . ." This action arose "in connection with" the Agreement because the Agreement established the limited scope of BrandYourself's relationship to plaintiff. It also obligated Plaintiff to make payments that he now alleges were part of the operation of the "cheater extortion ring" that is at the center of Plaintiff's allegations of fraud, defamation, extortion, and conspiracy. Furthermore, the limitation of warranties provision of the Agreement expressly disclaimed all express implied and statutory warranties, in contradiction to Plaintiff's many allegation of fraudulent promises. Further, Paragraph 5 of the Agreement contains Murrey's consent to BrandYourself's use of social media, allowing it to create access, use and update social media in the name of the client. This dispute arises "in connection with" the Agreement because it has a logical or causal connection to the contract. As the court explained in *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018):

> [F]orum-selection clauses covering disputes "relating to" a particular agreement apply to any disputes that reference the agreement or have some "logical or causal connection" to the agreement. *See* John

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.) (quoting Webster's Third New International Dictionary 1916 (1971)). The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract. *See Cape Flattery*, 647 F.3d at 922; *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 & n.2 (1st Cir. 2011) (explaining that the phrase "relating to" is synonymous with the phrases "with respect to," "with reference to," "***in connection with***," and "associated with"); Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (Sotomayor, J.) (same)(emphasis added).

Applying this framework, the Agreement's forum-selection clause covers the present suit. Because the clause covers "any disputes . . . filed ***in connection with*** this Agreement," it applies to any dispute that has some logical or causal connection to the parties' agreement. Plaintiff claims that he was defrauded into making the Agreement, and that the services delivered were a part of an extortion conspiracy. The nexus between the claims and the Agreement is inescapable.

**2. The Forum Selection Clause Is *Prima Facie* Valid.**

Forum selection clauses are presumptively valid if "venue is specified with mandatory language." *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). That is the case here. Martin Dec., Ex. 1, ¶6.

**3. The Forum Selection Clause Is Valid As Applied.**

A party opposing enforcement of a valid forum selection clause must "clearly show that enforcement would be unreasonable and unjust." *M/S Bremen*, 407 U.S. at 15. To overcome the presumption in favor of enforcement of a forum selection clause, Plaintiff bears a "heavy burden" of demonstrating that the forum selection clause: (1) was the result of fraud, undue influence, or overweening bargaining power; (2) the "selected forum is so 'gravely difficult and inconvenient' that the

complaining party will 'for all practical purposes be deprived from its day in court'"; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Argueta*, 87 F.3d at 325.

Although Plaintiff's Complaint is replete with conclusory allegations of fraud that lump together all of the defendants, there is no allegation that there was any fraud, undue influence or overweening bargaining power *with respect to the forum selection clause*. As the Ninth Circuit explained in *Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998):

> "[T]he Supreme Court has noted that simply alleging that one was duped into signing the contract is not enough. . . . For a party to escape a forum selection clause on the grounds of fraud, it must show that 'the inclusion of that clause in the contract was the product of fraud or coercion.'"

Second, the Southern District of New York venue is not so difficult or inconvenient that Plaintiff will "for all practical purposes be deprived of his day in court."

Third, there is no strong public policy of this district, or California, that requires that the suit be brought in this forum. Plaintiff alleges a national conspiracy that is of no greater interest to California than to any other state.

**C. Public Interest Factors Weigh In Favor Of A Transfer.**

As discussed above, under *Atlantic Marine*, once the validity of a forum of selection clause has been established, Plaintiff's choice of forum is given "no weight" and only public interest factors are relevant. 571 U.S. at 63-64. Public interest factors include (1) the "local interest in having localized controversies decided at home"; (2) the interest in having the trial of a diversity case in a forum that is at home with the law; and (3) the administrative difficulties flowing from

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

court congestion. *Id.* at 62 n.6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (2013). Plaintiffs have the burden of demonstrating that these factors "overwhelmingly disfavor a transfer." *Id.* at 67. "Because [the public interest] factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual cases." *Id.* at 64. Here, the public interest factors support a transfer. First, there is no local interest in having this controversy decided in the Central District of California.

Plaintiff alleges that he is a renowned scholar whose monographs are found in the most prestigious libraries in America and abroad. (¶ 22, FAC). As such, his claimed reputation is national and there is no particular interest in having this case decided in the Central District of California.

Plaintiff's claims all involve the conduct of parties foreign to California which are governed by the law of their respective jurisdictions. Those jurisdictions have just as much an interest in the conduct of their citizens as does California of any reputation of the Plaintiff.

There is little reason to believe that the Southern District of New York would have any difficulty in being "at home with the law" such that the second factor would be implicated. Finally, "the administrative difficulties flowing from court's congestion" are not likely to be materially different in the Southern District of New York than they are in the Central District of California. Both are busier than districts with full dockets, and neither provides a forum that would be free from court congestion.

Because of Plaintiff's inability to meet his high burden to demonstrate that this is the "unusual" case in which public interest factors overwhelmingly disfavor a transfer, *Atlantic Marine*, 571 U.S. at 66-67; *In Re Facebook, Inc., S/Holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1122 (N.D. Cal. 2019) (enforcing forum selection clause), this case should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**IV. CONCLUSION.**

For all the foregoing reasons, the motion should be granted.

DATED: December 14, 2020

Respectfully submitted,

**BALLARD SPAHR LLP**

By: /s/ *Vincent Cox*
VINCENT COX
LORALEE SUNDRA

Attorneys for Defendants
BRANDYOURSELF.COM, INC.,
CHRISTIAN TRYON, and TOM VITOLO